Angelo J. Genova, Esq.
**GENOVA BURNS LLC**
494 Broad Street
Newark, New Jersey 07102
(973)-533-0777
*Attorneys for Plaintiff,*
*John Curley*

### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOHN CURLEY,<br><br>     Plaintiff,<br><br>v.<br><br>MONMOUTH COUNTY BOARD OF CHOSEN FREEHOLDERS, SERENA DIMASO, ESQ., in her official capacity as Monmouth County Chosen Freeholder, THOMAS ARNONE, in his official capacity as Monmouth County Chosen Freeholder, GARY RICH, in his official capacity as Monmouth County Chosen Freeholder, LILLIAN BURRY, in her official capacity as Monmouth County Chosen Freeholder, MICHAEL FITZGERALD, ESQ., in his individual and official capacity as County Counsel, and TERI O'CONNOR, in her individual and official capacity as County Administrator,<br><br>     Defendants. | Civil Action No.:<br><br>     <u>Civil Action</u><br><br>**VERIFIED COMPLAINT AND JURY DEMAND** |

Plaintiff, John Curley ("Plaintiff"), by his undersigned counsel, by way of Verified Complaint against Defendants Monmouth County Board of Chosen Freeholders (the "Board"), Freeholder Lillian G. Burry, Freeholder Serene DiMaso, Freeholder Gary J. Rich, Sr., Freeholder, Thomas A. Arnone, Monmouth County Counsel

Michael Fitzgerald (in his individual and official capacity), and Monmouth County Administrator Teri O'Connor (in her individual and official capacity), alleges as follows:

## INTRODUCTION

1.   This case is a classic illustration of how a stand-up public official can draw the wrath and vindictive retaliation of his adversaries for his fierce independence and integrity.

2.   As the Asbury Park Press reported in its endorsement in the 2015 Freeholder election in Monmouth County:

> Unfortunately for Rizzo, she has picked the wrong race at the wrong time to seek elective office. Curley's sterling record as a freeholder has earned him another three years on the board. We say this despite the Republican Party's monopoly on the five-member board. Though nominally a Republican, Curley has a fierce independent streak that has at times angered fellow Republicans but has served county residents well.
>
> In Curley's time as freeholder, he has had a nose for sniffing out corruption and doing something about it. He probed financial impropriety by Brookdale Community College President Peter Burnham and alerted federal investigators to a questionable land purchase by former Manalapan Mayor Andrew Lucas. Both of these pursuits ended in criminal convictions. . . .
>
> Among the continuing issues facing Monmouth County are the development of the former Fort Monmouth, maintaining services while controlling spending and fighting for transparency in county operations. Curley is well equipped for the job. But his willingness to take on malfeasance in a county where cronyism is still alive and to

be a de facto ethical watchdog is reason
alone to keep him in office for another 3-
year term.

Editorial: Re-elect Curley to Monmouth freeholder board, Asbury
Park Press (Oct. 28, 2015),
http://www.app.com/story/opinion/editorials/2015/10/28/john-
curley-carol-rizzo/74757450/.

3.   Freeholder Curley has been a persistent and regular
advocate of positions that have run contrary to the Republican
political establishment on the Board and has been unafraid to
challenge the purported majority view of the Freeholders.

4.   It is unsurprising therefore that Freeholder Curley
has become the "target" of an investigation spearheaded by
County Counsel Michael Fitzgerald and County Administrator Terry
O'Connor, based on unseemly comment allegedly uttered by
Plaintiff at a parade.

5.   Defendants have launched this investigation process
with the goal of silencing Freeholder Curley and blemishing his
stellar record in the public square.

6.   Plaintiff is an elected official, not an employee of
the County.   Yet, the County Counsel and Administrator have
initiated an investigation and, upon information and belief,
retained an investigator without proper authorization, who
produced a Report discussing conduct and allegations spanning
almost six years.

7.   Denying Plaintiff even the most basic procedural

protections, including failing to identify to him the initial complainant or allowing him the ability to confront his accusers, the County Counsel and Administrator have unilaterally decided to take the following steps (among other things): (a) denying Plaintiff access to the County Building ("Hall of Records") where all the resources for the performance of his elective duties are maintained; (b) directing that he have no contact with any County employees, including his own confidential aide; and (c) recommending to the Board its consideration of a censure resolution prior to affording him any due process to confront these accusations.

8.   Acting as judge and jury, the County Counsel and Administrator have usurped the role of the Board.   Upon information and belief, the Board has not authorized an investigation, or taken a vote on any of the foregoing actions initiated solely by the County Counsel and Administrator.

9.   These actions are ill-intentioned, for retaliatory political reasons, and designed to chill Freeholder Curley's expression of his political and governmental views, deprive him of the ability to serve those whom he represents, and to undermine his political standing and potential reelection.

10. Accordingly, Defendants' actions violate Plaintiff's fundamental due process and free speech rights and, worse yet, deprive the County's citizens of their elected representative.

11. This Court must step in to right these egregious and *ultra vires* actions and to stop Defendants from acting to silence a political gadfly because they do not like what he has to say.

## THE PARTIES

12. Plaintiff, John Curley ("Plaintiff"), is an elected Freeholder of the Board.

13. Defendant, the Board, is the body politic of Monmouth County (the "County"), which has been delegated both legislative and executive functions by the State pursuant to N.J.S.A 40:20-1 et seq., and explained in Monmouth County Administrative Code (the "Code") § 2-1.1.

14. Defendants Burry, DiMaso, Rich and Arnone, who are sued in their official capacities, are also elected Freeholders to the Board.

15. Defendant Fitzgerald is the appointed counsel for the Board, and is sued in his individual and official capacity.

16. Defendant O'Connor is the appointed County Administrator for the Board and is sued in her individual and official capacity.

## JURISDICTION AND VENUE

17. This Court possesses jurisdiction under 28 U.S.C. § 1331 and 42 U.S.C. § 1983, because this action arises under the Constitution and laws of the United States.

18.  In addition, the Court possesses supplemental jurisdiction under 28 U.S.C. § 1367, to hear and adjudicate state law claims.

19.  Each act (or threat of action) alleged herein was done by the Defendants, or their offices, agents, or employees, acting under color and pretense of the statutes, ordinances, customs, and usages of the County.

20.  Venue is properly laid in this District under 28 U.S.C. § 1391, because a substantial portion of the events or omissions giving rise to this action occurred in this District.

### FACTS COMMON TO ALL COUNTS

**A.   The Board**

21.  The Board is responsible for both the legislative and executive functions of the County.

22.  The Freeholders are elected public officials and are not employees of the County.  Plaintiff, as a Freeholder, is an elected official who is held accountable by his electorate.

23.  Plaintiff has been elected by the citizens of the County to serve as an elected Freeholder on the Board for three terms, encompassing approximately eight years.

24.  Plaintiff has been Deputy Director of the Board since 2016.

25.  Pursuant to N.J.S.A. 40A:9-43 and Code § 2-15.1, Fitzgerald was appointed in 2016 as the County Counsel to be the

chief legal advisor to the Board for a three-year term.

26.  Pursuant to N.J.S.A. 40A:9-42 and Code § 3-1.1, O'Connor has been the County Administrator for Monmouth County since her appointment in 2010.

27.  The duties and responsibilities of the County Counsel and the County Administrator are set forth in the Code.

28.  Under Code § 2-15.2, the County Counsel is responsible for advising the Board and rendering advisory opinions to the Board upon request by the Board.

29.  Under Code § 3-1.4, the County Administrator is responsible for supervising and overseeing the daily administration of the County's departments.

30.  Neither the County Counsel nor County Administrator have independent investigatory powers.

31.  The Board has certain investigatory functions regarding matters within its jurisdiction provided to it by its enabling statute, N.J.S.A. 40:20-82, which requires the Board to authorize any such investigation by way of resolution.

32.  Pursuant to Code § 9-4.2, the creation of departments, divisions or offices shall be made by resolution of the Board.

33.  Fitzgerald and O'Connor have indicated that there exists an Office of Professional Standards ("OPS") within the County administration.

34.  Despite public records requests, the County has been

unable to produce any resolution of the Board authorizing the creation of the OPS.

35. Upon information and belief, the OPS was not created by resolution adopted and/or approved by the Board.

36. Per the County's longstanding practice and custom, Plaintiff, throughout his tenure, has employed confidential aides to assist him in fulfilling his function as a Freeholder. Plaintiff is also provided with an office containing all necessary resources and technology to allow him to perform the job his constituents elected him to perform.

37. The ability to hire a confidential aide and use his office is critical and necessary to Plaintiff's performance of his job as an elected official representing the citizens of Monmouth County.

B.   **The Investigation**

38. In or around June 2017, and, upon information and belief, without the Board's request or approval, O'Connor and Fitzgerald commenced an investigation into Plaintiff's conduct.

39. Upon information and belief, neither O'Connor nor Fitzgerald sought the approval of the Board to commence an investigation into Plaintiff.

40. Upon information and belief, O'Connor and Fitzgerald commenced the investigation into Plaintiff after a complaint was raised about him.

41. The initial complaint was made by an individual still unknown to Plaintiff.

42. Upon information and belief, further complaints were made by a political rival, Freeholder DiMaso, and were intended to damage and/or affect Plaintiff's reputation as an elected official in the County.

43. Plaintiff and Freeholder DiMaso have a longstanding political rivalry centering around a number of contentious and politically charged issues.

44. Upon information and belief, the investigation of Plaintiff was conducted in cooperation with the OPS.

45. Upon information and belief, Fitzgerald and O'Connor directed the County to enter into a contract with an outside investigator to initiate an investigation.

46. Upon information and belief, neither O'Connor nor Fitzgerald sought the approval of and the Board did not approve the retention of an outside investigator.

47. An outside investigator commenced an investigation of Plaintiff in June 2017, which ended five months later, in October 2017.

48. The investigator released findings in a report issued to Fitzgerald (the "Report"), on or about October 13, 2017. A copy of this Report is attached as **Exhibit A**, and is being filed under seal due to the sensitive and confidential nature of the

discussions therein.

49. The Report contains inflammatory and defamatory conclusions which, if published and discussed in a public session, would irreparably harm Plaintiff's reputation in the community which he serves.

50. Many of the statements in the Report are false.

51. The Report is significantly flawed in a variety of ways, including relying on unsubstantiated statements from witnesses, discussing and opining on issues of law and legal liability, and speculating as to whether unproven conduct could be evidence of actions that would be actionable under state law.

52. Among other things, the Report relies on statements made by Plaintiff during public meetings over the course of multiple years as a member of the Board in his role as a legislator for the County.

53. The Report does not conclude that Plaintiff committed any actionable violation of law, but nonetheless recommends remedial and punitive actions.

C.    **Defendants' Actions Based on the Report**

54. On or about November 26, 2017, Fitzgerald sent to the Freeholders a copy of the Report, thereby publishing it.

55. Fitzgerald also noticed a special meeting of the Board, to be held in Executive Session on November 29, 2017, where the Freeholders would discuss the Report and Fitzgerald

and O'Connor would present recommendations to act on the Report.

56. Plaintiff arrived with counsel for the Executive Session meeting on November 29, 2017.

57. Fitzgerald immediately informed Plaintiff that he could not attend the meeting at its start for the purpose of making a statement, since he was a "target."

58. When Plaintiff's counsel informed Fitzgerald that Plaintiff wanted to put his objections to the proceeding on the record, Fitzgerald threatened to call the County Sheriff and arrest Plaintiff in order to remove him from the meeting room.

59. After some discussion, Fitzgerald relented and allowed Plaintiff to speak, provided that he did not speak about or address the merits of the Report.

60. Plaintiff first requested that the meeting be conducted on the record and Fitzgerald confirmed that handwritten notes were being taken of the proceeding.

61. Plaintiff then requested that he be permitted to participate in the meeting, with his counsel present, and this request was denied by Fitzgerald, without a decision by the Board.

62. Plaintiff then requested that DiMaso recuse herself given that she was, upon information and belief, one of the complainants. Fitzgerald denied this request, again without the vote or participation of the Board.

63.   Plaintiff then requested that both he and DiMaso be recused and this request was denied by Fitzgerald, once again without the Board's participation.

64.   Plaintiff finally objected to the process and, in lieu of participating, presented a letter and memorandum from his attorneys setting forth his position and requested that it be considered prior to and in connection with the Board's deliberations with regard to the Report.

65.   A copy of Plaintiff's letter and rebuttal memorandum are attached as **Exhibit B**.   These documents are being filed under seal as they contain confidential and highly sensitive information about the investigation and Report.

66.   Plaintiff then left the meeting, which lasted for approximately an hour and a half.

67.   After the meeting, O'Connor and Fitzgerald met with Plaintiff and his attorney.

68.   O'Connor and Fitzgerald explained that O'Connor had ordered that Plaintiff be barred from entering the Hall of Records, where the Board's business is conducted, at least until a special meeting and subsequent public session occurs on Monday, December 4, 2017.

69.   O'Connor and Fitzgerald explained that this decision had been made by O'Connor without the vote or approval of the Board and that the Board did not take any votes during the

meeting.

70.  In addition, O'Connor has directed that Plaintiff can have no contact with any County employee, including his own confidential aide, until at least after the December 4 meetings.

71.  Once again, this decision was made by O'Connor, without the approval of the Board.

72.  Fitzgerald indicated that counsel for Plaintiff is invited to attend the meetings on December 4, but cannot confront witnesses.

73.  Without a staff or an office, Plaintiff is unable to perform the essential functions of the job he was elected to perform.

74.  Fitzgerald then stated that he would be noticing two meetings for Monday, December 4, 2017.

75.  The first December 4 meeting will be an executive session in which the investigator will be present.

76.  Fitzgerald stated that Plaintiff and his counsel will be allowed at this meeting and will be allowed to question the investigator, but will not be allowed to confront witnesses.

77.  Fitzgerald stated that the executive session meeting would then be followed by the public meeting where the Board. The next day, Fitzgerald emailed counsel for Plaintiff listing the two resolutions to be considered at the public meeting: (1) to "update, expand and reinforce the Monmouth County policy on

13

'Prohibiting Workplace Discrimination and Harassment'" and (2) to officially censure Plaintiff to censure Plaintiff. Attached as **Exhibit C** is a true and correct copy of this email.

78. Fitzgerald would consider the abovementioned resolutions to censure Plaintiff and to update, expand and reinforce the County policy on preventing workplace discrimination and harassment, as the current policy does not apply to Freeholders.

79. Fitzgerald requested that Plaintiff and his counsel keep the discussion confidential, and Plaintiff agreed with the exception of any need to file an action in court. Fitzgerald then provided assurances that the decision would not be revealed to employees.

80. Notwithstanding this request, Plaintiff has learned that these assurances have been breached.

81. Fitzgerald contacted Plaintiff's counsel informing him that he saw Plaintiff's car parked at the Hall of Records and inquired what Plaintiff was doing at the Hall of Records. Further, Fitzgerald questioned Plaintiff's counsel about the Freeholder business Plaintiff was attending to with his presence at the Hall of Records. A true and correct copy of Fitzgerald's email to counsel is attached as **Exhibit D**.

82. Plaintiff was fulfilling his duties as an elected Freeholder, a task which would require him to be in his office.

83. To question Plaintiff's counsel after seeing Plaintiff's car in the parking lot suggests that Fitzgerald was actively surveilling the parking lot to keep Plaintiff from fulfilling his duties.

84. Plaintiff has a duty to his constituents to carry out County business in the most effective way possible.

85. Fitzgerald is effectively forcing Plaintiff to justify his presence and purpose as an elected official.

86. By forcing Plaintiff to explain his presence in the Hall of Records, Fitzgerald is chilling Plaintiff's First Amendment rights to speak and act on county policies for the benefit of his constituents.

## COUNT I

**(Violation of to Due Process Under the Fourteenth Amendment to the U.S. Constitution and Article 1, Paragraph 7 Of The New Jersey Constitution)**

87. Plaintiff hereby repeats and incorporates by reference as if fully set forth herein the allegations contained in the preceding Paragraphs.

88. The Due Process Clause of the Fourteenth Amendment to the U.S. Constitution mandates that no person shall be deprived of property without Due Process of law, and thus confers upon Plaintiff protection from arbitrary governmental action.

89. The Due Process Clause of Article 1, Paragraph 1 of the New Jersey Constitution similarly protects New Jersey's

citizens from being deprived of their property without Due Process of Law and thus confers upon Plaintiff protection from arbitrary governmental action.

90.  As an elected Freeholder, Plaintiff is not an employee of the County.

91.  Rather, Plaintiff is an elected official who is held accountable by his electorate.

92.  The County has a longstanding custom and tradition of affording Freeholders office space in which to work, as well as aides to assist them with their responsibilities.

93.  Plaintiff has a legitimate expectation of retaining an office and being assigned aides to facilitate and aid him in the performance of his official duties as Freeholder.

94.  As an elected official, Plaintiff has a protected property interest in his position.

95.  Before depriving him of these emoluments of his office, Defendants failed to provide Defendants with any hearing or other process.

### COUNT II

**(Violation of to Due Process Under the Fourteenth Amendment to the U.S. Constitution and Article 1, Paragraph 7 Of The New Jersey Constitution)**

96.  Plaintiff hereby repeats and incorporates by reference as if fully set forth herein the allegations contained in the preceding Paragraphs.

97.  The County has a longstanding custom and tradition of affording Freeholders office space in which to work, as well as aides to assist them with their responsibilities.

98.  Plaintiff has a legitimate expectation of retaining an office and being assigned aides to facilitate and aid him in the performance of his official duties as Freeholder.

99.  Plaintiff has been issued an office throughout his term serving as a Freeholder, and he has been assisted by aides for that entire period.

100. The Report contains statements that were published to the Freeholders and were untrue.

101. In addition, by threatening to censure Plaintiff and posting publicly an agenda item to consider such censure, Defendants have further published untrue statements about Plaintiff.

102. Defendants denied Plaintiff of the ability to work with an aide and to use an office, which are necessary for him to work in the role to which he was elected.

103. By so doing, Defendants have deprived Plaintiff of the ability to perform the function of his office, and have therefore deprived Plaintiff of his protected property interest in his elected office.

104. Defendants have violated Plaintiff's due process rights under both the Federal and State Constitutions.

## COUNT III

### (Declaratory Judgment)

105. Plaintiff hereby repeats and incorporates by reference as if fully set forth herein the allegations contained in the preceding Paragraphs.

106. Plaintiff is not an employee of the County and not under the supervision of Fitzgerald or O'Connor in their administrative roles with respect to the County.

107. Rather, Plaintiff is an elected official who is held accountable by his electorate.

108. Neither the County Counsel nor County Administrator have independent investigatory powers.

109. Under the Code, the creation of departments, divisions or offices must be made by resolution of the Board.

110. Upon information and belief, the OPS was not created by resolution adopted and/or approved by the Board.

111. Upon information and belief, neither O'Connor nor Fitzgerald sought the approval of the Board to create the OPS.

112. Nevertheless, upon information and belief, O'Connor and Fitzgerald used the OPS to assist in the investigation, and also engaged an outside investigator.

113. Upon information and belief, the Board never authorized the investigation or the engagement of an investigator.

114. The investigator investigated not only the complaint about the parade, but also complaints that, upon information and belief, originated solely from another Freeholder and not from an employee of the County.

115. After a nearly five-month investigation, the independent investigator issued the Report to Fitzgerald on the investigation's findings.

116. The Report was substantively flawed in several respects, including relying on unsubstantiated allegations and opining and speculating on issues of law.

117. The Report was then published to the Board and, subsequently, referenced in a public agenda item relating to the proposed censure of Plaintiff.

118. The Board then acted upon the Report at their Executive Session meeting on November 29, 2017.

119. The Board has threatened to consider a resolution censuring Plaintiff based on conduct alleged in the Report, much of which is untrue.

## COUNT IV

**(Retaliation for Protected Free Speech Under the First Amendment and Article I, Section 1, Paragraph 6 of the State Constitution)**

120. Plaintiff hereby repeats and incorporates by reference as if fully set forth herein the allegations contained in the preceding Paragraphs.

121. Plaintiff's statements and conduct as a Freeholder in expressing his political views are constitutionally protected speech.

122. Defendants' actions above were intended to prevent Plaintiff from engaging in constitutionally protected speech in furtherance of his position as a Freeholder.

123. Defendants' actions preventing Plaintiff from hiring confidential aides or using office space caused and will cause Plaintiff the ability to express his political views and represent his constituents as a Freeholder.

124. Defendants' actions are a violation of Plaintiff's Free Speech rights protected by the Federal and State Constitutions.

## COUNT V

**(Violation of the Speech and Debate Clause of Article I, Section 6, Clause 1 of the U.S. Constitution, and Article IV, Section Iv, Paragraph 9 of the New Jersey Constitution)**

125. Plaintiff hereby repeats and incorporates by reference as if fully set forth herein the allegations contained in the preceding Paragraphs.

126. The Federal Constitution protects state and local legislators from civil liability for statements made or actions taken in the sphere of legitimate legislative activity.

127. The State Constitution enshrines the common-law immunity afforded to local legislators for statements made or

actions taken in the sphere of legitimate legislative activity.

128. The Report relies upon statements made by Plaintiff in the context of debates during open, public sessions of the Board, in which he participated as a duly elected Freeholder.

129. The Report purports to rely on these statements by Plaintiff as corroborative of, or supporting "findings" of behaviors deserving of remedial or punitive actions.

<u>COUNT VI</u>

(Violation of Local Government Ethics Law <u>N.J.S.A.</u> 40A:9-22.1, <u>et.</u> <u>seq.</u>)

130. Plaintiff hereby repeats and incorporates by reference as if fully set forth herein the allegations contained in the preceding Paragraphs.

131. New Jersey's Local Government Ethics Law sets forth a statutory code of conduct covering the officers and employees of local governments.

132. Members of the Board are "local government officers" under the New Jersey Local Government Ethics Law. <u>N.J.S.A.</u> 40A:9-22.3(e), (f), (g).

133. <u>N.J.S.A.</u> 40A:9-22.5(d) provides that "No local government officer or employee shall act in his official capacity in any matter where he, a member of his immediate family, or a business organization in which he has an interest, has a direct or indirect financial or personal involvement that

might reasonably be expected to impair his objectivity or independence of judgment."

134. On November 29, 2017, Defendant DiMaso participated in the Executive Session in which the Report was discussed.

135. Upon information and belief, Defendant DiMaso is a named complainant.

136. At the November 29, 2017 Executive Session, Fitzgerald demanded Plaintiff not participate in said session as he was a "target" of the investigation.

137. Plaintiff requested that if he were to be excluded from deliberations, that DiMaso also be excluded as she is a named complainant.

138. Fitzgerald refused this request.

139. DiMaso participated in deliberations regarding a Report in which she has direct personal involvement, in violation of N.J.S.A. 40A:9-22.5(d).

**WHEREFORE**, Plaintiff demands judgment:

I.   **Injunctive Relief**

   a. Preliminarily and permanently enjoining Defendants from further publishing the Report to the public.

   b. Preliminarily and permanently enjoining Defendants from engaging another outside and/or the same investigator without proper authorization from the Board.

c.   Preliminarily   and   permanently   restraining Defendants from taking any official or unofficial action against Plaintiff pursuant to the Report.

d.   Preliminarily   and   permanently   restraining Defendants from preventing Plaintiff from hiring or working with confidential aides as required to perform his job functions as a Freeholder.

e.   Preliminarily   and   permanently   restraining Defendants from depriving Plaintiff of the use of an office needed to perform his job functions as a Freeholder.

f.   Preliminarily   and   permanently   restraining Defendants from considering the Report and the censure of Plaintiff at an executive session or public session meeting of the Board.

g.   Preliminarily and permanently enjoining Defendant DiMaso from participating in any proceedings relating to the Report.

## II.   **Declaratory Relief**

a.   Declaring that the Office of Professional Standards was improperly and unlawfully created and, therefore, acted outside of its legal authority by commencing an investigation into Plaintiff.

b.   Declaring that O'Connor and Fitzgerald acted outside the scope of their authority by commencing an

investigation into Plaintiff without Board approval.

c.    Declaring that the investigation of Plaintiff was ultra vires and any Report issued as a result thereof cannot be relied upon as the basis for any punitive action against Plaintiff.

### III. <u>Damages and Other Relief</u>

a.    Awarding compensatory and punitive damages against each Defendant, jointly and severally.

b.    Awarding Plaintiff attorneys' fees in accordance with 42 U.S.C. § 1988, costs of suit and such other relief as this court deems just and proper.

c.    Such further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff, John Curley hereby demands a trial by jury of all issues so triable.

Respectfully submitted,

GENOVA BURNS LLC

By: _____

ANGELO J. GENOVA
Attorneys for Plaintiff,
John Curley

Dated: November 30, 2017

## Local Civ. R. 11.2 Certification

The undersigned, counsel for Plaintiff John Curley, certifies that, to the best of his knowledge, the matter in controversy is not the subject of another action pending in any court or of any pending arbitration or administrative proceeding.

_____

Angelo J. Genova

Dated: November 30, 2017

## VERIFICATION

John Curley, being of full age, hereby certifies and says:

I am the Plaintiff in the foregoing Verified Complaint. I have read the foregoing Verified Complaint and am familiar with the facts therein. The same are true to the best of my knowledge based on information provided to me, as well as based on personal knowledge.

_____
John Curley

Dated: November 30, 2017