UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

JOHN CURLEY,

    Plaintiff,

v.

MONMOUTH COUNTY BOARD OF CHOSEN
FREEHOLDERS, SERENA DIMASO, ESQ.,
in her official capacity as
Monmouth County Chosen Freeholder,
THOMAS ARNONE, in his official
capacity as Monmouth County Chosen
Freeholder, GARY RICH, in his
official capacity as Monmouth
County Chosen Freeholder, LILLIAN
BURRY, in her official capacity as
Monmouth County Chosen Freeholder,
MICHAEL FITZGERALD, ESQ., in his
individual and official capacity
as County Counsel, and TERI
O'CONNOR, in her individual and
official capacity as County
Administrator,

    Defendants.

Civil Action No.:

**Civil Action**

---

**BRIEF IN SUPPORT OF PLAINTIFF'S APPLICATION FOR TEMPORARY
RESTRAINING ORDER AND MOTION FOR PRELIMINARY INJUNCTION**

---

Angelo J. Genova, Esq.
Lawrence Bluestone, Esq.
Allison M. Benz, Esq.
**GENOVA BURNS LLC**
494 Broad Street
Newark, New Jersey 07102
(973)-533-0777
*Attorneys for Plaintiff,
John Curley*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

  A. The Board . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

  B. The Investigation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

  C. Actions Taken Based on Report . . . . . . . . . . . . . . . . . . . . . . . . . . 6

LEGAL ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

  TEMPORARY RESTRAINTS AND INJUNCTIVE RELIEF ARE NECESSARY TO STOP DEFENDANTS FROM IMPROPERLY PREVENTING PLAINTIFF FROM PERFORMING THE FUNCTIONS OF HIS JOB AS AN ELECTED FREEHOLDER . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

    I. Plaintiff Has a Strong Likelihood of Success on the Merits of His Claims. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

      A. Defendants' Investigation was Ultra Vires . . . . . . . . . . . 10

      B. Defendants Violated Plaintiff's Due Process Rights . . . 13

        i. Defendants Deprived Plaintiff of His Property Interest In His Elective Office Without Any Process. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

        ii. Defendants' Actions Caused Harm to Plaintiff's Reputation, Plus His Protected Property Interest in this Job. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

      C. By Taking Adverse Action Against Plaintiff, Defendants Violated Plaintiff's First Amendment Rights . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

    II. Injunctive Relief is Necessary To Prevent Irreparable Harm. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

    III. The Balance of Harms Favors the Granting of Injunctive Relief. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

    IV. The Public Interest Favors Injunctive Relief. . . . . . . . . . . 21

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

## TABLE OF AUTHORITIES

**Cases**

Alvin v. Suzuki,
   227 F.3d 107 (3d Cir. 2000)....................................13

Ammond v. McGahn,
   390 F. Supp. 655 (D.N.J. 1975)...............................15

Archbrook v. New Age Electronics,
   No. 08-1421 (KSH) (MAS), 2008 WL 2987164 (D.N.J. 2008).......6

Bd. Of Regents v. Roth,
   408 U.S. 564 (1972)..........................................13

Camacho v. Brandon, 317 F.3d 153 (2d Cir. 2003) ..............18

Continental Group, Inc. v. Amoco Chem. Corp.,
   614 F.2d 351 (3d Cir. 1980)..................................19

Doe v. Portiz,
   142 N.J. 1 (1995)............................................17

Elmore v. Cleary,
   399 F.3d 279 (3d Cir. 2005)..................................13

Errichetti v. Merlino,
   188 N.J. Super. 309 (Law Div. 1982)......................14, 17

Graham v. City of Philadelphia,
   402 F.3d 139 (3d Cir. 2005)..................................16

Hill v. Borough of Kutztown,
   455 F.3d 225 (3d Cir. 2006)..............................13, 16

Hoosier Energy Rural Elec. Coop., Inc. v. John Hancock Life Ins.
   Co.,
   582 F.3d 721 (7th Cir. 2009).................................10

Indus. Elec. Corp. v. Cline,
   330 F.2d 480 (3d Cir. 1964)..................................19

Maldonado v. Houstoun,
   157 F.3d 179 (3d Cir. 1998)..................................10

McKee v. Hart,
   436 F.3d 165 (3d Cir. 2006)..................................18

O'Connor v. Calandrillo,
  117 N.J. Super. 586 (Law Div. 1971)........................12


Pappan Enters., Inc. v. Hardee's Food Systems, Inc.,
  143 F.3d 800 (3d Cir. 1998)..............................21

Paul v. Davis,
  424 U.S. 693 (1976)..................................16, 17

Reilly v. City of Harrisburg,
  858 F.3d 173 (3d Cir. 2017)..............................10

Shapiro v. Essex Cnty. Bd. of Chosen Freeholders,
  177 N.J. Super. 87 (Law Div. 1980).......................11

Thomas v. Independence Twp.,
  463 F.3d 285 (3d Cir. 2006)..............................18

Vuitton v. White,
  945 F.2d 569 (3d Cir. 1991)...............................9

Weinberger v. Romero-Barcelo,
  456 U.S. 305 (1982)......................................19

Werkheiser v. Pocono Twp.,
  780 F.3d 172 (3d Cir. 2015)..............................18

Winter v. Nat. Res. Def. Council, Inc.,
  555 U.S. 7 (2008)........................................21

Wisconsin v. Constantineau,
  400 U.S. 433 (1971)......................................16

Wood v. Borough of Wildwood Crest,
  319 N.J. Super. 650 (App. Div. 1999).....................13

Wyrough & Loser, Inc. v. Pelmer Labs., Inc.,
  376 F.2d 543 (3d Cir. 1967)..............................19

Zimmerlink v. Zapotsky,
  593 F. App'x. 45 (3d Cir. 2013)..........................18

**Statutes**

N.J.S.A. 34:13A-3 ...........................................12

N.J.S.A. 40:20-82 ........................................11, 12

N.J.S.A. 47:1A-1.1 ...........................................6

**Administrative Code**

Monmouth Cnty. Admin. Code § 2-8.1 .........................11

Monmouth Cnty. Admin. Code § 2-15.2 ........................11

Monmouth Cnty. Admin. Code § 3-1.4 .........................11

Monmouth Cnty. Admin. Code § 3-1.5 .........................11

Monmouth Cnty. Admin. Code § 9-4.2 .........................12

<u>PRELIMINARY STATEMENT</u>

Plaintiff, Freeholder John Curley is a political gadfly. The Monmouth County Board of Chosen Freeholders (the "Board") is the five-member governing board of Monmouth County (the "County"), consisting of all Republicans.  As reported by the Asbury Park Press in its endorsement of him for the 2015 election: "Though nominally a Republican, Curley has a fierce independent streak that has at times angered fellow Republicans but has served county residents well."  Editorial: Re-elect Curley to Monmouth freeholder board, Asbury Park Press (Oct. 28, 2015),

http://www.app.com/story/opinion/editorials/2015/10/28/john-curley-carol-rizzo/74757450/.

Unsurprisingly, Plaintiff has angered the political establishment and, as County Counsel Fitzgerald has described, has become a "target" of an investigation.  Beginning in June 2017, Fitzgerald and County Administrator O'Connor initiated an investigation based on an uncorroborated complaint about an off-color comment Plaintiff allegedly made at a parade.  The investigation has spiraled into a full inquest into actions Plaintiff allegedly took over the past six years.

As an elected official, Plaintiff is not an employee of the County and Fitzgerald and O'Connor are not authorized by statute or regulation to investigate the conduct of an elected

Freeholder.  Yet, seemingly without the authorization of the Board, Fitzgerald and O'Connor hired an outside investigator, with the cooperation of the "Office of Professional Standards" – an office that appears to have been created without Board approval.

The investigator interviewed witnesses and reviewed alleged conduct spanning nearly six years, focusing extensively on allegations that appear to have been made by Freeholder DiMaso, one of Plaintiff's political rivals.  In a lengthy report, the investigator speculated about the significance of incidences without corroborating evidence.  Nonetheless, the investigator concluded that there was no legal authority for one elected official to sue another for discrimination, and found that Plaintiff's conduct could not be considered actionable.

Even though they waited months for the investigation to conclude, on Sunday, November 26, 2017, Fitzgerald sent the Report to the Freeholders and noticed a special meeting two days later, on the evening of November 29, 2017, in Executive Session, to discuss the Report.  Fitzgerald and O'Connor have now further noticed a second Executive Session meeting for December 4, 2017, to be followed by a public meeting where the Board will apparently consider censuring Plaintiff.

Without Board approval, Fitzgerald and O'Connor have denied Plaintiff access to the County Building, the "Hall of Records,"

where all the resources for the performance of his elective duties are maintained; directed that he have no contact with any County employees, including his own confidential aide; and now recommended to the Board its consideration of a censure resolution prior to affording him any due process to confront these accusations.

Meanwhile, Plaintiff has been afforded no process. At the November 29 meeting, Fitzgerald threatened to have Plaintiff, a duly elected Freeholder, arrested if he did not leave the room immediately. Plaintiff will not be allowed to confront witnesses at the meeting scheduled for December 4, and has never even been told the identity of his accuser.

In other words, without holding a hearing, allowing Plaintiff to participate, or confront his accusers, Defendants have deprived Plaintiff of the use of his office and his confidential aide, effectively preventing him from fulfilling his role as an elected Freeholder.

Defendants' *ultra vires* actions violate Plaintiff's due process rights by depriving him of the ability to serve in the office to which he was elected, without a modicum of process. Plaintiff's elective office is a recognized, protected property interest. Further, Defendants' actions unconstitutionally retaliate against Plaintiff for expressing his political views in violation of his First Amendment rights.

In this motion, Plaintiff seeks to maintain the status quo pending a more complete resolution by this Court. Specifically, Plaintiff requests that the Court temporarily and preliminarily enjoin Defendants from prohibiting Plaintiff access to the basic resources needed to perform his job, including access to his office and communication with his confidential aide. Plaintiff further requests that the Court enjoin the proceedings on December 4, 2017, pending full adjudication of his claims.

STATEMENT OF FACTS

### A. The Board

Plaintiff is a Freeholder on the Board, which is responsible for both the legislative and executive powers of the County. (Verified Comp. ¶¶ 12-13). Plaintiff has served the County in this capacity for over eight years. (Id. ¶ 23). Defendants include the other Freeholders, County Counsel Fitzgerald, who was appointed in 2016, and County Administrator O'Connor, who has served in that role since 2010. (Id. ¶¶ 14-17, 25-26). The Freeholders are elected officials and are not County employees. (Id. ¶ 22).

Fitzgerald's and O'Connor's roles are proscribed by the County Administrative Code; neither the County Counsel nor County Administrator have independent investigative functions. (Id. ¶¶ 27-29.) Defendants have also indicated that there exists an Office of Professional Standards ("OPS") within the

County administration, but in response to public records requests, have been unable to identify a Board resolution authorizing the creation of such an office. (Id. ¶¶ 33-35).

In his role, as is custom for Freeholders on the Board, Plaintiff has always employed confidential aides and has maintained an office at the County Hall of Records, with access to the resources and technology needed for him to carry out the job he was elected to perform. (Id. ¶¶ 36-37).

B. **The Investigation**

Beginning in or around June 2017, Fitzgerald and O'Connor purported to authorize an investigation into Plaintiff's conduct. (Id. ¶ 38). The investigation was predicated on an allegation made by a complainant, who, to this day, has not been identified either in the Report or to Plaintiff. (Id. ¶ 41). Although there appears to have been no authorization to do so, O'Connor and Fitzgerald entered into an agreement with an independent investigator to investigate the facts surrounding the claim. (Id. ¶ 45). The investigation appears to have been conducted in conjunction with the OPS. (Id. ¶ 44).

The outside investigator commenced an investigation of Plaintiff, which ended five months later, in October 2017. (Id. ¶ 47). Although it commenced because of the initial complaint, the investigator interviewed people about separate allegations spawning multiple years, including, Plaintiff suspects,

allegations made by Freeholder DiMaso. (Id. ¶ 42).  Plaintiff and DiMaso have a long history of political acrimony, rendering her accusations immediately suspect. (Id. ¶ 43).

The results of the investigator's findings were summarized in a report, which was issued to Fitzgerald (the "Report"). (Id. ¶ 48 & Ex. A).[1]  The Report contains inflammatory and false statements about Plaintiff, and renders conclusions without corroborative evidence.  (Id. ¶¶ 49-50).   In addition to substantive flaws, the Report purports to rely on statements made by Plaintiff acting in his capacity as a Freeholder at public meetings of the Board. (Id. ¶ 52).

C. **Actions Taken Based on Report**

Although Defendants have dragged the investigation on for months, in the past week they have sought to rush through actions on the Report without providing Plaintiff even a modicum of process. On November 26, 2017, Fitzgerald sent the Freeholders a copy of the Report and called for a special Executive Session meeting to be held on November 29, 2017. (Id.

---

[1] The Report contains sensitive and confidential information regarding a sexual harassment investigation.  Such information is shielded from public disclosure under the Open Public Records Act, N.J.S.A. 47:1A-1.1.   To protect the privacy of both Plaintiff and the other individuals mentioned in the Report, Plaintiff requests that the Court order that the Report and Plaintiff's response to the Report remain under seal. (Verified Compl. Ex. A & B.)  Local Civ. R. 5.3; see, e.g., Archbrook v. New Age Electronics, No. 08-1421 (KSH) (MAS), 2008 WL 2987164, at *3 (D.N.J. 2008) (sealing documents relating to confidential HR investigation)

¶¶ 54-55).

When Plaintiff arrived, Fitzgerald threatened to call a sheriff to have him removed from the room because he was a "target." (Id. ¶¶ 57-58). Although Fitzgerald relented, he specified that Plaintiff would not be permitted to talk about the merits of the Report. (Id. ¶ 59). Plaintiff objected to the process and requested that DiMaso be recused given her interest in the outcome, but Fitzgerald (not the Board) denied these requests. (Id. ¶¶ 60-62).

After the meeting, O'Connor and Fitzgerald informed Plaintiff that the Board had not taken a vote, (id. ¶¶ 69, 71), but that O'Connor and Fitzgerald had decided:

(1) Plaintiff would be barred from entering the Hall of Records, unless he justified his presence on official business. (Id. ¶ 68).

(2) Plaintiff would not be allowed to talk to any County employees, including his own aide. (Id. ¶ 70).

(3) Fitzgerald would notice two meetings for Monday, December 4, 2017. (Id. ¶ 74). The first would be held in executive session, where the investigator would be present. (Id. ¶¶ 75-76). Plaintiff's counsel could question the investigator and be present, but would not be permitted to mount a defense or question witnesses. The second meeting would be public and the

7

Board would consider a resolution censuring Plaintiff and a resolution to update, expand and reinforce the County's workplace discrimination and harassment policy. (Id. ¶ 77 & Ex. C).

Defendants' actions have effectively prevented him from conducting the people's business as an elected official and chill his First Amendment rights by requiring him to, essentially, seek approval from an unelected official before doing anything related to his job. (Id. ¶ 81). Indeed, Fitzgerald emailed Plaintiff's counsel reporting that he saw Plaintiff's car was in the parking lot and demanding that Plaintiff justify his presence. (Id. & Ex. D.) Defendants' actions prevent Plaintiff from fulfilling his duties as an elected Freeholder of the Board. (Id. ¶ 82.) With the meeting scheduled for December 4, 2017, Plaintiff is forced to seek this Court's immediate intervention.

### LEGAL ARGUMENT

**TEMPORARY RESTRAINTS AND INJUNCTIVE RELIEF ARE NECESSARY TO STOP DEFENDANTS FROM IMPROPERLY PREVENTING PLAINTIFF FROM PERFORMING THE FUNCTIONS OF HIS JOB AS AN ELECTED FREEHOLDER.**

Plaintiff seeks a temporary restraining order ("TRO") and preliminary injunction pursuant to Fed. R. Civ. P. 65 and Local Civil Rule 65.1: (1) restraining Defendants from (a) preventing Plaintiff from working with County employees, including confidential aides, as required to perform his job functions as a Freeholder; and (b) from restricting Plaintiff's use of an office needed to perform his job functions as a Freeholder; and (2) preventing Defendants from further disseminating the *ultra vires* Report to the public, including by discussing it at a public meeting of the Board.

The Court applies the same test in considering an application for entry of a TRO under Fed. R. Civ. P. 65(b), or a preliminary injunction under Fed. R. Civ. P. 65(a). <u>Vuitton v. White</u>, 945 F.2d 569, 573 (3d Cir. 1991). In determining whether to grant such relief, the court must weigh four factors: (1) whether the movant has shown a reasonable probability of success on the merits; (2) whether the movant will be irreparably injured by denial of the relief; (3) whether granting preliminary relief will result in even greater harm to the nonmoving party; and (4) whether granting the preliminary relief

9

will be in the public interest. <u>Maldonado v. Houstoun</u>, 157 F.3d 179, 184 (3d Cir. 1998), <u>cert. denied</u>, 526 U.S. 1130 (1999).

"How strong a claim on the merits is enough depends on the balance of harms: the more net harm an injunction can prevent, the weaker the plaintiff's claim on the merits can be while still supporting some preliminary relief." <u>Reilly v. City of Harrisburg</u>, 858 F.3d 173, 179 (3d Cir. 2017) (quoting <u>Hoosier Energy Rural Elec. Coop., Inc. v. John Hancock Life Ins. Co.</u>, 582 F.3d 721, 725 (7th Cir. 2009))

As demonstrated below, Plaintiff can amply demonstrate each of these required elements. The Court should grant the requested TRO and preliminary injunction.

## I. Plaintiff Has a Strong Likelihood of Success on the Merits of His Claims.

Plaintiff raises multiple claims, but for purposes of this motion will focus on his claims alleging ultra vires actions on behalf of Defendants, violations of his due process rights, and violation of his free speech rights under the Federal and State Constitutions. As explained below, Plaintiff is likely to succeed on each of these claims.

### A. *Defendants' Investigation was Ultra Vires*

Initially, Defendants' actions in initiating and conducting the investigation are beyond any authority granted them and done without authorization. As a local subdivision of the State, the

County only possess the authority delegated to it by the State. Shapiro v. Essex Cnty. Bd. of Chosen Freeholders, 177 N.J. Super. 87, 88 (Law Div. 1980), aff'd, 183 N.J. Super 24 (App. Div.), and aff'd, 91 N.J. 430 (1992).  The Legislature has granted the Board certain investigatory powers into matters within their jurisdiction. See N.J.S.A. 40:20-82; Monmouth Cnty. Admin. Code § 2-8.1(c). But, as noted above, the Board does not appear to have taken any vote to authorize the investigation. (Verified Compl. ¶ 39.)

The County Counsel and County Administrator do not have independent investigatory powers and are nowhere authorized to investigate the Freeholders.  See Monmouth Cnty. Admin. Code §§ 2-15.2(a), (f); 3-1.4, 3-1.5.  Nevertheless, in June 2017, apparently without the Board's request or approval, O'Connor and Fitzgerald commenced an investigation into claims made against Plaintiff, an elected Freeholder (Verified Comp. ¶ 39.) With the assistance of the OPS, an office that exists despite a lack of authorization from the Board, O'Connor and Fitzgerald hired and investigator and launched an investigation, which concluded with the issuance of the Report. (Id. ¶¶ 44-45).

The investigation and ensuing Report were *ultra vires*. Defendants have not been able to point to any resolution authorizing the creation of the OPS, with whose assistance Defendants claim the investigation proceeded. See Monmouth Cnty.

Admin. Code § 9-4.2 ("Changes in the organization of the County government, including combination, termination or **creation of departments, divisions or offices** . . . shall be made by resolution of the Board.  Any such resolution may revise, modify, alter or abolish any provision contained in this Administrative Code") (*emphasis added*).

What's more, though Fitzgerald and O'Connor are granted supervisory roles over employees in the County's employ, the organic statute and County Administrative Code grant them no authority to investigate the actions of a Freeholder. Freeholders, as elected officials, are not employees of the County.  See, e.g., N.J.S.A. 34:13A-3(d) (defining public employees, but excluding elected officials, members of boards and commissions, managerial executives and confidential employees."); O'Connor v. Calandrillo, 117 N.J. Super. 586, 590 (Law Div. 1971) (distinguishing between elected Freeholders and county employees), aff'd o.b., 121 N.J. Super 135 (App. Div. 1972), and certif. denied, 62 N.J. 193 (1973).

Only the Board is authorized to launch an investigation into a Freeholder and it must do so by way of resolution. N.J.S.A. 40:20-82.  Yet, Fitzgerald and O'Connor launched the investigation without any authorization or approval by the Board. Since the investigation and resulting report were beyond the scope of authority of the County Counsel and Administrator,

the acts are *ultra vires* and void. See Wood v. Borough of Wildwood Crest, 319 N.J. Super. 650, 656 (App. Div. 1999).

Given these facts, Plaintiff is likely to succeed on the claim declaring these actions void.

B. **Defendants Violated Plaintiff's Due Process Rights**

   i.   **Defendants Deprived Plaintiff of His Property Interest In His Elective Office Without Any Process.**

To succeed on his procedural due process claim, Plaintiff must show "(1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of 'life, liberty, or property,' and (2) the procedures available to him did not provide 'due process of law.'" Hill v. Borough of Kutztown, 455 F.3d 225, 234 (3d Cir. 2006) (quoting Alvin v. Suzuki, 227 F.3d 107, 116 (3d Cir. 2000)).

By taking official action against Plaintiff in the form of official censure and taking away his confidential aides, whom he relies on for daily tasks, as well as his office, Defendants have deprived Plaintiff of a protected property interest. As an elected official Plaintiff has a "legitimate entitlement to [his] continued employment," and his position. Elmore v. Cleary, 399 F.3d 279, 282 (3d Cir. 2005) (citing Bd. Of Regents v. Roth, 408 U.S. 564, 577 (1972)).

In Errichetti v. Merlino, 188 N.J. Super. 309 (Law

Div. 1982), a state senator sued alleging that he had been unlawfully deprived of his seat in the State Senate, his annual salary, and the other rights and privileges associated with his elective office. The State Senate had deemed plaintiff had vacated his office because he was "continuously absent without excuse until the expiration of his term of office." Id. at 314. The Court held that an elected official's interest in receiving his salary "is protected and it is appropriate to consider the due process issue." Id. at 337. Because his elective position and salary were protected property rights, the legislature would have to afford him process before depriving him of those rights. Id.

Here, Defendants provided Plaintiff with no process before taking action. Plaintiff was excluded in the Executive Session meeting, and the actions were taken by Defendants unilaterally without any opportunity for a hearing or to question the validity of the investigation. (Verified Comp. ¶¶ 59-64.) Indeed, Plaintiff's original accuser has not been identified either to him or in the Report, and Plaintiff has had no opportunity to confront witnesses or even argue in his own favor. (Id. ¶¶ 41, 76.) At the November 29 meeting, for example, Fitzgerald threatened to arrest Plaintiff rather than letting him make a statement before the deliberations, and Plaintiff was expressly forbidden from speaking about the

14

substance of the Report and then specifically excluded from the meeting. (Id. ¶ 58). As noted above, though Plaintiff will be permitted to be present at the meeting on December 4, 2017, he will not be allowed to mount a defense in any form before the Council considers censuring him. (Id. ¶ 76). And, of course, he has already been deprived of use of his office, which contains the tools and technology he needs to perform his job, as well as any interaction with his own aide. (Id. ¶¶ 68, 70).

"No elected representative of the people may be barred from participation in the forum to which he or she was elected for misconduct, no matter how egregious, without some type of hearing." Ammond v. McGahn, 390 F. Supp. 655, 660 (D.N.J. 1975), rev'd on other grounds 532 F.2d 324 (3d Cir. 1976). Plaintiff's interest is protected, and Defendants have not given him even the barest process. As such, he is likely to succeed on his procedural due process claim.

ii. *Defendants' Actions Caused Harm to Plaintiff's Reputation, Plus His Protected Property Interest in this Job.*

Separately, Plaintiff is likely to succeed on his due process claim predicated on the deliberate damage to his reputation, coupled with the loss of rights from his job. "Where a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential." Wisconsin v.

Constantineau, 400 U.S. 433, 437 (1971).  Plaintiff can succeed on a "due process claim for deprivation of a liberty interest in reputation," by showing "a stigma to his reputation *plus* deprivation of some additional right or interest," referred to as a "stigma-plus" claim. Hill, 455 F.3d at 236; see also Paul v. Davis, 424 U.S. 693, 701 (1976); Graham v. City of Philadelphia, 402 F.3d 139, 142 n.2 (3d Cir. 2005).

"To satisfy the 'stigma' prong of the test, it must be alleged that the purportedly stigmatizing statement(s) (1) were made publicly, and (2) were false." Hill, 455 F.3d at 236. In Hill, for example, the plaintiff had "adequately allege[d] the 'stigma' prong of the 'stigma-plus' test" when he alleged that the defendants had defamed him by accusing him of wrongdoing both before his colleagues and before the general public at Borough Council meetings. Id.  Hill alleged the accusations were false and that they "tarnished his reputation and subjected [him] to scorn and ridicule." Id.

Here, the Report has significant infirmities, including uncorroborated complaints from nearly six years ago, well outside the statute of limitations for actionable conduct. (Verified Compl. ¶ 6.)  Further, the Report was published to the Freeholders, who now plan to discuss the Report at a public session. (Id. ¶¶ 54, 117.) Plaintiff therefore satisfies the "stigma" prong of the "stigma-plus" test.

To satisfy the "plus" prong of the "stigma-plus" test, Plaintiff must show an "alteration or extinguishment of a 'right of status previously recognized by state law." Id. at 237, citing Paul v. Davis, 424 U.S. 693, 711 (1976). As noted above, New Jersey law recognizes that legislators have a recognized property interest in the salary and entitlements of their office. Errichetti, 188 N.J. Super. at 309.[2]

Thus, Plaintiff is likely to succeed on his claim that Defendants violated his due process rights under the stigma-plus test.

C.   **_By Taking Adverse Action Against Plaintiff, Defendants Violated Plaintiff's First Amendment Rights_**

Defendants' actions in this case also violate Plaintiff's First Amendment (and analogue state constitutional) free speech rights. To state a claim for retaliation in violation of the First Amendment, a plaintiff must show "(1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the constitutionally protected conduct and the retaliatory action." Thomas v. Independence Twp., 463 F.3d 285, 296 (3d Cir. 2006). "[T]he key

[2] Under the New Jersey Constitution, Plaintiff may raise a claim by showing "a protectible interest in reputation without requiring any other tangible loss." Doe v. Portiz, 142 N.J. 1, 104-05 (1995). Plaintiff meets the standard here because Defendants actions threaten his political reputation.

question in determining whether a cognizable First Amendment claim has been stated is whether 'the alleged retaliatory conduct was sufficient to deter a person of ordinary firmness from exercising his First Amendment rights." Zimmerlink v. Zapotsky, 593 F. App'x. 45 (3d Cir. 2013) (quoting McKee v. Hart, 436 F.3d 165, 170 (3d Cir. 2006)).

Plaintiff's statements and actions as a Freeholder constitute protected speech. Zimmerlink 593 F. App'x 45 (3d Cir. 2013). From the beginning, the investigation was used as a means to silence Plaintiff and prevent him from expressing his political views as a duly elected member of the Board. (Verified Compl. ¶ 11.)

The Third Circuit has recognized that courts may intervene in egregious and severe cases of legislative retaliation intended to quell the exercise of First Amendment rights. Zimmerlink, 493 F. App'x at 50 (Camacho v. Brandon, 317 F.3d 153, 161 (2d Cir. 2003)).

The case is exactly the severe case contemplated by Zimmerlink. The level of retaliation here goes beyond "squabbles of hardball politics" to the unlawful "exclusion of a duly elected official from office." Werkheiser v. Pocono Twp., 780 F.3d 172, 181 (3d Cir. 2015). Defendant's actions are intended to exclude Plaintiff from effectively holding office based upon his protected speech under the First Amendment, in clear

18

violation of his rights as an elected official. Thus, Plaintiff is also likely to succeed on his First Amendment claim.

## II. Injunctive Relief is Necessary To Prevent Irreparable Harm.

In establishing the requisite element of "irreparable injury," the moving party need only show a "likelihood" of such harm. Wyrough & Loser, Inc. v. Pelmer Labs., Inc., 376 F.2d 543 (3d Cir. 1967); Indus. Elec. Corp. v. Cline, 330 F.2d 480, 483 (3d Cir. 1964) (injunction should be granted if irreparable injury "would possibly result" if relief were denied). Here, Plaintiff will suffer irreparable harm if he is precluded from accessing the County offices or speaking with County employees because he will be prevented from effectively serving as a Freeholder. This type of injury could not be remedied by *ex ante* damages and is therefore, irreparable. See Weinberger v. Romero-Barcelo, 456 U.S. 305 (1982); Continental Group, Inc. v. Amoco Chem. Corp., 614 F.2d 351, 356 (3d Cir. 1980).

Plaintiff has held this position of public trust for eight years. He has been reelected to this position twice, even after taking public positions in opposition to his fellow Republican colleagues. By continuing to bar him from using the office or speaking to his own aide, Defendants have prevented him from serving in the role to which he was elected.

Separately, allowing the meetings to go forward on

December 4, will not only allow an unelected County Counsel and County Administrator to effectively remove an elected Freeholder from office, but will also irreparably injure Plaintiff's reputation by allowing discussion of the Report at a public session.   It is important to note that the timing under which all of this is taking place is prior to Plaintiff's reelection. Indeed, if Plaintiff had been such a "threat" to County employees as purported by Fitzgerald and O'Connor, surely this sort of investigation would have occurred when the alleged complainants in the report made the complaints ranging from 2012 through March 2017.  There was no sense of exigency in the investigation, and no sense of exigency when the Report was issued almost *two months ago*.  By taking this hurried action against Plaintiff now, and not affording him the opportunity to respond and publicly deny these allegations, it will damage his reputation as a trusted elected official and become a stain on his spotless public record.

### III. **The Balance of Harms Favors the Granting of Injunctive Relief.**

In cases in which preliminary injunction is sought, "courts must balance the competing claims of injury and must consider the effect on each party the granting or withholding of the requested relief."  Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 24 (2008).  By not granting a temporary restraining

order or injunctive relief, the harm to Plaintiff is concrete and severe. As noted above, Plaintiff has been prevented from performing the job he was elected to perform without the most minimal due process protections and, with the continued publication of the Report, will lose the trust of his electorate, the very people that voted for him for this job, based on an ultra vires investigation.

By contrast, Defendants will suffer no harm if a temporary restraining order or preliminary injunction is granted. The investigation has been ongoing for several months and Defendants have shown no urgency in pursuing these actions until a week ago. Allowing this Court to properly adjudicate Plaintiff's claims will not harm Defendants and, even if Defendants were to hypothetically prevail, there is no harm to delaying their actions for a short period to permit the Court's ordered adjudication of this action.

IV. **The Public Interest Favors Injunctive Relief.**

"[A] district court must consider whether the issuance of a preliminary injunction serves the public interest before granting preliminary injunctive relief." Pappan Enters., Inc. v. Hardee's Food Systems, Inc., 143 F.3d 800, 807 (3d Cir. 1998). Here, granting a TRO and preliminary injunction would undoubtedly serve the public interest by allowing Plaintiff to continue to represent the constituents who elected him into

office.

Allowing Defendants, through use of unelected officials, to oust an elected official turns our political system on its head and would deprive the public of adequate representation in the County.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully submits that the Court should issue an Order for temporary restraints and injunctive relief in favor of Plaintiff.

Respectfully submitted,

**GENOVA BURNS LLC**
*Attorneys for Plaintiff,*
*John Curley*

By: _____
ANGELO J. GENOVA, ESQ.

Dated:   November 30, 2017

23