Angelo J. Genova, Esq.
**GENOVA BURNS LLC**
494 Broad Street
Newark, New Jersey 07102
(973)-533-0777
*Attorneys for Plaintiff,*
*John Curley*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| JOHN CURLEY,<br><br>        Plaintiff,<br><br>v.<br><br>MONMOUTH COUNTY BOARD OF CHOSEN FREEHOLDERS, SERENA DIMASO, in her individual and official capacity as Monmouth County Chosen Freeholder, THOMAS A. ARNONE, in his individual and official capacity as Monmouth County Chosen Freeholder, GARY J. RICH, in his individual and official capacity as Monmouth County Chosen Freeholder, LILLIAN G. BURRY, in her individual and official capacity as Monmouth County Chosen Freeholder, MICHAEL FITZGERALD, in his individual and official capacity as County Counsel, and TERI O'CONNOR, in her individual and official capacity as County Administrator,<br><br>        Defendants. | Civil Action No.:<br>    3:17-cv-12300-BRM-TJB<br><br>**<u>Civil Action</u>**<br><br>**FIRST AMENDED AND SUPPLEMENTAL VERIFIED COMPLAINT AND JURY DEMAND** |

        Plaintiff, John Curley ("Plaintiff"), by his undersigned counsel, by way of First Amended and Supplemental Verified Complaint against Defendants Monmouth County Board of Chosen Freeholders (the "Board"), Freeholder Serena DiMaso, Freeholder

Thomas A. Arnone, Freeholder Gary J. Rich, Sr., Freeholder Lillian G. Burry, Monmouth County Counsel Michael Fitzgerald, and Monmouth County Administrator Teri O'Connor (each sued in their individual and official capacities), alleges as follows:

### INTRODUCTION

1.   This case is a classic illustration of how a stand-up public official can draw the wrath and vindictive retaliation of his political adversaries for his fierce independence and integrity.

2.   As the Asbury Park Press reported in its endorsement of Freeholder Curley in the 2015 Freeholder election in Monmouth County:

> Unfortunately for Rizzo, she has picked the wrong race at the wrong time to seek elective office. Curley's sterling record as a freeholder has earned him another three years on the board. We say this despite the Republican Party's monopoly on the five-member board. Though nominally a Republican, Curley has a fierce independent streak that has at times angered fellow Republicans but has served county residents well.
>
> In Curley's time as freeholder, he has had a nose for sniffing out corruption and doing something about it. He probed financial impropriety by Brookdale Community College President Peter Burnham and alerted federal investigators to a questionable land purchase by former Manalapan Mayor Andrew Lucas. Both of these pursuits ended in criminal convictions. . . .
>
> Among the continuing issues facing Monmouth County are the development of the former

> Fort Monmouth, maintaining services while controlling spending and fighting for transparency in county operations. <u>Curley is well equipped for the job. But his willingness to take on malfeasance in a county where cronyism is still alive and to be a de facto ethical watchdog is reason alone to keep him in office for another 3-year term.</u>

Editorial: Re-elect Curley to Monmouth freeholder board, Asbury Park Press (Oct. 28, 2015),

http://www.app.com/story/opinion/editorials/2015/10/28/john-curley-carol-rizzo/74757450/ (emphasis added).

3.  Plaintiff has been a persistent and regular advocate of positions that have run contrary to the Republican political establishment on the Board, and in the County's party leadership, and has been unafraid to challenge the purported majority view of the Freeholders.

4.  It is unsurprising, therefore, that Plaintiff has become the "target" of an investigation spearheaded by County Counsel Michael Fitzgerald and County Administrator Teri O'Connor, based on an unseemly comment allegedly uttered by Plaintiff at a parade.

5.  Defendants have launched this investigation process with the goal of silencing Plaintiff and blemishing his stellar record in the public square.

6.  Plaintiff is an elected official, not an employee of the County.  Yet, the County Counsel and Administrator have

3

initiated an investigation and, upon information and belief, retained an investigator without proper authorization, who produced a Report discussing alleged conduct and allegations spanning almost six years.

7.   Denying Plaintiff even the most basic procedural protections, including failing to identify to him the initial complainant or allowing him the ability to confront his accusers, Defendants Fitzgerald and O'Connor unilaterally: (a) denied Plaintiff access to the County Building (the "Hall of Records") where all the resources for the performance of his elective duties are maintained; and (b) directed that he have no contact with any County employees, including his own confidential aide.

8.   Defendants Fitzgerald and O'Connor then used the *ultra vires* Report, as well as new accusations from unidentified accusers, to recommend to the Board its consideration of a censure resolution. Without affording Plaintiff any due process to confront these accusations, the Board thereafter voted to censure Plaintiff based upon unsubstantiated allegations.

9.   In addition to violating Plaintiff's constitutional rights, Defendants violated the Local Government Ethics Law by voting on the censure resolution, even though one of the Freeholders is a complainant in the Report and the other remaining Freeholders are mentioned as potential witnesses to

4

the allegations.

10. Acting as judge and jury, the County Counsel and Administrator have usurped the role of the Board. Upon information and belief, the Board has not authorized an investigation, or taken a vote on any of the foregoing actions initiated solely by the County Counsel and Administrator.

11. These ill-intention actions taken for retaliatory political reasons, are designed to chill Plaintiff's expression of his political and governmental views, deprive him of the ability to serve those whom he represents, and undermine his political standing and reelection.

12. Accordingly, Defendants' actions violated Plaintiff's fundamental due process and free speech rights and, tarnished his reputation with the electorate of Monmouth County.

## THE PARTIES

13. Plaintiff, John Curley, is an elected Freeholder of the Board.

14. Defendant, the Board, is the body politic of Monmouth County (the "County"), which has been delegated both legislative and executive functions by the State pursuant to N.J.S.A 40:20-1 et seq., and as specified in the Monmouth County Administrative Code (the "Code").

15. Defendant Serena DiMaso, is and was at all relevant times a member of the Board. DiMaso is and was at all relevant

times a resident of Monmouth County, New Jersey. Defendant DiMaso is being sued in her individual and official capacities.

16.  Defendant Lillian G. Burry is and was at all relevant times a member of the Board. Burry is and was at all relevant times a resident of Monmouth County, New Jersey. Defendant Burry is being sued in her individual and official capacities.

17.  Defendant Gary J. Rich, Sr., is and was at all relevant times a member of the Board. Rich is and was at all relevant times a resident of Monmouth County, New Jersey. Defendant Rich is being sued in his individual and official capacities.

18.  Defendant Thomas A. Arnone is and was at all relevant times a member of the Board. Arnone is and was at all relevant times a resident of Monmouth County, New Jersey. Defendant Arnone is being sued in his individual and official capacities.

19.  Defendant Michael Fitzgerald, Esq. is and was at all relevant times the appointed counsel for the Board. Fitzgerald is and was at all relevant times a resident of Monmouth County, New Jersey. Defendant Fitzgerald is sued in his individual and official capacities.

20.  Defendant Teri O'Connor is and was at all relevant times the appointed County Administrator for the Board. O'Connor is and was at all relevant times a resident of Monmouth County, New Jersey. Defendant O'Connor is sued in her individual

and official capacities.

21. Defendants are persons within the meaning of 42 U.S.C. §§ 1983 and 1985.

22. At all times relevant, Defendants acted under color of state law.

## JURISDICTION AND VENUE

23. This Court possesses jurisdiction under 28 U.S.C. § 1331 and 42 U.S.C. §§ 1983 and 1985, because this action arises under the Constitution and laws of the United States.

24. In addition, the Court possesses supplemental jurisdiction under 28 U.S.C. § 1367, to hear and adjudicate Plaintiff's state law claims.

25. Each act (or threat of action) alleged herein was done by the Defendants, or their offices, agents, or employees, acting under color and pretense of the statutes, ordinances, customs, and usages of the State and County.

26. Venue is properly laid in this District under 28 U.S.C. § 1391, because all parties reside in the District and a substantial portion of the events or omissions giving rise to this action occurred in the District.

## FACTS COMMON TO ALL COUNTS

### A. The Board

27. The Board is responsible for both the legislative and executive functions of the County.

7

28.   The Freeholders are elected public officials and are not employees of the County.   Plaintiff, as a Freeholder, is an elected official who is held accountable by his electorate.

29.   Plaintiff has been elected by the citizens of the County to serve as an elected Freeholder on the Board for three terms, encompassing approximately the past eight years. His current term expires December 31, 2018.

30.   Plaintiff has been Deputy Director of the Board since 2016.

31.   Pursuant to N.J.S.A. 40A:9-43 and Code § 2-15.1, Fitzgerald was appointed in 2016 as the County Counsel to be the chief legal advisor to the Board for a three-year term.

32.   Pursuant to N.J.S.A. 40A:9-42 and Code § 3-1.1, O'Connor has been the County Administrator for Monmouth County since her appointment in 2010.

33.   The duties and responsibilities of the County Counsel and the County Administrator are set forth in the Code.

34.   Under Code § 2-15.2, the County Counsel is responsible for advising the Board and rendering advisory opinions to the Board upon request by the Board.

35.   Under Code § 3-1.4, the County Administrator is responsible for supervising and overseeing the daily administration of the County's departments.

36.   Neither the County Counsel nor County Administrator

have independent investigatory powers.

37. The Board has certain investigatory functions regarding matters within its jurisdiction provided to it by its enabling statute, N.J.S.A. 40:20-82, which requires the Board to authorize any such investigation by way of resolution.

38. Pursuant to Code § 9-4.2, the creation of departments, divisions or offices must be made by resolution of the Board.

39. Fitzgerald and O'Connor have indicated that there exists an Office of Professional Standards ("OPS") within the County administration.

40. Despite public records requests, the County has been unable to produce any resolution of the Board authorizing the creation of the OPS.

41. Upon information and belief, the OPS was not created by resolution adopted and/or approved by the Board.

42. Per the County's longstanding practice and custom, Plaintiff, throughout his tenure, has employed confidential aides to assist him in fulfilling his function as a Freeholder. Plaintiff is also provided with an office containing all necessary resources and technology to allow him to perform the job his constituents elected him to perform.

43. The ability to hire a confidential aide and use his office and related resources is critical and necessary to Plaintiff's performance of his job as an elected official

9

representing the citizens of Monmouth County.

**B.**    **The Investigation**

44.   In or around June 2017, and, upon information and belief, without the Board's request or approval, O'Connor and Fitzgerald commenced an investigation into Plaintiff's conduct.

45.   Upon information and belief, neither O'Connor nor Fitzgerald sought the approval of the Board to commence an investigation into Plaintiff.

46.   Upon information and belief, O'Connor and Fitzgerald commenced the investigation into Plaintiff after a complaint was raised about him.

47.   The initial complaint was made by an individual still unknown to Plaintiff.

48.   Upon information and belief, further complaints were made by a political rival, Defendant Freeholder DiMaso, and were intended to damage and/or affect Plaintiff's reputation as an elected official in the County.

49.   Plaintiff and DiMaso have a longstanding political rivalry centering around contentious and politically charged issues.

50.   Upon information and belief, the investigation of Plaintiff was conducted in cooperation with the OPS.

51.   Upon information and belief, Fitzgerald and O'Connor directed the County to enter into a contract with an outside

investigator to initiate an investigation.

52. Upon information and belief, neither O'Connor nor Fitzgerald sought the approval of and the Board did not approve the retention of an outside investigator.

53. An outside investigator commenced an investigation of Plaintiff in June 2017, which ended five months later, in October 2017.

54. The investigator released findings in a report issued to Fitzgerald (the "Report"), on or about October 13, 2017. A copy of this Report is attached as **Exhibit A**, and is currently filed under seal due to the sensitive and confidential nature of the discussions therein. (See Minute Order (ECF No. 4).)

55. The Report contains inflammatory and defamatory statements, and has since been published and discussed in a public session, which has irreparably harmed Plaintiff's reputation in the community which he serves.

56. Many of the statements in the Report are false.

57. The Report is significantly flawed in a variety of ways, including relying on unsubstantiated statements from witnesses, discussing and opining on issues of law and legal liability, and speculating as to whether unproven conduct could be evidence of actions that would be actionable under state law.

58. Among other things, the Report relies on statements made by Plaintiff during public meetings over the course of

11

multiple years as a member of the Board in his role as a legislator for the County.

59.  The Report does not conclude that Plaintiff committed any actionable violation of law, but nonetheless recommends remedial and punitive actions.

**C.   Defendants' Actions Based on the Report**

60.  On or about November 26, 2017, Fitzgerald sent to the Freeholders a copy of the Report, thereby publishing it.

61.  Fitzgerald also noticed a special meeting of the Board, to be held in Executive Session on November 29, 2017, where the Freeholders would discuss the Report and Fitzgerald and O'Connor would present recommendations to act on the Report.

62.  Plaintiff arrived with counsel for the Executive Session meeting on November 29, 2017.

63.  Fitzgerald immediately informed Plaintiff that he could not attend the meeting at its start to make a statement, since he was a "target."

64.  When Plaintiff's counsel informed Fitzgerald that Plaintiff wanted to put his objections to the proceeding on the record, Fitzgerald threatened to call the County Sheriff, to place him in handcuffs, and remove him from the meeting room.

65.  After leaving the room, Fitzgerald returned and relented, eventually allowing Plaintiff to speak, but cautioning him that he was not permitted to speak about or address the

merits of the Report.

66.  Plaintiff  first  requested  that  the  meeting  be conducted  on  the  record  and  Fitzgerald  confirmed  that handwritten notes were being taken of the proceeding.

67.  Plaintiff  has  not  been  provided  with  a  copy  of  these notes.

68.  Plaintiff  then  requested  that  he  be  permitted  to participate  in  the  meeting,  with  his  counsel  present,  and  this request  was  denied  by  Fitzgerald,  without  a  decision  by  the Board.

69.  Plaintiff  then  requested  that  DiMaso  recuse  herself given  that  she  was,  upon  information  and  belief,  one  of  the complainants.  Fitzgerald  denied  this  request,  again  without  the vote or participation of the Board.

70.  Plaintiff  then  requested  that  both  he  and  DiMaso  be recused  and  this  request  was  denied  by  Fitzgerald,  once  again without the Board's participation.

71.  Plaintiff  finally  objected  to  the  process  and,  in  lieu of  participating,  presented  a  letter  and  memorandum  from  his attorneys  setting  forth  his  position  and  requested  that  it  be considered  prior  to  and  in  connection  with  the  Board's deliberations with regard to the Report.

72.  A  copy  of  Plaintiff's  letter  and  rebuttal  memorandum are  attached  as  **Exhibit B**.  These  documents  are  filed  under  seal

as they contain confidential and highly sensitive information about the investigation and Report. (See Minute Order (ECF No. 4).)

73. Plaintiff then left the meeting, which lasted for approximately an hour and a half.

74. After the meeting, O'Connor and Fitzgerald met with Plaintiff and his attorney.

75. O'Connor and Fitzgerald explained that O'Connor had ordered that Plaintiff be barred from entering the Hall of Records, where the Board's business is conducted, at least until a special meeting and subsequent public session to occur on Monday, December 4, 2017.

76. O'Connor and Fitzgerald explained that this decision had been made by O'Connor without the vote or approval of the Board and that the Board did not take any votes during the meeting.

77. In addition, O'Connor had directed that Plaintiff could have no contact with any County employee, including his own confidential aide, until at least after the December 4 meetings.

78. Once again, this decision was made by O'Connor, without the approval of the Board.

79. Fitzgerald indicated that counsel for Plaintiff would be allowed at this meeting and would be allowed to question the

investigator, but would not be allowed to confront witnesses.

80. Fitzgerald abruptly stopped the meeting when he alleged that Plaintiff "glared" at O'Connor and has repeated the accusations on numerous occasions.

81. Fitzgerald stated that the executive session meeting would then be followed by the public meeting. The next day, Fitzgerald emailed counsel for Plaintiff listing the two resolutions to be considered at the public meeting: (1) to "update, expand and reinforce the Monmouth County policy on 'Prohibiting Workplace Discrimination and Harassment'" and (2) to officially censure Plaintiff. Attached as **Exhibit C** is a true and correct copy of this email.

82. Fitzgerald would consider the abovementioned resolutions to censure Plaintiff and to update, expand and reinforce the County policy on preventing workplace discrimination and harassment, as the current policy did not apply to Freeholders.

83. Plaintiff was barred from unrestricted access to the Hall of Records, and from having his support staff, for a period of two days.

84. Without a staff or an office, Plaintiff was unable to perform the essential functions of the job he was elected to perform.

85. The next day, Fitzgerald contacted Plaintiff's counsel

informing him that he saw Plaintiff's car parked at the Hall of Records and inquired what Plaintiff was doing at the Hall of Records.  Further, Fitzgerald questioned Plaintiff's counsel about the Freeholder business Plaintiff was attending to with his presence at the Hall of Records.  A true and correct copy of Fitzgerald's email to counsel is attached as **Exhibit D.**

86.  Plaintiff was fulfilling his duties as an elected Freeholder, a task which would require him to be in his office.

87.  To question Plaintiff's counsel after seeing Plaintiff's car in the parking lot suggests that Fitzgerald was actively surveilling the parking lot to keep Plaintiff from fulfilling his duties.

88.  Plaintiff has a duty to his constituents to carry out County business in the most effective way possible.

89.  Fitzgerald effectively forced Plaintiff to justify his presence and purpose as an elected official.

90.  By forcing Plaintiff to explain his presence in the Hall of Records, Fitzgerald actively chilled Plaintiff's First Amendment rights to speak and act on county policies for the benefit of his constituents.

D. **<u>Plaintiff's Federal Complaint</u>**

91.  On Friday, December 1, 2017, Plaintiff filed his initial complaint in this action along with an Order to Show Cause seeking Temporary Restraints and a Preliminary Injunction,

to prevent Defendants from going forward with the censure resolution on December 4, 2017, and to have access to his office and confidential aide.

92. Later that day, after appearing telephonically, Defendants agreed that Plaintiff could have access to the Hall of Records, the special meeting would not occur on Monday, December 4, 2017, and the parties would instead appear before the Court on that date.

93. Counsel for both parties appeared before the Court on December 4, 2017, along with Plaintiff, and Defendants O'Connor and Fitzgerald.

94. After hours of discussions, the parties agreed that Plaintiff would withdraw his motion for temporary restraints, and allow the special meeting to go forward.

95. It was further decided, and ordered by the Court, that the Report and Plaintiff's counsel's objections to it, Exhibits A and B to the in original complaint (ECF No. 2), would remain under seal.

96. By way of emails on December 5 and 7, 2017, counsel for Defendants informed Plaintiff and his counsel that the special meeting to issue the abovementioned resolutions would take place on December 8, 2017. Counsel for Defendants indicated that Plaintiff's counsel could attend the executive session on December 8, 2017, which would take place at 2:30 p.m., where he

could question the investigator and speak to the Board about the infirmities of the report and the *ultra vires* investigation. A true and correct copy of these emails are attached as **Exhibit E.**

## E. <u>Executive Session on December 8, 2017</u>

97. Counsel for Plaintiff arrived at the Hall of Records on December 8, 2017, to speak before the Board of Chosen Freeholders in their executive session, as counsel for Defendants indicated they could.

98. Counsel for Defendants refused to allow all of Plaintiff's attorneys, all lawyers at the same law firm and all representing Plaintiff, to attend the executive session, insisting that co-counsel were "members of the public" and as such, not allowed into the meeting, effectively depriving Plaintiff of his right to representation in the meeting.

99. Instead, only a single attorney for Plaintiff was permitted to attend the executive session meeting.

100. Defendant DiMaso was present at the executive session meeting, even though she has a direct personal interest in the matter, because she is named in the Report as a complainant.

101. Furthermore, not only did Defendant DiMaso attend the meeting, she attended deliberations as well, after counsel for Plaintiff had finished his presentation to the Board.

102. Also present at the executive session were Defendants Arnone, Rich, and Burry, who all have an indirect personal

interest in the matter because they are witnesses to some of the allegations contained in the report. These three Defendants also deliberated on the matter in the executive session.

**F. Public Session on December 8, 2017**

103. After deliberating, the Freeholders commenced the public session to consider the two resolutions listed in Exhibit C.

104. An audio recording of the meeting is available publicly on the Monmouth County Freeholders' web-site, http://oprs.co.monmouth.nj.us/oprs/Meetings/AudioPlayer.aspx?q=PYqLZRy1u6TQpkJkJqEvVXh%2f33QAuEwy. ("Audio of December 8, 2017 Special Meeting") Due to the format in which the audio is uploaded to the Monmouth County website, Plaintiff is unable to provide a copy of the audio.

105. Defendant Burry opened the meeting by making a statement on the record that "the process that has led to today's meeting has been challenging and required us to weigh every decision carefully." (Audio of December 8, 2017 Special Meeting, at 00:01:10.)

106. The Board took public comment and voted on the first resolution, to expand the current workplace discrimination policies so that it applies to the Board of Chosen Freeholders, and passed it 4-0.

107. Defendants, through counsel, read the censure

resolution of Plaintiff, a true and correct copy of which is attached as **Exhibit F.**

108. The resolution directly quotes and paraphrases from the Report, notwithstanding the Court's order that the Report remain under seal.

109. During the course of the reading of the censure resolution, a member of the public interrupted Defendants' counsel to inform the Freeholders that quoting passages from the Report violates the Court's sealing order, explaining: "This report is under seal as per an order of a federal district court judge." (Audio of December 8, 2017 Special Meeting, at 00:24:20.)

110. At least one Defendant and Defendants' counsel can be heard saying "gavel her down" and "gavel her down please." (Audio of December 8, 2017 Special Meeting, at 00:24:36.)

111. One of the Defendants then began striking the gavel, until Defendant Fitzgerald stated that the constituent was out of order and that "[Plaintiff's] counsel is here, I am confident that if he had that objection, he would have raised it." (Audio of December 8, 2017 Special Meeting, at 00:24:42.)

112. Indeed, when Plaintiff's counsel was allowed to speak, he specifically objected to Plaintiff's reading of the sealed Report to the public, as well as the various other concerns raised in this complaint. (Audio of December 8, 2017 Special

Meeting, at 00:37:24.)

113. Defendants continued reading the censure resolution, mischaracterized several of the statements in the Report, and failed to mention the Report's findings that none of Plaintiff's conduct constitutes a violation of any law.

114. Defendants also discussed allegations not contained in the Report, and which Plaintiff was provided no notice of or an opportunity to respond.

115. Furthermore, the censure resolution includes language that attempts to discredit Plaintiff because he filed a federal lawsuit to protect his constitutional rights, stating:

> Filing a lawsuit against the County of Monmouth and its Freeholders for alleged civil rights violations in the independent investigation, despite having been represented by his own legal counsel through the investigation process . . .

> Making a public statement discrediting the County Freeholders and the independent investigation in a press release on December 1, 2017; while at the same time attempting to prevent the County Freeholders from responding to his statement by seeking a restraining order;

> (See Exhibit F at 3.)

116. This language was intended to and has a chilling effect on Plaintiff's constitutional rights to file a lawsuit to exercise his rights and duties as an elected official.

117. The Board then voted 4-0 to adopt the resolution of Censure.

118. Only five days later, on December 13, 2017, the Chairman of the Monmouth County Republican Committee sent out an email to the "Monmouth County Republican Headquarters," with the subject line: "Important: Please Read." A true and correct copy of this email is attached hereto as **Exhibit G.**

119. This email reiterated and repeated the defamatory statements made by Defendants—and quoted from the Report even though it remains under seal—and also criticized Plaintiff for pursuing his rights in courts and for hiring a "Democratic State committee lawyer."

120. As Defendants intended, the email concludes that "[Plaintiff] should not run for re-election on the Republican line in 2018."

**COUNT ONE**
**Violation of to Due Process Under the Fourteenth Amendment to the U.S. Constitution**
**(42 U.S.C. § 1983)**

121. Plaintiff hereby repeats and incorporates by reference as if fully set forth herein the allegations contained in the preceding Paragraphs.

122. The Due Process Clause of the Fourteenth Amendment to the U.S. Constitution mandates that no person shall be deprived of property without Due Process of Law, and thus confers upon Plaintiff protection from arbitrary governmental action.

123. As an elected Freeholder, Plaintiff is not an employee

of the County.

124. Rather, Plaintiff is an elected official who is held accountable by his electorate.

125. The County has a longstanding custom and tradition of affording Freeholders office space in which to work, as well as aides to assist them with their responsibilities.

126. Plaintiff had a legitimate expectation of retaining an office and being assigned aides to facilitate and aid him in the performance of his official duties as Freeholder.

127. As an elected official, Plaintiff has a protected property interest in his position.

128. Defendants DiMaso, Arnone, Rich, Burry, Fitzgerald, and O'Connor deprived Plaintiff of the rights secured to him by the United State Constitution.

129. In depriving Plaintiff of these rights, the abovementioned Defendants acted under color of state law. This deprivation under color of state law is actionable under, and may be redressed by 42 U.S.C. § 1983.

**COUNT TWO**
**Violation of Due Process Under Article I, Paragraph 1 of the New Jersey State Constitution**
**(New Jersey Civil Rights Act, N.J.S.A. 10:6-2)**

130. Plaintiff hereby repeats and incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs.

131. The Due Process Clause of Article 1, Paragraph 1 of the New Jersey Constitution protects New Jersey's citizens from being deprived of their property without Due Process of Law and thus confers upon Plaintiff protection from arbitrary governmental action.

132. Plaintiff has not, nor has ever been, considered an "employee" by the County.

133. Plaintiff is an elected official, and as such, is held accountable to his constituents.

134. Since being elected over eight years ago, Plaintiff has retained an office in the Hall of Records as well as a confidential aide.

135. By barring Plaintiff access to the Hall of Records and placing his confidential aide on administrative leave, without any sort of due process, Defendants deprived Plaintiff of his rights guaranteed to him by the New Jersey State Constitution.

136. Defendants further deprived the electorate of their elected official for two days, based upon unfounded and uncorroborated allegations in the Report.

137. Furthermore, Defendants took this action, with a false sense of urgency, as they had waited to take any action against Plaintiff for almost two months after they had the Report.

## COUNT THREE
### Violation of to Due Process Under the Fourteenth Amendment to the U.S. Constitution
(42 U.S.C. § 1983)

138. Plaintiff hereby repeats and incorporates by reference as if fully set forth herein the allegations contained in the preceding Paragraphs.

139. The County has a longstanding custom and tradition of affording Freeholders office space in which to work, as well as aides to assist them with their responsibilities.

140. Plaintiff has a legitimate expectation of retaining an office and being assigned aides to facilitate and aid him in the performance of his official duties as Freeholder.

141. Plaintiff has been issued an office throughout his term serving as a Freeholder, and he has been assisted by aides for that entire period.

142. The Report contains statements that were published to the Freeholders and were untrue.

143. In addition, by censuring Plaintiff, posting publicly an agenda item to consider such censure, and further including such false statements on the record and posting the resolution publicly, Defendants have further published untrue statements about Plaintiff.

144. Defendant Monmouth County Board of Chosen Freeholders deprived, and is continuing to deprive, Plaintiff of the rights

secured to him by the United States Constitution.

145. By ratifying Defendants DiMaso, Arnone, Rich, Burry, Fitzgerald, and O'Connor's actions through issuance of the censure resolution, Defendant Monmouth County Board of Chosen Freeholders violated, and is continuing to violate, Plaintiff's due process rights, in particular his liberty interest in his reputation, as guaranteed by the Fourteenth Amendment to the United States Constitution.

146. In so doing, Defendant Monmouth County Board of Chosen Freeholders further deprived Plaintiff of the ability to perform the function of his office, and have therefore deprived Plaintiff of his protected property interest in his elected office.

147. In depriving Plaintiff of these rights, Defendant Monmouth County Board of Chosen Freeholders acted under color of state law.

## COUNT FOUR
## Violation of Due Process Under Article I, Paragraph 1 of the New Jersey State Constitution
### (New Jersey Civil Rights Act, N.J.S.A. 10:6-2)

148. Plaintiff hereby repeats and incorporates by reference as if fully set forth herein the allegations contained in the preceding Paragraphs.

149. The Report and the Censure Resolution contain statements that are false.

150. Defendants acted deliberately or with reckless disregard for the truth in publishing these statements.

151. Under the New Jersey Constitution, Plaintiff has a protected liberty interest in his reputation.

152. Defendants acted to harm Plaintiff's reputation, violating his liberty interest protected under the State Constitution.

### COUNT FIVE
### Declaratory Judgment
### (Against all Defendants)

153. Plaintiff hereby repeats and incorporates by reference as if fully set forth herein the allegations contained in the preceding Paragraphs.

154. Plaintiff is not an employee of the County and not under the supervision of Fitzgerald or O'Connor in their administrative roles with respect to the County.

155. Rather, Plaintiff is an elected official who is held accountable by his electorate.

156. Neither the County Counsel nor County Administrator have independent investigatory powers.

157. Under the Code, the creation of departments, divisions or offices must be made by resolution of the Board.

158. Upon information and belief, the OPS was not created by resolution adopted and/or approved by the Board.

159. Upon information and belief, neither O'Connor nor

Fitzgerald sought the approval of the Board to create the OPS.

160. Nevertheless, upon information and belief, O'Connor and Fitzgerald used the OPS to assist in the investigation, and also engaged an outside investigator.

161. Upon information and belief, the Board never authorized the investigation or the engagement of an investigator.

162. The investigator investigated not only the complaint about the parade, but also complaints that, upon information and belief, originated from another Freeholder and not from an employee of the County.

163. After a nearly five-month investigation, the independent investigator issued the Report to Fitzgerald on the investigation's findings.

164. The Report was substantively flawed in several respects, including relying on unsubstantiated allegations and opining and speculating on issues of law.

165. The Report was then published to the Board, referenced in a public agenda item relating to the proposed censure of Plaintiff, and was further communicated to the public at the public session on December 8, 2017.

166. The Board then acted upon the Report at the public session on December 8, 2017.

167. The Board then read a resolution censuring Plaintiff

based on conduct alleged in the Report, much of which is untrue, and added further allegations that were not contemplated by the Report, which are also untrue.

**COUNT SIX**
**Retaliation for Protected Free Speech Under the First Amendment**
**(42 U.S.C. § 1983)**

168. Plaintiff hereby repeats and incorporates by reference as if fully set forth herein the allegations contained in the preceding Paragraphs.

169. Plaintiff's statements and conduct as a Freeholder in expressing his political views are constitutionally protected speech.

170. Defendants' actions above were intended to prevent Plaintiff from engaging in constitutionally protected speech in furtherance of his position as a Freeholder.

171. Defendants' actions preventing Plaintiff from hiring confidential aides or using office space caused Plaintiff the ability to express his political views and represent his constituents as a Freeholder.

172. Defendants' actions are a violation of Plaintiff's Free Speech rights protected by the Federal Constitution.

**COUNT SEVEN**
**Retaliation for Protected Free Speech Under Article I,**
**Section 1, Paragraph 6 of the New Jersey State Constitution**
**(New Jersey Civil Rights Act, N.J.S.A. 10:6-2)**

173. Plaintiff hereby repeats and incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs.

174. Plaintiff's statements and conduct as a Freeholder as protected as constitutional activity under the State Constitution.

175. By taking actions to prevent Plaintiff from having access to his office, placing his confidential aide on administrative leave, and censuring him on the bases of allegations in the Report, seemingly corroborated by Plaintiff's speech from various Freeholder meetings, Defendants have retaliated against Plaintiff to prevent him from expressing his political views.

176. Defendants' actions are a violation of Plaintiff's Free Speech rights protected by the New Jersey State Constitution.

**COUNT EIGHT**
**Violation of the Speech and Debate Clause of Article I,**
**Section 6, Clause 1 of the U.S. Constitution**
**(42 U.S.C. § 1983)**

177. Plaintiff hereby repeats and incorporates by reference as if fully set forth herein the allegations contained in the preceding Paragraphs.

178. The Federal Constitution protects state and local legislators from civil liability for statements made or actions taken in the sphere of legitimate legislative activity.

179. The Report relies upon statements made by Plaintiff in the context of debates during open, public sessions of the Board, in which he participated as a duly elected Freeholder.

180. The Report purports to rely on these statements by Plaintiff as corroborative of, or supporting "findings" of behaviors deserving of remedial or punitive actions.

**COUNT NINE**
**Violation of the Speech and Debate Clause Under Article IV,**
**Section 4, Paragraph 9 of the New Jersey State Constitution**
**(New Jersey Civil Rights Act, <u>N.J.S.A.</u> 10:6-2)**

181. Plaintiff hereby repeats and incorporates by references as if fully set forth herein the allegations contained in the preceding paragraphs.

182. The State Constitution enshrines the common-law immunity afforded to local legislators for statements made or actions taken in the sphere of legitimate legislative activity.

183. The Report relies upon allegations seemingly corroborated by statements made by Plaintiff in the context of Freeholder comments and debate during open, public sessions of the Board, in which he participated in his official capacity as an elected Freeholder.

184. The censure of Plaintiff was upon the basis of the uncorroborated allegations in the Report.

## COUNT TEN
### Conspiracy to Violate Constitutional Rights
#### (42 U.S.C. § 1985)

185. Plaintiff hereby repeats and incorporates by reference as if fully set forth herein the allegations contained in the preceding Paragraphs.

186. Defendants conspired to violate Plaintiff's rights secured by the First and Fourteenth Amendments to the United States Constitution.

187. Defendants acted intentionally and with reckless indifference to Plaintiff's rights.

188. Defendants acted willfully, maliciously, wantonly, oppressively, knowingly, in bad faith and with callous and reckless disregard for Plaintiff's constitutional rights.

189. Defendants' acts were the direct and proximate cause of harm to Plaintiff, including but not limited to harassment, embarrassment, humiliation, emotional distress, pain and suffering, and loss of federal constitutional rights.

## COUNT ELEVEN
### Violation of Local Government Ethics Law N.J.S.A. 40A:9-22.1, et. seq.
#### (Against Defendants DiMaso, Arnone, Rich, and Burry)

190. Plaintiff hereby repeats and incorporates by reference

32

as if fully set forth herein the allegations contained in the preceding Paragraphs.

191. New Jersey's Local Government Ethics Law sets forth a statutory code of conduct covering the officers and employees of local governments.

192. Members of the Board are "local government officers" under the New Jersey Local Government Ethics Law. N.J.S.A. 40A:9-22.3(e), (f), (g).

193. N.J.S.A. 40A:9-22.5(d) provides: "No local government officer or employee shall act in his official capacity in any matter where he, a member of his immediate family, or a business organization in which he has an interest, has a direct or indirect financial or personal involvement that might reasonably be expected to impair his objectivity or independence of judgment."

194. On November 29, 2017, Defendant DiMaso participated in the Executive Session in which the Report was discussed.

195. Upon information and belief, Defendant DiMaso is a named complainant.

196. At the November 29, 2017 Executive Session, Fitzgerald demanded Plaintiff not participate in said session as he was a "target" of the investigation.

197. Plaintiff requested that if he were to be excluded from deliberations, that DiMaso also be excluded as she is a named complainant.

198. Fitzgerald refused this request.

199. DiMaso participated in deliberations regarding a Report in which she has direct personal involvement, in violation of N.J.S.A. 40A:9-22.5(d).

200. Furthermore, even after Defendants were on notice that Defendant DiMaso should not be participating as it would violate the Local Government Ethics Law, Defendants not only allowed DiMaso to participate in deliberations at the Executive Session on December 8, 2017, but also allowed her to make a public statement about the censure resolution and vote on the resolution, even though she has a direct personal interest in the outcome.

201. Defendants Burry, Arnone, and Rich also participated in the deliberations at the Executive Sessions of November 29, 2017 and December 8, 2017.

202. Defendants Burry, Arnone, and Rich are mentioned in the Report as potential witnesses to the alleged incidents involving Plaintiff.

203. As such, Defendants Burry, Arnone, and Rich have an indirect personal interest in the outcome.

204. By participating in the Executive Session, making public comment on, and voting for the censure resolution at the Public Session on December 8, 2017, Defendants Burry, Arnone, and Rich violated <u>N.J.S.A.</u> 40A:9-22.5(d).

**<u>COUNT TWELVE</u>**
**<u>Defamation</u>**
**(Against All Defendants)**

205. Plaintiff hereby repeats and incorporates by reference as if fully set forth herein the allegations contained in the preceding Paragraphs.

206. Defendant Fitzgerald distributed copies of the Confidential Report to the Board on November 29, 2017, thereby publishing it.

207. The Report contains numerous false and unsubstantiated allegations against Plaintiff.

208. By communicating the contents of the Report to the Board, Defendant Fitzgerald thereby published the Report.

209. Defendant Fitzgerald published the Report even after Plaintiff, and indeed Plaintiff's counsel, stated that the allegations were not true.

210. By publishing the Report to the Board, notwithstanding Plaintiff's numerous attempts to indicate the falsity of the allegations, Defendant Fitzgerald did so knowingly and with reckless disregard for the truth.

211. Not only did Defendant Fitzgerald defame Plaintiff by publishing the Report to the Board, but continued to defame Plaintiff when contents of the Report were put into the Censure Resolution, in violation of a court order.

212. On December 4, 2017, Defendants issued the Censure Resolution which contained specific language from the Report detailing the unsubstantiated and false allegations against Plaintiff.

213. Defendants issued and voted upon this censure resolution, even though it contained defamatory statements, of which they had been aware of since at least November 29, 2017, when Plaintiff's counsel informed them of the defamatory statements contained in the report.

214. By having the censure resolution read into the public record, and voting in favor of it 4-0, Defendants showed their reckless disregard for the truth of the published statements, thereby defaming Plaintiff.

215. Plaintiff's suffered damages based on the publication of the Report in an amount to be determined at trial.

**WHEREFORE**, Plaintiff demands judgment:

I.   **Declaratory Relief**

a.   Declaring that the Office of Professional Standards was improperly and unlawfully created and, therefore, acted outside of its legal authority by

commencing an investigation into Plaintiff.

b.   Declaring that O'Connor and Fitzgerald acted outside the scope of their authority by commencing an investigation into Plaintiff without Board approval.

c.   Declaring that the investigation of Plaintiff was *ultra vires* and any Report issued as a result thereof cannot be relied upon as the basis for any punitive action against Plaintiff.

## II.   Injunctive Relief

a.   Permanently enjoining Defendants from taking further actions based on the Report.

b.   Permanently enjoining Defendant from further publishing the Report.

## III. Damages and Other Relief

a.   Awarding compensatory and punitive damages against each Defendant, jointly and severally.

b.   Awarding Plaintiff attorneys' fees in accordance with 42 U.S.C. § 1988, costs of suit and such other relief as this court deems just and proper.

c.   Such further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff, John Curley hereby demands a trial by jury of all issues so triable.

Respectfully submitted,

**GENOVA BURNS LLC**

By: /s/ Angelo J. Genova
    ANGELO J. GENOVA
    *Attorneys for Plaintiff,*
    *John Curley*

Dated: December 22, 2017

## **VERIFICATION**

John Curley, being of full age, hereby certifies and says:

I am the Plaintiff in the foregoing Verified Complaint. I have read the foregoing Verified Complaint and am familiar with the facts therein. The same are true to the best of my knowledge based on information provided to me, as well as based on personal knowledge.

_____
John Curley

Dated: December 21, 2017