## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

JOHN CURLEY,

      Plaintiff,

         vs.

MONMOUTH COUNTY BOARD OF CHOSEN
FREEHOLDERS et als.,

      Defendants.

Civil Action No. 3:17-12300-BRM-TJB

**Civil Action**

Return Date:  October 15, 2018
Oral Argument Requested

---

**DEFENDANTS MICHAEL FITZGERALD, ESQ. AND TERI O'CONNOR'S BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED AND SUPPLEMENTAL VERIFIED COMPLAINT WITH PREJUDICE FOR FAILURE TO STATE A CLAIM ON WHICH RELIEF CAN BE GRANTED PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)**

---

McMORAN, O'CONNOR, BRAMLEY, & BURNS, PC
Ramshorn Executive Centre
2399 Highway 34 Suite D-1
Manasquan, New Jersey 08736
(732) 223-7711
(732) 223-7750
bmcmoran@mcmoranlaw.com
moconnor@mcmoranlaw.com

Attorneys for Defendants,
Michael Fitzgerald, Esq.
Teri O'Connor

On the brief:

    Bruce P. McMoran
    Michael F. O'Connor

## TABLE OF CONTENTS

Page No.

TABLE OF CONTENTS.........................................i

TABLE OF AUTHORITIES...................................iii

PRELIMINARY STATEMENT....................................1

STATEMENT OF FACTS AND PROCEDURAL HISTORY...............3

LEGAL ARGUMENT.........................................11

POINT I

THE COURT SHOULD DISMISS THE FIRST AMENDMENT RETALIATION
CLAIMS................................................11

  A.  Standards for Rule 12(b)(6) Motions..............11

  B.  Standards for First Amendment Retaliation
      Claims..........................................13

  C.  Plaintiff Has Once Again Failed to Allege
      Retaliation that Would Deter a Person of Ordinary
      Firmness from Exercising his Constitutional
      Rights..........................................15

  D.  Plaintiff Has Failed to Plead Allegations that
      Demonstrate a Causal Connection Between His
      Allegedly Protected Speech and the Alleged
      Retaliation.....................................17

  E.  Defendants Are Entitled to Immunity..............20

        a. Defendants have immunity under the Speech or
          Debate Clause...............................20

        b. Defendants are entitled to qualified
          immunity....................................22

POINT II

THE COURT HAS THE DISCRETION TO DISMISS THE STATE LAW
CLAIMS FOR LACK OF JURISDICTION........................25

POINT III

THE COURT SHOULD DISMISS PLAINTIFF'S CIVIL CONSIRACY
CLAIM...................................................25

POINT IV

THE COURT SHOULD DISMISS PLAINTIFF'S DEFAMATION
CLAIM...................................................26

  A.  Legal Standards.................................26

     1.  Actual Malice..............................26

     2.  privilege..................................28

  B.  Plaintiff Has Not Established the Elements of
     Defamation.....................................29

     1.  Plaintiff has failed to identify any false
       statements that Fitzgerald published.........29

     2.  Fitzgerald's statements were privileged......30

     3.  Plaintiff has failed to allege knowledge or
       reckless disregard...........................30

POINT V

THE COURT SHOULD DISMISS PLAINTIFF'S CLAIM FOR
DECLARATORY JUDGMENT...................................31

CONCLUSION.............................................32

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Aguas v. State*,
  220 N.J. 494 (2015) ....................................... 23, 24

*Alers v. City of Philidelphia*,
  919 F. Supp. 2d 528 (E. D. Pa. 2013) ........................ 17

*Andrews v. City of Philadelphia*,
  895 F.2d 1469 (3d Cir. 1990) ................................ 24

*Arneault v. O'Toole*,
  513 Fed. Appx. 195 (3d Cir. 2013) ........................... 18

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ..................................... 17, 29

*Bell Atl. v. Twombly*,
  550 U.S. 544 (2007) ......................................... 17

*Brennan v. Norton*,
  350 F.3d 399 (3d Cir. 2003) ................................. 15

*Burlington Industries v. Ellerth*,
  524 U.S. 742 (1998) ..................................... 23, 24

*Coles v. Carlini*,
  162 F.Supp.3d 380 (D.N.J. 2015) ............................. 14

*Curley v. Monmouth County Board of Chosen Freeholders*,
  2018 WL 3574880 (D.N.J. July 25, 2018) .................. *passim*

*DeAngelis v. Hill*,
  180 N.J. 1 (2004) ................................... 26, 27, 28

*Delli Santi v. CNA Ins. Cos.*,
  88 F.3d 192 (3d Cir. 1996) .................................. 18

*DeSantis v. Employees Passaic County Welfare Ass'n*,
  237 N.J.Super. 550 (App. Div. 1990) ..................... 28, 30

*Doe v. McMillan*,
  412 U.S. 306 (1973) ..................................... 20, 21

*Falat v. County of Hunterdon*,
   Civil Case No. 12-6804 (FSH)(MAH), 2014 WL 6611493
   (D.N.J. Nov. 21, 2014) ....................................... 15

*Faragher v. City of Boca Raton*,
   524 U.S. 775 (1998) .................................... 23, 24

*Feldman v. Philadelphia Hous. Auth.*,
   43 F. 3d 823 (3d. Cir. 1994) ............................... 17

*Gaines v. Bellino*,
   173 N.J. 301 (2002) .................................... 23, 24

*Galdamez v. Potter*,
   415 F.3d 1015 (9th Cir. 2005) .............................. 23

*In re Grand Jury Proceedings*,
   563 F.2d 577 (3d Cir. 1977) ............................... 21

*Harlow v. Fitzgerald*,
   457 U.S. 800 (1982) ....................................... 22

*Hogan v. Township of Haddon*,
   278 Fed.Appx. 98 (3d Cir. 2008) ....................... 21, 33

*Holt v. Commonwealth of Pennsylvania*,
   683 Fed.Appx. 151 (3d Cir. 2017) .......................... 24

*Hunter v. Bryant*,
   502 U.S. 224 (1991) ....................................... 22

*Johnson v. Bally's Atlantic City*,
   2005 WL 2141269 (3d Cir. Sept. 7, 2005) ................... 23

*Jorgensen v. Pennsylvania R. Co.*,
   25 N.J. 541 (1958) ........................................ 28

*Kentucky v. Graham*,
   473 U.S. 159 (1985) ....................................... 25

*Killion v. Coffey*,
   2016 WL 5417193 (D.N.J. 2016) ............................. 18

*Lauren W. (ex re. Jean W.) v. DeFlaminis*,
   480 F. 3d 259 (3d. Cir. 2007) ......................... 18, 19

*Lawrence v. Bauer Publ'g & Printing Ltd.*,
   89 N.J. 451, cert. denied, 459 U.S. 999 (1982) .......... 26, 27

*Lehmann v. Toys 'R Us*,
   132 N.J. 587 (1993) ........................................24

*McLaughlin v. Watson*,
   271 F.3d 566 (3d Cir. 2001) ....................15, 23, 24

*Mine Workers v. Gibbs*,
   383 U.S. 715 (1966) ........................................25

*Monroe v. Host Marriott Services Corp.*,
   999 F.Supp. 599 ...........................................28

*Monteiro v. City of Elizabeth*,
   436 F.3d 397 (3d Cir. 2006) ...............................14

*Mun. Revenue Servs., Inc. v. McBlain*,
   347 Fed.Appx. 817 (3d Cir. 2009) ..........................15

*Murphy v. Johns-Manville Products Corp.*,
   45 N.J.Super. 478 (App. Div. 1957) ........................28

*New York Times Co. v. Sullivan*,
   376 U.S. 254 (1964) ........................................27

*Redfield v. City of Jersey City*,
   Civ. No. 86-3869, 1989 WL 4956 (D.N.J. Jan. 23,
   1989) .....................................................25

*Reeder v. Madigan*,
   780 F.3d 799 (7th Cir. 2015) ..........................20, 21

*Robinson v. City of Pittsburgh*,
   120 F. 3d. 1286 (3d. Cir. 1997) ...........................18

*Rouse v. Bolden*,
   36 F.Supp.2d 204 (S.D.N.Y. 1999) ..........................24

*Estate of Smith v. Marasco*,
   318 F.3d 497 (3d Cir. 2003) ...............................18

*Springer v. Henry*,
   435 F.3d 268 (3d. Cir. 2008) ..............................17

*Stockley v. AT&T Information Systems, Inc.*,
   687 F.Supp. 764 (E.D.N.Y. 1988) ...........................28

*Thomas v. Independence Tp.*,
   463 F.3d 285 (3d Cir. 2006) ...............................22

*Tucker v. Fischbein*,
   237 F.3d 275 (3d Cir. 2001) ................................. 30

*Velez v. City of Jersey City*,
   358 N.J.Super. 224 (App. Div. 2003) ........................ 23

*Ward v. Zelikovsky*,
   136 N.J. 516 (1994) ........................................ 26

*Werkheiser v. Pocono Township*,
   780 F.3d 172 (3d Cir. 2017) ................................ 15

*Williams v. Philadelphia Hous. Auth. Police Dep't*,
   380 F.3d 751 (3d Cir. 2004) ................................ 18

*Winn v. Lynn*,
   941 F.2d 236 (3d Cir. 1990) ................................ 22

*Zimmerlink v. Zapotsky*,
   539 F.App'x 45 (3d Cir. 2013) ...................... 14, 15, 17

*Zoneraich v. Overlook Hosp.*,
   212 N.J.Super. 8 (App. Div. 1991) ......................... 29

## Statutes

42 U.S.C.A. § 1985 ............................................. 7

42 U.S.C. § 1983 ..................................... 14, 18, 21

Declaratory Judgment Act ................................... 8, 31

Local Government Ethics Law, N.J.S.A. 40A:9-22.1 .............. 7

New Jersey Civil Rights Act, N.J.S.A. 10:6-2 ................. 14

Tort Claims Act ............................................... 2

## Other Authorities

First Amendment ......................................... *passim*

Federal Rule of Civil Procedure 12(b)(6) ................. 1, 11

New Jersey Constitution ................................... 6, 7

Rule 56 ...................................................... 13

United States Constitution Article 1 Section 6 Debate
   Clause .................................................... 20

## PRELIMINARY STATEMENT

Defendants Michael D. Fitzgerald, Esq., and Teri O'Connor respectfully submit this brief in support of their motion to dismiss plaintiff John Curley's Second Amended and Supplemental Verified Complaint with prejudice for failure to state a claim on which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).

When the Court dismissed plaintiff's First Amended Complaint on July 25, 2018, plaintiff was a Monmouth County Freeholder making a Freeholder salary who had participated in each Freeholder vote in which he did not have a personal interest. The same remains true today. Plaintiff's Second Amended Complaint fails to allege that the defendants have terminated plaintiff, reduced his salary, or prevented plaintiff from performing his official duties for even a single day. None of the retaliatory acts that plaintiff alleges approach the type of extreme conduct necessary to establish a claim of First Amendment retaliation. Given the absence of such allegations, the Second Amended Complaint should be dismissed.

Indeed, the Second Amended Complaint relies primarily on the same allegedly retaliatory acts, which the Court found would not deter a reasonable person from exercising his constitutional rights, *i.e.*, Judge Cuff's investigation, the two-day restrictions on his access to the Hall of Records and his aide, and the censure resolution. Moreover, the specific examples of protected activity

1

that plaintiff alleges are too stale to establish a motive for retaliation. Finally, plaintiff has failed to allege any facts, which would alter the Court's prior holding that defendants' actions were privileged. For these reasons, the Court should dismiss plaintiff's claims of First Amendment retaliation with prejudice.

In addition to the First Amendment retaliation claims, plaintiff also repleads his common law defamation claim, which alleges that Fitzgerald defamed him by publishing Judge Cuff's report to the Board. The Court previously dismissed the defamation claim because plaintiff had not complied with the Tort Claims Act. Should the Court dismiss the First Amendment retaliation claim, it need not reach the state law claims over which it will then lack pendent subject matter jurisdiction.

Nonetheless, the defamation claim also fails to state a claim on which relief can be granted because (1) plaintiff failed to identify any false factual statement in Judge Cuff's report (2) Fitzgerald's act of providing the report to the Board was protected by an absolute privilege and (3) plaintiff failed to plead any facts, which establish a plausible claim that Fitzgerald knew or should have known that statements in the report were false.

Plaintiff also repleads his claims of civil conspiracy and "declaratory judgment," but, in order to find civil conspiracy, or issue a declaratory judgment, a court must first find that

defendants engaged in unlawful behavior.  Plaintiff has failed to plead an actionable claim of First Amendment retaliation or defamation.  Accordingly, the Second Amended Complaint should be dismissed with prejudice in its entirety.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

### A. The Parties

Plaintiff John Curley is a Freeholder on defendant Monmouth County Board of Chosen Freeholders (the "Board"). The Board is the legislative and executive body of Monmouth County.  Defendant Michael Fitzgerald is County Counsel.  Defendant Teri O'Connor is County Administrator.  Second Amended and Supplemental Verified Complaint ("Second Amended Complaint"), ¶¶12, 23, 31, 32.

### B. The Investigation

In June 2017, the County retained the Hon. Mary Catherine Cuff, P.J.A.D. (ret.) (the "Investigator") to investigate a complaint that plaintiff uttered a sexist remark in public during the May 2017 Bradley Beach Memorial Day Parade.  *Id.*, ¶103, 104-06, 111, Ex. A at 6.  The Investigator interviewed multiple witnesses, including two Freeholders: Serena DiMaso and plaintiff, whom the Investigator interviewed for two hours on September 29, 2017 with his attorney present.  *Id.*, Ex. A at 19-22, Ex. B.  The Investigator released her report (the "Report") to Fitzgerald on October 13, 2017.  Although the Board allegedly did not authorize the investigation, no freeholder, including plaintiff, objected to

3

the investigation before the Investigator issued her Report.   To the contrary, plaintiff participated in the investigation without objection with his attorney present.

Section I of the Report, "Statement of Allegations," contains the substance of the interviews.   Section II contains a statement of the law. Section III contains the Investigator's conclusions on the credibility of the statements made during the interviews. Section IV contains her recommendations.   *Id.*, Ex. A.

The allegations the Investigator found credible include:

4

████████████████████████████████████

██████████████████████████████

The Investigator concluded that plaintiff's alleged conduct could support an inference of sex discrimination or lead to the creation of a hostile work environment. *Id.* at 44-45.

## C. The Board Censures Plaintiff

On November 26, 2017, Fitzgerald distributed the Report to the Freeholders and noticed a special meeting of the Board, to be held in Executive Session, for November 29, 2017. Amended Complaint, ¶¶124-25. On November 29, 2017, the Board met to discuss the Report.

After the November 29, 2017 special meeting, Fitzgerald notified plaintiff that a special meeting would be held on December 4, 2017 to consider (1) a resolution to amend the County discrimination policy so it applied to Freeholders and (2) a resolution to censure plaintiff. Fitzgerald and O'Connor also informed plaintiff that O'Connor had decided that until the December 4, 2017 special meeting, plaintiff would neither be permitted to enter the Hall of Records unless he was on County business nor communicate with his aide. *Id.*, ¶¶139.

The restrictions remained in place for two days, *ibid* at ¶149, but did not prevent plaintiff from performing his duties. On November 30, 2017, the day following notice of the restrictions,

plaintiff admittedly worked at the Hall of Records "fulfilling his duties as an elected Freeholder." *Id.*, ¶¶151-52.

The Board ultimately met on December 8, 2017. During the public session, the proposed censure resolution was read aloud and then unanimously approved. *Id.*, ¶¶172, 173, 179, 183, Ex. F. The resolution expresses disapproval of plaintiff's remarks but imposes no punishment on plaintiff. *Id.*

On December 13, 2018, the Monmouth County Republican Party Committee Chair sent an email to Monmouth County Republican Headquarters, which, among other things, quoted from the censure resolution and concluded that plaintiff should not run for reelection as a Republican. *Id.*, ¶¶118-120.

**D. Plaintiff's First Amended Complaint**

On December 22, 2017, plaintiff filed his First Amended and Supplemental Verified Complaint ("First Amended Complaint") against the Monmouth County Board of Chosen Freeholders, the individual freeholders, Michael Fitzgerald, County Counsel and Teri O'Connor, the County Administrator. (ECF No. 7). The First Amended Complaint alleged that the defendants violated his federal and state constitutional due process rights (Counts One through Four), retaliated against him for engaging in speech protected by the First Amendment and the New Jersey Constitution (Counts Six

6

and Seven) and defamed him (Count Twelve).[1]  *Id.* In addition to damages, the First Amended Complaint sought a declaratory judgment that the actions that Fitzgerald and O'Connor took without Board approval were *ultra vires* (Count Five).

### E. The Court Dismissed the Amended Complaint for Failure to State a Claim on Which Relief Can Be Granted

On July 25, 2017, the Court dismissed the First Amended Complaint in its entirety. *Curley v. Monmouth County Board of Chosen Freeholders*, 2018 WL 3574880 (D.N.J. July 25, 2018). The Court dismissed the due process claims because plaintiff failed to sufficiently allege that the defendants deprived him of a protected property or liberty interest. The Court held that (1) the two-day restriction on plaintiff's access to the Hall of Records and his aide did not prevent plaintiff from fulfilling his job duties, (2) plaintiff had failed to allege facts that would support a claim of constructive discharge and (3) plaintiff's perceived harm to his reputation was *de minimis.*  *Id.* at *9-10.

The Court dismissed the First Amendment retaliation claims because plaintiff failed to either allege either (1) the specific statement or conduct that was protected or (2) "retaliatory action sufficient to deter a person of ordinary firmness from exercising

---

[1] The First Amended Complaint also claimed violations of the Speech or Debate Clause of the United States and New Jersey Constitutions (Counts Eight and Nine), a violation of 42 U.S.C.A. § 1985 (Count Ten) and a violation of the New Jersey Local Government Ethics Law, N.J.S.A. 40A:9-22.1 (Count Eleven).

his constitutional rights." *Id.* at *11-12.  The Court also held that defendants were entitled to qualified immunity. *Id.* The Court gave plaintiff an opportunity to replead the First Amendment retaliation claims and cure the deficiencies.

The Court dismissed Count Five, which purported to plead a claim of "declaratory judgment" that the investigation was *ultra vires,* because the Declaratory Judgment Act creates a remedy only, and plaintiff's First Amended Complaint failed to state a cause of action on which relief could be granted. The Court further found that plaintiff had failed to allege facts that demonstrated a substantial likelihood that he would suffer injury in the future. *Id.* at *15-16.

**F. Plaintiff's Second Amended Complaint**

On August 23, 2018, plaintiff filed his Second Amended Complaint. ECF No. 61. Counts One and Two of the Second Amended Complaint replead plaintiff's First Amendment retaliation claims. Count Three pleads a claim of civil conspiracy based on Counts One and Two. Count Four pleads defamation. Count Five seeks a declaratory judgment that Judge Cuff's investigation was *ultra vires*.

The Second Amended Complaint alleges that plaintiff engaged in the following protected activity:

- In 2008, plaintiff opposed the reappointment of a certain law firm as special county counsel (*Id.*, ¶¶57–59);

- In 2011, plaintiff opposed a budget increase at Brookdale Community College, reported irregularities to criminal authorities and called for the resignation of the members of the Board of Trustees (*Id.*, ¶¶60–66);

- In 2014, plaintiff voted against a land deal that would have benefitted an individual who had hosted a fundraiser for defendant Burry and reported the proposed deal to criminal authorities (*Id.*, ¶¶67–72);

- In 2016, plaintiff questioned defendant DiMaso's receipt of health insurance benefits (*Id.*, ¶¶73–82);

- At an unspecified point in time, plaintiff objected to a proposed contract to renovate the County Wellness Center between the County and an alleged business associate of defendant DiMaso (*Id.*, ¶¶83–88);

- At an unspecified point in time, plaintiff introduced a resolution to privatize county-owned nursing homes, which passed (*Id.*, ¶¶89–92);

- In February 2018, plaintiff opposed a proposal to construct a new Solid Waste Station facility submitted by the former Monmouth County Clerk (*Id.*, ¶¶93–97);

9

- In approximately 2013, plaintiff contacted the Monmouth County Prosecutor's office to investigate the Monmouth County Tax Board's "Tax Assessment Demonstration Program" and called on the Tax Board to halt the program pending the investigation (*Id.*, ¶¶98-102).

The Second Amended Complaint alleges the same allegedly retaliatory actions as the First Amended Complaint, *i.e.*, Judge Cuff's investigation, the two days without an aide and the censure resolution, and thus suffers from the same deficiency.

The only new allegation against O'Connor is that since December 22, 2017, O'Connor has performed job duties, which the Board had previously delegated to plaintiff. However, the Second Amended Complaint admits that the Board directed O'Connor to perform those duties. O'Connor did not "usurp" those duties herself. (ECF No. 61 at ¶¶188-194).

The only new allegation against Fitzgerald is that when plaintiff has asked Fitzgerald for legal advice, Fitzgerald has either "respond[ed] dismissively" or copied the other Freeholders on his response. *Id.* at ¶¶195-200.  However, plaintiff does not allege that Fitzgerald has refused to answer his legal questions. He merely complains of the manner in which Fitzgerald has conveyed his advice.

The Second Amended Complaint also alleges that after December 22, 2018, Fitzgerald and O'Connor authorized Judge Cuff to

10

investigate an allegation made by two county employees that plaintiff called them ███████████████ *Id.*, ¶¶13-14,235-41. Plaintiff does not deny making the remarks.

The Second Amended Complaint does not allege any other retaliatory actions by either Fitzgerald or O'Connor. In particular, it fails to allege that either defendant barred plaintiff from any Board meetings, prevented plaintiff from voting on any resolution or threatened or coerced the Freeholders into taking any material, adverse action against him. *Id.*

## LEGAL ARGUMENT

### POINT I

### THE COURT SHOULD DISMISS THE FIRST AMENDMENT RETALIATION CLAIMS

#### A. Standards for *Rule* 12(b)(6) Motions

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court is "required to accept as true all factual allegations in the complaint and draw all inferences in the facts alleged in the light most favorable to the [plaintiff]." *Curley v. Monmouth County Board of Chosen Freeholders*, 2018 WL 3574880 at *4 (quoting *Phillips v. Cty. Of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). "[A] complaint attacked by a ... motion to dismiss does not need detailed factual allegations." *Id.* (quoting *Bell Atl. v. Twombly*, 550 U.S. 544, 555 (2007). However, the plaintiff's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than

11

labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986). A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* (quoting *Papasan*, 478 U.S. at 286. Instead, assuming the factual allegations in the complaint are true, those "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* quoting *Twombly*, 550 U.S. at 555).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Id.* at *5 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for misconduct alleged." *Id.* This "plausibility standard" requires the complaint allege "more than a sheer possibility that a defendant has acted unlawfully," but it "is not akin to a 'probability requirement.' " *Id.* (quoting *Twombly*, 550 U.S. at 556). "Detailed factual allegations" are not required, but "more than an unadorned, the defendant-harmed-me accusation" must be pled; it must include "factual enhancements" and not just conclusory statements or a recitation of the elements of a cause of action. *Id.* (quoting *Twombly*, 550 U.S. at 555, 557).

"Determining whether a complaint states a plausible claim for

relief [is] ... a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* (quoting *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'show[n]'–'that the pleader is entitled to relief.' " *Id. (*citing *Iqbal* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

While as a general rule, a court may not consider anything beyond the four corners of the complaint on a motion to dismiss pursuant to 12(b)(6), the Third Circuit has held "a court may consider certain narrowly defined types of material without converting the motion to dismiss [to one for summary judgment pursuant under Rule 56]." *Id.* (citing *In re Rockefeller Ctr. Props. Sec. Litig.*, 184 F.3d 280, 287 (3d Cir. 1999)). Specifically, courts may consider any "'document *integral to or explicitly relied upon* in the complaint." *Id.* (citing *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d at 1426).

### B. Standards for First Amendment Retaliation Claims

To plead a claim for First Amendment retaliation, a plaintiff must allege:

    (1)  constitutionally protected conduct,

    (2)  retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and

> (3)   a causal link between the constitutionally protected
>
>        conduct and the retaliatory action.

*Id.* at 11 (citing *Wilson v. Yerke*, 604 F.App'x 149, 151 (3d Cir. 2015)).[2]

To meet the second prong of the test, a plaintiff must allege **"retaliation [that] interferes with [his] ability to adequately perform [his] elected duties**.**"**   *Id.* at 12 (quoting *Werkheiser v. Pocono Township*, 780 F.3d 172, 181 (3d Cir. 2017) (emphasis original). That standard requires the plaintiff to allege formal punishment or exclusion from meetings. *Compare Monteiro v. City of Elizabeth*, 436 F.3d 397, 404 (3d Cir. 2006) (finding sufficient evidence to support a First Amendment retaliation claim where the City Council President had a Council member arrested and removed from a meeting for speaking out against the Council President) with *Zimmerlink v. Zapotsky*, 539 F.App'x 45, 50 (3d Cir. 2013) (the Third Circuit held following acts would not deter a public official of ordinary firmness from engaging in protected speech: defendants held clandestine meetings that forced the plaintiff to abstain at five County Commissioner meetings, conspired to have a member of the public sue plaintiff, instructed public employees to

---

[2] Count One of the Second Amended Complaint, which pleads a claim under 42 U.S.C. § 1983, and Count Two, which pleads a claim under the New Jersey Civil Rights Act, N.J.S.A. 10:6-2, are subject to the same analysis. *See Coles v. Carlini*, 162 F.Supp.3d 380, 404 (D.N.J. 2015) (courts construe New Jersey Civil Rights Act in terms nearly identical to its federal counterpart, Section 1983)

manipulate meeting minutes to vilify plaintiff, wrote to the Governor implying that plaintiff had betrayed the public trust and made derogatory public statements critical of plaintiff).

"The First Amendment [does not] guard against every form of political backlash that might arise out of the everyday squabbles of hardball politics." *Werkheiser*, *supra,* 780 F.3d at 181 (citations omitted). Courts have declined to find that verbal reprimands and false accusations adversely affect a plaintiff's exercise of his First Amendment rights. *Brennan v. Norton*, 350 F.3d 399, 419 (3d Cir. 2003). Harassment and public statements, even when defamatory, do not "approach the extreme conduct that gives rise to a First Amendment retaliation claim." *Zimmerlink*, 539 Fed.Appx. at 50; *see also Mun. Revenue Servs., Inc. v. McBlain*, 347 Fed.Appx. 817, 825 (3d Cir. 2009) (defamatory remarks by public official do not adversely affect a plaintiff's First Amendment rights) and *McLaughlin v. Watson*, 271 F.3d 566, 573 (3d Cir. 2001) (same); *see also Falat v. County of Hunterdon*, Civil Case No. 12-6804 (FSH)(MAH), 2014 WL 6611493 (D.N.J. Nov. 21, 2014) at *10 (initiating investigation is insufficient basis for a First Amendment retaliation claim) (citing *McLaughlin, supra*).

## C. Plaintiff Has Once Again Failed to Allege Retaliation that Would Deter a Person of Ordinary Firmness from Exercising his Constitutional Rights

Plaintiff bases his First Amendment retaliation claims on the same actions that this Court previously held were not "sufficient

to deter a person of ordinary firmness from exercising his constitutional rights." *Curley*, *supra*, 2018 WL 3574880 at *12.

Plaintiff's only new allegation against O'Connor is that she is performing duties that the Board formerly delegated to plaintiff. The claim fails because plaintiff does not allege that O'Connor retaliated against him by reducing his duties. Rather, he admits that she is acting at the direction of the Board. Second Amended Complaint, ¶193. In any event, plaintiff continues to receive his salary and has voted on all issues in which he had no personal interest. The *de minimis* actions of which he complains are insufficient to deter a person of ordinary firmness from exercising his constitutional rights.

Without the support of a single example, the Second Amended Complaint alleges that Fitzgerald has deprived plaintiff of effective legal advice by either responding dismissively to plaintiff's requests for advice or copying the other freeholders on his responses. However, plaintiff does not complain that Fitzgerald refused to give him legal advice; he merely complains about the manner in which the advice was delivered. The *de minimis* conduct of which plaintiff complains is not conduct that would deter a person of ordinary firmness from exercising his constitutional rights.[3]

---

[3] The Second Amended Complaint does not allege facts that support plaintiff's conclusion that he has been deprived of effective legal

Plaintiff also complains that defendants authorized Judge Cuff to issue a supplemental, defamatory report. The report is not defamatory. But, even if the report was defamatory, the case law is clear that defamatory statements do not "approach the extreme conduct that gives rise to a First Amendment retaliation claim." *Zimmerlink*, 539 Fed.Appx. at 50

Plaintiff's First Amendment retaliation claims against Fitzgerald and O'Connor should be dismissed.

### D. Plaintiff Has Failed to Plead Allegations that Demonstrate a Causal Connection Between His Allegedly Protected Speech and the Alleged Retaliation

A causal nexus exists between protected activity and allegedly retaliatory acts where the plaintiff shows that his speech was a substantial or motivating factor for the alleged retaliation. *Springer v. Henry*, 435 F.3d 268, 275 (3d. Cir. 2008); *Feldman v. Philadelphia Hous. Auth.*, 43 F. 3d 823, 829 (3d. Cir. 1994); *Alers v. City of Philidelphia*, 919 F. Supp. 2d 528, 555 (E. D. Pa. 2013). A plaintiff must do more than allege "the mere possibility of misconduct." *Iqbal*, 556 U.S at 679. A plaintiff who lacks direct evidence of retaliation may rely on circumstantial evidence to prove retaliation only where there is (1) an unusually

---

advice. *See Twombly*, 550 U.S. at 555-557, *Iqbal*, 556 U.S. at 679. But, even if plaintiff had alleged that Fitzgerald refused to give him legal advice, that conduct could not support a First Amendment retaliation claim, as it did not interfere with plaintiff's right to attend and vote at Board meetings.

suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link. *Lauren W. (ex re. Jean W.) v. DeFlaminis*, 480 F. 3d 259, 267 (3d. Cir. 2007); *see also Robinson v. City of Pittsburgh*, 120 F. 3d. 1286, 1302 (3d. Cir. 1997); *Delli Santi v. CNA Ins. Cos.,* 88 F.3d 192, 199 n. 10 (3d Cir. 1996)("timing alone will not suffice to prove retaliatory motive").

The Third Circuit has directed courts to "be diligent in enforcing these causation requirements [in Section 1983 First Amendment Cases] because otherwise a public actor cognizant of the possibility that litigation might be filed against him, particularly in his individual capacity, could be chilled from taking action the he deemed appropriate and, in fact, was appropriate." *Lauren W.*, 480 F. 3d at 267. Accordingly, courts in this circuit have not hesitated to dismiss complaints based on acts of alleged retaliation, which followed the allegedly protected speech by more than one year. *See Killion v. Coffey*, 2016 WL 5417193 (D.N.J. 2016) at *14-15(a year between the protected activity and retaliation is insufficient); *see also Williams v. Philadelphia Hous. Auth. Police Dep't*, 380 F.3d 751, 760 (3d Cir. 2004); *Estate of Smith v. Marasco*, 318 F.3d 497, 512-13 (3d Cir. 2003); *Arneault v. O'Toole*, 513 Fed. Appx. 195, 198 (3d Cir. 2013).

18

Plaintiff alleges that political positions he took in 2008, 2011, 2013, 2014 and early 2016 caused defendants to retaliate against him during the second half of 2017. Under the authority cited above, the conduct on which plaintiff relies is far too remote in time from the retaliation plaintiff claims he experienced at the end of 2017 to establish a plausible case of retaliation. Rather, it is apparent that defendants' decision to commence an investigation in June 2017 was a legitimate and legally required response to the discrimination complaint received following the 2017 Bradley Beach Memorial Day Parade.

Plaintiff's history of taking unpopular positions without retribution further demonstrates the implausibility of his claim. Plaintiff proudly claims that he has been a persistent thorn in the side of his fellow freeholders and local Republican party leadership since 2008. Yet, he does not allege a single incident of retaliation prior to June 2017. That chain of events does not evidence a allege a "pattern of antagonism." *Lauren W., supra.* To the contrary, it shows that the defendants have tolerated plaintiff's political views at all times.

The only recent example of protected speech alleged in the Second Amended Complaint is plaintiff's February 2018 opposition to the construction of a proposed Solid Waste Facility. However, that conduct occurred after the December 8, 2018 censure resolution that is the gravamen of the Second Amended Complaint. That

19

incident, alone or in conjunction with plaintiff's other allegations of protected activity, does not support an inference of retaliation against either Fitzgerald or O'Connor.

### E. Defendants Are Entitled to Immunity

#### a. Defendants have immunity under the Speech or Debate Clause

The Speech or Debate Clause of Article 1 Section 6 of the United States Constitution establishes absolute immunity for elected officials and their staff from claims arising out of legislative acts. *Doe v. McMillan*, 412 U.S. 306, 312 (1973); *Reeder v. Madigan*, 780 F.3d 799, 802 (7th Cir. 2015).

"The protections of this clause have long been held to extend beyond mere discussion or speechmaking on the legislative floor." *Id*. at 802 (citing *Kilbourn v. Thompson*, 103 U.S. 168, 204 (1880)). The Clause is construed broadly to apply to all actions that constitute "legitimate legislative activity." *Id*. at 802 (quoting *Tenney v. Brandhove*, 341 U.S. 367, 376 (1951).

"Just as the Speech or Debate Clause extends beyond literal speech and debate, so too does it apply to others besides members of the United States Congress." *Id*. at 802. ***"Legislators at the state, regional, and municipal levels are also entitled to absolute immunity for their legislative activities."*** *Id*. at 802 (citing *Bogan v. Scott-Harris*, 523 U.S. 44, 53-54 (1998) (emphasis added);

20

*Hogan*, 278 Fed.Appx. at *103 ("Municipal legislators enjoy absolute immunity from suit and liability under 42 U.S.C. § 1983).

Moreover, the immunity extends to "actors on the legislative stage who are not elected officials themselves." *Id.* at 802 (citing *Gravel v. United States*, 408 U.S. 606, 625 (1972). As the Supreme Court held in *McMillian* in analogous circumstances:

> Without belaboring the matter further, it is plain to us
> that the complaint in this case was barred by the Speech
> or Debate Clause insofar as it sought relief from the
> Congressmen-Committee members, ***from the Committee staff***,
> from the consultant, or from the investigator, for
> introducing material at Committee hearings that
> identified particular individuals, ***for referring the
> Report that included the material to the Speaker of the
> House***, and for voting for publication of the report.
> Doubtless, also, a published report may, without losing
> Speech or Debate Clause protection, be distributed to
> and used for legislative purposes by Members of
> Congress, congressional committees, and institutional or
> individual legislative functionaries. At least in these
> respects, the actions upon which petitioners sought to
> predicate liability were 'legislative acts,' *Gravel v.
> United States, supra*, at 618 of 408 U.S., at 2623 of 92
> S.Ct., and, as such, were immune from suit.[7]

412 U.S. at 312 (emphasis added).[4]

Defendants Fitzgerald and O'Connor have absolute immunity for their role in Judge Cuff's investigation and distributing the report. Further, to the extent that plaintiff claims that O'Connor is performing his former legislative duties at the direction of the Board, she is entitled to absolute immunity for same.

---

[4] *See also In re Grand Jury Proceedings*, 563 F.2d 577, 583-85 (3d Cir. 1977) (recognizing privilege for state legislators and their aides).

**b. Defendants are entitled to qualified immunity**

Qualified immunity "protects government officials performing discretionary functions insofar as their conduct does not violate clearly established statutory or constitutional rights which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Winn v. Lynn*, 941 F.2d 236, 239 (3d Cir. 1990). An essential attribute of qualified immunity is the "entitlement not to stand trial or face the other burdens of litigation, conditioned on the resolution of the essentially legal question whether the conduct of which the plaintiff complains violated clearly established law." *Thomas v. Independence Tp.*, 463 F.3d 285, 291 (3d Cir. 2006).

The immunity is intended to protect officials from the potential consequences of suit, including distraction from official duties, inhibition of discretionary action and deterrence of able people from public service. *Id.* Thus, the inquiry should be performed at as early a stage in the litigation as possible. *Hunter v. Bryant*, 502 U.S. 224 (1991). "[E]ven such pretrial matters as discovery are to be avoided if possible, as '[i]nquiries of this kind can be peculiarly disruptive of effective government.'" *Thomas,* 463 F.3d at 291.

A discretionary function 1) must involve an element of choice or judgment and 2) a decision to protect such discretion must be based on public policy. *Winn*, 941 F.2d at 240 (citing *Berkovitz*

22

*v. United States*, 486 U.S. 531, 536-37 (1988). "The essential inquiry is whether a reasonable official in the defendant's position at the relevant time 'could have believed, in light of clearly established law, that [his or her] conduct comported with established legal standards." *McLaughlin*, 271 F.3d at 571 (quoting *Merkle v. Upper Dublin Sch. Dist.,* 211 F.3d 782 797 (3d Cir. 2000).

In dismissing plaintiff's First Amended Complaint, the Court correctly found that Fitzgerald and O'Connor were entitled to qualified immunity. Plaintiff has not pled any new facts to alter that holding. A reasonable official in Fitzgerald and O'Connor's positions would have believed that initiating an investigation and recommending censure comported with law.

First, under Title VII and the LAD, employers have an obligation to investigate allegations of sexist remarks and take corrective action. *Burlington Industries v. Ellerth*, 524 U.S. 742, 765 (1998); *Faragher v. City of Boca Raton*, 524 U.S. 775, 807-08 (1998); *Aguas v. State*, 220 N.J. 494 (2015); *Gaines v. Bellino*, 173 N.J. 301, 314 (2002) (citing *Lehmann v. Toys 'R Us*, 132 N.J. 587, 622 (1993)). The duty to maintain a discrimination-free workplace requires employers to address discriminatory conduct by non-employees as well as employees. *Johnson v. Bally's Atlantic City*, 2005 WL 2141269 (3d Cir. Sept. 7, 2005) at *1; *Galdamez v. Potter*, 415 F.3d 1015, 1022 (9th Cir. 2005); *Velez v. City of Jersey City*, 358 N.J.Super. 224, 234 (App. Div. 2003). The

23

same obligation applies to alleged remarks about an employee's sexual orientation. The failure to investigate can expose the employer and the supervisors who failed to investigate to civil liability. *Ellerth, Faragher, Aguas, Gaines, Lehmann, supra; see also Andrews v. City of Philadelphia*, 895 F.2d 1469, 1479–80 (3d Cir. 1990) (supervisor held liable for failure to investigate sexual harassment claims); *Rouse v. Bolden*, 36 F.Supp.2d 204, 205 (S.D.N.Y. 1999) (supervisor who acts with deliberate indifference to sexual harassment claim not entitled to qualified immunity).

Second, "[t]he Third Circuit has not considered whether the initiation of an internal investigation can constitute an 'adverse action' for purposes of a First Amendment retaliation claim, and our sister circuits are split on the issue." *Holt v. Commonwealth of Pennsylvania*, 683 Fed.Appx. 151, 159 (3d Cir. 2017). In *Holt*, the Third Circuit held, "This disagreement among our sister courts indicates that [defendants are] entitled to qualified immunity. After all, '[i]f judges thus disagree on a constitutional question, it is unfair to subject [a public official] to money damages for picking the losing side of the controversy.'" *Id.*

Third, at the time that Fitzgerald and O'Connor allegedly recommended censure, Third Circuit precedent was clear that merely criticizing a plaintiff or even "strongly urging" a third party to take adverse action against a plaintiff did not violate that plaintiff's constitutional rights. *McLaughlin*, 271 F.3d at 573.

See *also Redfield v. City of Jersey City*, Civ. No. 86-3869, 1989 WL 4956 (D.N.J. Jan. 23, 1989) at *10 (state actors entitled to immunity for personnel decision short of termination).

Thus, neither Fitzgerald nor O'Connor had any reason to believe that their alleged conduct would have violated plaintiff's First Amendment rights. *Id.* To the contrary, each defendant had reason to believe that his or her own speech was protected. *Id.* The Court should dismiss the claims for damages against defendants Fitzgerald and O'Connor because they are immune to suit.[5]

### POINT II

### THE COURT HAS THE DISCRETION TO DISMISS THE STATE LAW CLAIMS FOR LACK OF JURISDICTION

Count One of the Second Amended Complaint, which pleads First Amendment retaliation, presents the only federal question in the case. Should the Court dismiss Count One, only state law claims will remain. In that event, dismissal of the state law claims would be appropriate. *Mine Workers v. Gibbs,* 383 U.S. 715, 726-27 (1966).

### POINT III

### THE COURT SHOULD DISMISS PLAINTIFF'S CIVIL CONSPIRACY CLAIM

Count Three of the Second Amended Complaint alleges that defendants conspired to retaliate against plaintiff for engaging

---

[5] The claims against defendants Fitzgerald and O'Connor in their official capacities should be dismissed. *Kentucky v. Graham*, 473 U.S. 159, 167 n. 14 (1985)

in protected speech.  Because plaintiff cannot plead a *prima facie* case of First Amendment retaliation against the defendants, *see* Point I, *supra*, the civil conspiracy claim should be dismissed.

**POINT IV**

**THE COURT SHOULD DISMISS PLAINTIFF'S DEFAMATION CLAIM**

**A. Legal Standards**

**1. Actual malice**

"The law of defamation exists to achieve the proper balance between protecting reputation and protecting free speech." *Ward v. Zelikovsky*, 136 N.J. 516, 528 (1994). "The elements of a defamation claim are: (1) the assertion of a false and defamatory statement concerning another; (2) the unprivileged publication of that statement to a third party; and (3) fault amounting at least to negligence by the publisher. *DeAngelis v. Hill*, 180 N.J. 1, 12 (2004) (citing *Restatement (Second) of Torts*, supra, § 558).

"When the plaintiff is a public official, plaintiff must establish that the defendant knowingly or with reckless disregard for the truth published false statements." *Id.* at 13 (citing Restatement (Second) of Torts, § 580A). "Courts have referred to this standard as "actual malice." *Id.* (*citing New York Times Co. v. Sullivan*, 376 U.S. 254, 279–80 (1964); *Lawrence v. Bauer Publ'g & Printing Ltd.*, 89 N.J. 451, cert. denied, 459 U.S. 999 (1982).

"To satisfy the actual malice standard, plaintiff must establish by clear and convincing evidence that defendant

26

published the statement with 'knowledge that it was false or with reckless disregard of whether it was false." *Id.* (citing *Sullivan*, 376 U.S. at 279-80, 285-86. "In order to demonstrate the reckless disregard element, plaintiff must show that the statements were published with a 'high degree of awareness of their probable falsity,'" *id.* (quoting *Garrison v. Louisiana*, 379 U.S. 64 (1964)), or with "serious doubts as to the truth of [the] publication." *Id.* (quoting *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968). "The heightened actual-malice standard exists for public officials because otherwise would-be critics of official conduct may be deterred from voicing their criticism." *Sullivan*, 376 U.S. at 279.

A publisher's hostility or ill will is not dispositive of malice. *DeAngelis*, 180 N.J. at 14. "Although spite, hostility, hatred, or the deliberate intent to harm demonstrate possible motives for making a statement, only evidence demonstrating that the publication was made with knowledge of its falsity or a reckless disregard for its truth will establish the actual malice requirement. *Id.* (citation omitted).

"Whether the statement is susceptible of a defamatory meaning is a question of law for the court." *Id.* (quoting *Ward*, *supra*, 136 N.J. at 529). In making this determination, courts must consider three factors: (1) the content, (2) the verifiability, and (3) the context of the challenged statement. *Id.* The analysis requires the court to determine whether the statement is one of fact or

opinion.  *Id*. "Statements of opinion, as a matter of constitutional law, enjoy absolute immunity."  *Id.* (citation omitted).

### 2. privilege

A witness is absolutely privileged to publish defamatory material to a county board of freeholders in anticipation of a board proceeding, where (1) the allegedly defamatory material would not have been published except to inform the board and (2) the material is relevant to the proceeding. *DeSantis v. Employees Passaic County Welfare Ass'n*, 237 N.J.Super. 550, 554-55 (App. Div. 1990).  The statement does not have to either be solicited or made in connection with an investigation authorized by statute to be privileged.  *Id.* at 555.

A qualified privilege applies where persons who are part of the same organization communicate on a matter of common interest. *Monroe v. Host Marriott Services Corp.*, 999 F.Supp. 599, 605 (D.N.J. 1998; see also *Jorgensen v. Pennsylvania R. Co.*, 25 N.J. 541, 564 (1958) (qualified privilege applies where person with duty in respect of subject matter of allegedly defamatory communication communicates with individual with a corresponding duty); *Murphy v. Johns-Manville Products Corp.*, 45 N.J.Super. 478, 492 (App. Div. 1957) (same).  For example, employees who communicate in the context of an internal sexual harassment investigation are protected by a qualified privilege. *Stockley v. AT&T Information Systems, Inc.*, 687 F.Supp. 764 (E.D.N.Y. 1988).

**B. Plaintiff Has Not Established the Elements of Defamation**

Plaintiff alleges that defendant Fitzgerald defamed him by distributing the Investigator's Report to the Board and including information from the Report in the draft censure resolution. He does not allege any conduct by defendant O'Connor that could be interpreted as an allegation of defamation.

### 1. Plaintiff has failed to identify any false statements that Fitzgerald published

Plaintiff's claim against Fitzgerald fails to state a claim on which relief may be granted because he has failed to identify the particular statements in Judge Cuff's initial report, which he believes were defamatory. *Iqbal*, *supra*; *Zoneraich v. Overlook Hosp.*, 212 N.J.Super. 8, 14 (App. Div. 1991). Moreover, Fitzgerald could not have defamed plaintiff merely by distributing the Report. Judge Cuff does not claim as fact that plaintiff made any of the statements attributed to him. Rather, in the fact section of the report, Judge Cuff merely recounts the testimony of the witnesses she interviewed. The Second Amended Complaint does not allege that Judge Cuff inaccurately transcribed any of the witness statements. As such, the allegation that Fitzgerald defamed plaintiff by transmitting the report to the Board fails to state a claim on which relief can be granted.

Fitzgerald also did not read the censure resolution. He cannot be held liable for defamation based on someone else's

conduct.

### 2. Fitzgerald's statements were privileged

Fitzgerald's transmission of Judge Cuff's report to the Board was protected by an absolute privilege because (1) Fitzgerald transmitted the report to the Board in anticipation of a Board meeting, (2) he would not have published the report except to inform the Board and (3) the report was relevant to the Board's upcoming meeting. *DeSantis*, 237 N.J.Super. at 554-55. Fitzgerald's communication with the Board was also protected by the attorney-client privilege. *Tucker v. Fischbein*, 237 F.3d 275, 288 (3d Cir. 2001).

Because Fitzgerald released the report to the Board in connection with his duty to report the results of an investigation into allegations of discriminatory behavior, a qualified privilege also applies.

### 3. Plaintiff has failed to allege knowledge or reckless disregard

Fitzgerald had no reason to believe that Judge Cuff prepared the Report in bad faith. Judge Cuff is an independent, impartial retired judge, who found some of the allegations against plaintiff credible while finding others were not credible. Moreover, plaintiff never denied the comment that sparked the investigation.

Plaintiff has not alleged facts that would establish a plausible claim that Fitzgerald either knew that the facts stated

in the Report were false or that he acted in reckless disregard of whether those facts. For example, plaintiff does not allege that any witness recanted the statements she made to Judge Cuff or that Fitzgerald learned of other, trustworthy evidence, which indicated that any witness had lied to Judge Cuff.

Plaintiff bases his position entirely on his counsel's October 13, 2017 letter to Fitzgerald, which categorically denied that plaintiff made any of the statements that Judge Cuff asked him about during the September 29, 2017 interview. Second Amended Complaint, Ex. B. Plaintiff's self-serving denial did not establish that Fitzgerald either knew or should have known that the statements were false. Indeed, Judge Cuff found many of the statements to be credible, while plaintiff's habit of using profanity in public, such as when he described then-Governor Christie as a "fat motherf***er,"[6] was well-known.

### POINT IV

### THE COURT SHOULD DISMISS PLAINTIFF'S CLAIM FOR DECLARATORY JUDGMENT

The Declaratory Judgment Act only provides a remedy. It does not establish an independent cause of action. Counts One through Four of The Second Amended Complaint fail to state a claim for First Amendment retaliation, civil conspiracy or defamation. As

---

[6] *See* https://www.huffingtonpost.com/entry/chris-christie-weight_us_57f55ed8e4b002a731208b5e.

before, plaintiff's declaratory judgment claim should be dismissed.

**CONCLUSION**

For the foregoing reasons, the Court should dismiss plaintiff's Second Amended and Supplemental Verified Complaint with prejudice.

McMORAN O'CONNOR BRAMLEY & BURNS
A Professional Corporation
Attorneys for defendants,
Michael D. Fitzgerald, Esq. and
Teri O'Connor

By: _____
BRUCE P. McMORAN

Dated: September 13, 2018