NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| JOHN CURLEY, | : | |
| | : | Civil Action No. 3:17-cv-12300-BRM-TJB |
| Plaintiff, | : | |
| v. | : | |
| | : | **OPINION** |
| MONMOUTH COUNTY BOARD OF | : | |
| CHOSEN FREEHOLDERS, et. al. | : | |
| | : | |
| Defendants. | : | |

**MARTINOTTI, DISTRICT JUDGE**

Before this Court are: (1) Defendants Michael Fitzgerald ("Fitzgerald") and Teri O'Connor's ("O'Connor") Motion to Dismiss (ECF No. 67); (2) Defendants Monmouth County Board of Chosen Freeholders (the "Board"), Serena DiMaso ("DiMaso"), Thomas Arnone ("Arnone"), Gary Rich ("Rich"), Lillian Burry ("Burry"), Patrick Impreveduto ("Impreveduto"), and Gerry P. Scharfenberger's ("Scharfenberger")[1] Motion to Dismiss (ECF No. 74); and (3) John Curley's ("Curley") Motion for Leave to File a Third Amended Complaint (ECF No. 81.) All motions are opposed. Having reviewed the submissions filed in connection with the motions and having declined to hold oral argument pursuant to Federal Rule of Civil Procedure 78(b), for the reasons set forth below and for good cause shown, Curley's Motion for Leave to File a Third Amended Complaint (ECF No. 81) is

---

[1] Defendants Monmouth County Board of Chosen Freeholders, DiMaso, Arnone, Rich, Burry, Impreveduto and Scharfenberger will jointly be referred to as the "County Defendants." DiMaso, Arnone, Rich, Burry, Impreveduto, and Scharfenberger will jointly be referred to as "Freeholder Defendants." When addressing all defendants in this matter the Court will collectively refer to them as "Defendants."

**DENIED** and Defendants' motions to dismiss (ECF Nos. 67 and 74) are **GRANTED**.

I.    BACKGROUND[2]

    A.    **Factual Background**

For the purposes of the motions to dismiss, the Court accepts the factual allegations in the Complaint as true and draws all inferences in the light most favorable to plaintiff. *See Phillips v. Cty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). The Court also considers any "document *integral to or explicitly relied upon* in the complaint." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).

        1.    **The Parties**

Curley was an elected Freeholder on the Board, who ran for reelection as an independent in 2018 and was unsuccessful. (Third Am. Compl. (ECF No. 81-3) ¶ 22.) He had been elected by the citizens of Monmouth County (the "County") to serve for three terms, encompassing approximately the past eight years. (*Id.* ¶ 42.) His term expired on December 31, 2018. (*Id.*) According to local media reports, Curley is "nominally a Republican, [and] has a fierce independent streak that has at times angered fellow Republicans but has served county residents well." (*Id.* ¶ 2 (quoting Re-elect Curley to Monmouth freeholder board, Asbury Park Press, October 28, 2015.) Curley alleges he "has been a persistent and regular advocate of positions that have run contrary to the Republican political committee on the Board, and in the County's party leadership, and has been unafraid to challenge the purported majority view of the Freeholders." (*Id.* ¶ 3.) He

---

[2] This is the Court's second opinion on this matter. On July 25, 2018, the Court denied County Defendants' Motion to Dismiss for Lack of Jurisdiction but granted their Motion for Failure to State a Claim. The Court also granted Fitzgerald and O'Connor's Motion to Dismiss and Curley's Motion to hold in Contempt the County Defendants. (ECF No. 58.) This will be addressed in more detail below. This section also incorporates the allegations in Curley's proposed third amended complaint.

"expressed his views publicly even when the party bosses and elite opposed him." (*Id.* ¶ 4.)

Curley's Second and proposed third amended complaints detail some of the many occasions he expressed himself publicly in direct opposition to Defendants. In 2008, during his initial run for the Board, he "opposed the reappointment of a certain law firm as special county counsel because the firm's principal had been accused of collecting pension and retirement health benefits to which he was not entitled." (*Id.* ¶ 57.) "In 2011, in contrast to the other Republican members of the Board, Curley opposed the budget for Brookdale Community College" because it contained a tuition hike that the College had blamed on reduced Board appropriations. (*Id.* ¶¶ 60-61.) In 2013, Curley requested that the County Prosecutor's Office investigate the Tax Assessment Demonstration Program instituted by the Monmouth County Tax Board. (*Id.* ¶ 99.) He then called the Tax Board to halt the program while an investigation occurred. (*Id.* ¶ 100.) This angered Defendants who supported the program. (*Id.* ¶ 101.) In 2014, Curley "opposed a land deal that would have benefitted former Manalapan mayor, Andrew Lucas, as part of the County's Farmland Preservation Program" because it would bring financial gain to himself. (*Id.* ¶¶ 67-68.) Lucas was eventually convicted in federal court and sentenced to five years in prison. (*Id.* ¶ 72.)

Curley also publicly opposed the fact that DiMaso had been enjoying health care benefits for four years, prior to the passage of the January 21, 2016 Resolution.[3] (*Id.* ¶ 76.) He similarly opposed the creation of a County Wellness Center for County employees because there was a conflict of interest since DiMaso sought to award the contract for the Wellness Center to a company which she had a business relationship. (*Id.* ¶¶ 83-88.) Further, Curley fought for the sale

---

[3] The Board passed a resolution in 2009, which eliminated health care benefits for Freeholders as a way to reduce costs. (*Id.* ¶ 73.) Freeholders were not entitled to County health care benefits until January 21, 2016, when the Board passed a resolution allowing them to receive County health care benefits. (*Id.* ¶ 75.)

of County-owned nursing home, which was initially opposed by the remaining Board members, because they were causing a financial strain on the County. (*Id.* ¶¶ 89-92.) Recently, he "publicly opposed the approval of a new Solid Waste Station facility" because the proposal was submitted by a company owned by the former Monmouth County Clerk. (Id. ¶¶ 93-100.)

The Board is the body politic of the County, which is delegated both legislative and executive functions by the State pursuant to N.J. Stat. Ann. § 40:20-1 *et seq.*, and as specified in the Monmouth County Administrative Code (the "Code"). (*Id.* ¶¶ 23, 40.) "The Board maintains oversight over the various parts of the County government by designating a Freeholder to be responsible for specific departments." (*Id.* ¶ 43.) Through this role, Freeholders direct policy for the County daily. (*Id.*) Freeholders "are elected public officials, not employees of the county, and, as elected officials, the Freeholders are held accountable by the electorate." (*Id.* ¶ 41.) The Board also has certain investigatory functions regarding matters within its jurisdiction, which requires the Board to authorize investigations by way of resolution. (*Id.* ¶ 50.)

DiMaso was a Freeholder on the Board until January 2018. (*Id.* ¶ 24.) Rich was a member of the Board through December 2017. (*Id.* ¶ 26.) Arnone is and was at all relevant times a Freeholder on the Board, and currently serves as the Director of the Board. (*Id.* ¶ 27.) Impreveduto and Scharfenberger began serving on the Board in January and February 2018, respectively. (*Id.* ¶ 28-29.) Fitzgerald "was appointed in 2016 as the County Counsel to be the chief legal advisor to the Board and its officers for a three-year term." (*Id.* ¶ 44.) Pursuant to Code § 2-15.2, Fitzgerald "is responsible for advising the Board and constitutional officers and rendering advisory opinions to them upon request." (*Id.* ¶ 47.) O'Connor has been the appointed County Administrator for the Board since 2010. (*Id.* ¶ 45.) She is "responsible for supervising and overseeing the daily administration of the County's departments." (*Id.* ¶ 48.) Neither Fitzgerald nor O'Connor have

independent investigatory powers. (*Id.* ¶ 49.)

## 2. The Investigation

In June 2017, O'Connor and Fitzgerald retained the Honorable Mary Catherine Cuff, P.J.A.D. (ret.) (the "Investigator") to investigate a complaint by an unknown woman alleging Curley made a sexist remark in public during the May 2017 Bradley Beach Memorial Day Parade. (*Id.* ¶¶ 103-123; ECF No. 2.) The Investigator interviewed multiple witnesses, including DiMaso and Curley, who was interviewed with his attorney present. (ECF No. 2 at 19-22.) Curley alleges the investigation was initiated without the approval of the Board and that the Investigator was also retained without the Board's approval. (ECF No. 81-3 ¶ 112.) The investigation lasted approximately five months. (*Id.* ¶ 114.) Ultimately, the investigation resulted in the issuance of a report (the "Report"), which was released to Fitzgerald on October 13, 2017. (*Id.* ¶ 119.) Section I of the Report, "Statement of Allegations," contains the substance of the interviews; Section II contains a statement of law governing sexual harassment in the workplace; Section III contains the Investigator's conclusions on the credibility of the statements made during the interviews, and Section IV contains the Investigator's recommendations. (ECF No. 2.) The Investigator found many of the allegations that Curley made sexist remarks about women credible. (*Id.*) Therefore, she concluded Curley's alleged conduct could support an inference of sex discrimination or hostile work environment. (*Id.* at 46.)

## 3. The Board Censures Curley

On November 26, 2017, Fitzgerald sent the Freeholders a copy of the Report. (*Id.* ¶ 124.) They noticed and held a special meeting of the Board to be held in Executive Session for November 29, 2017, "where the Freeholders would discuss the Report and Fitzgerald and O'Connor would present recommendations to act on the Report." (*Id.* ¶ 125.) Curley arrived with counsel for the

Executive Session on November 29, 2017, but Fitzgerald informed him "he could not attend the meeting at its start to make a statement, since he was a 'target.'" (*Id.* ¶¶ 126-27.) When Curley's counsel informed Fitzgerald he wanted to put his objections to the proceeding on the record, Fitzgerald threatened to call the County Sheriff to remove Curley from the meeting. (*Id.* ¶ 128.) Eventually, Curley was allowed to attend and speak, but was cautioned that he was not permitted to speak about the merits of the Report. (*Id.* ¶ 129.) During the meeting, Curley "requested that DiMaso recuse herself given that she was . . . one of the complainants" or that Curley and DiMaso both be recused. (*Id.* ¶¶ 133-34.) Both requests were denied. (*Id.*) Eventually, Curley was permitted to speak and was again cautioned "that he was not permitted to speak about or address the merits of the Report." (*Id.* ¶ 65.) In lieu of speaking, Curley presented a letter and memorandum, drafted by his counsel, setting forth his position. (*Id.* ¶ 135.) Curley's counsel was denied access to the Executive Session. (*Id.* ¶ 132.) The Executive Session was not conducted on the record—instead, handwritten notes were taken. (*Id.* ¶ 130.)

After the Executive Session, O'Connor and Fitzgerald met with Curley and his attorney. (*Id.* ¶ 139.) They explained that Curley was barred from entering the Hall of Records, where the Board conducts its business, unless he was conducting County business, and that Curley could not have any contact with County employees, including his aide, until a special meeting and subsequent public session was held on December 4, 2017. (*Id.* ¶¶ 140, 142.) Curley alleges O'Connor and Fitzgerald made these decisions without vote or approval of the Board. (*Id.* ¶ 141.) Fitzgerald indicated Curley and his counsel would be allowed to attend the December 4, 2017 meeting and would be allowed to question the investigator, but not confront the witnesses. (*Id.* ¶ 144.) The above restrictions on Curley remained in place for two days, during which time, on November 30, 2017, Curley worked at the Hall of Records in order to "fulfill[] his duties as an

elected Freeholder." (*Id.* ¶¶ 148-52.)

### 4. Curley's Federal Complaint, Application for a Temporary Restraining Order, and Motion for a Preliminary Injunction

On December 1, 2017, Curley filed his initial Complaint with an Order to Show Cause seeking Temporary Restraints and a Preliminary Injunction, to prevent Defendants from proceeding with the Censure Resolution on December 4, 2017, and to provide Curley with access to his office and confidential aide. (ECF No. 1 and ECF No. 7 ¶ 91.) On that same day, the Court held a telephone conference, where the parties ultimately agreed to adjourn the special meeting from December 4 to December 8, 2017. In addition, Defendants agreed to provide Curley with access to the Hall of Records. (ECF No. 7 ¶ 92.)

On December 4, 2017, the parties appeared before the Court and agreed that Curley would withdraw his Motion for Temporary Restraints and allow the special meeting to go forward on December 8. (*Id.* ¶¶ 93-94.) The Court also ordered that the Report and Curley's counsel's objections to it would remain sealed. (ECF No. 6.)

### 5. 2017 Executive Session

On December 7, 2017, Defendants' outside counsel notified Curley that at the December 8 Executive Session: (1) the Investigator would give a presentation; (2) Curley would have thirty minutes to present comments, submissions, or statements "individually or through counsel"; and (3) the other Freeholders would have thirty minutes to present their comments, submissions, and statements. (ECF No. 7-1, Ex. E at 10.)

### 6. December 8, 2017 Public Session

After deliberating at the Executive Session, the Freeholders conducted the Public Session. (*Id.* ¶ 168.) At the Public Session, the Board took public comment, voted on, and approved the

following resolutions: (1) to update, expand, and reinforce the Monmouth County policy on prohibiting workplace discrimination and harassment so that it applies to the Board of Freeholders; and (2) to censure Curley. (*Id.* ¶ 171.) The resolution to censure Curley expresses disapproval of his remarks but imposes no punishment on him. (ECF No. 7-1, Ex. F at 13-21.)

At the Public Session, Defendants read the Censure Resolution of Curley, which directly quoted and paraphrased the Report, "notwithstanding the Court's order that the Report remain under seal." (ECF No. 81-3 ¶¶ 172-73.) During the reading of the Censure Resolution, "a member of the public interrupted Defendants' counsel to inform the Freeholders that quoting passages from the Report violate[d] the Court's sealing order." (*Id.* ¶ 174.) When Curley's counsel was permitted to speak, he also objected to the reading of the sealed Report to the public. (*Id.* ¶ 178.)

### 7. Monmouth County Republican Committee Email

On December 13, 2017, the Chairman of the Monmouth County Republican Committee sent an email to the Monmouth County Republic Headquarters, quoting from the Report and criticizing Curley "for pursuing his rights in courts and for hiring a 'Democratic State committee lawyer.'" (*Id.* ¶¶ 185-86.) The email concluded that Curley "should not run for re-election on the Republican line in 2018." (*Id.* ¶ 187.)

### 8. Other Acts Taken by Defendants

For years, Curley was a member of various oversight committees within the county and the liaison for the Human Services Department. (*Id.* ¶ 188.) At the beginning of 2018, Defendants removed Curley from most of his responsibility, leaving him with oversight over fewer divisions and programs within the County. (*Id.* ¶ 191.)

When Curley asked Fitzgerald for legal advice or guidance, he responded to his inquiries but copied all other Freeholders on the answer, "a practice that [he] has not instituted for questions

from any other Freeholder. (*Id.* ¶ 198.) When Curley "made a comment during a public meeting to . . . Fitzgerald regarding the differential treatment he received . . . Fitzgerald responded by informing [Curley] that, 'The whole world changed when you sued us.'" (*Id.* ¶ 199.)

### 9.    Third Investigation

The County Republican party withdrew its support for Curley as part of the Republican ticket. (*Id.* ¶ 201.) Curley ran as an Independent for reelection, which he lost. (*Id.*) The election was held on November 6, 2018. (*Id.* ¶ 202.) On November 5, 2016, Fitzgerald released an Agenda for the Board meeting to be held on November 8, 2018. (*Id.* ¶ 203.) The agenda listed as an item to be considered "Resolution authorizing Mary Catherine Cuff, P.J.A.D. (Ret.) to investigate allegations of harassment of a Monmouth County employees by . . . Curley." (*Id.* ¶ 204.) The investigation was a result of a comment made by Curley at a public Board meeting in 2018, directed at Dana Rivera, an employee of a County Tax Board. (*Id.* ¶ 207) Curley's counsel objected to the release of this agenda item a day before the election. (*Id.* ¶ 205.) On November 8, 2018, Defendants introduced the resolution and Curley objected to it. (*Id.* ¶ 206.)

### B.    Procedural Background

On December 1, 2017, Curley filed an initial Complaint against Defendants with an Order to Show Cause seeking Temporary Restraints and a Preliminary Injunction. (ECF No. 1.) On December 4, 2017, Curley withdrew his Application for Temporary Restraints, and the Court, with all counsels' consent, ordered the Report sealed. (ECF No. 4.) On December 22, 2017, Curley filed an Amended Complaint, alleging twelve counts against Defendants in their individual and official capacities: (1) two violations of his due process under the Fourteenth Amendment pursuant to 42 U.S.C. § 1983; (2) two violations of his due process under Article I, Paragraph I of the New Jersey Constitution; (3) declaratory judgment; (4) retaliation for protected free speech under the First

Amendment, pursuant to § 1983; (5) retaliation for protected free speech under Article I, Section I, Paragraph 6 of the New Jersey State Constitution; (6) a violation of the Speech or Debate Clause of Article I, Section 6, Clause 1 of the U.S. Constitution; (7) a violation of the Speech or Debate Clause of Article IV, Section 4, Paragraph 9 of the New Jersey State Constitution; (8) Conspiracy to Violate Constitutional Rights, § 1985; (9) violation of local government ethics law; and (10) defamation. (*See* ECF No. 7.)

On December 22, 2017, Curley filed a Motion to hold Defendants in contempt for violating the Court's December 4, 2017 Order to keep the Report sealed ("Order to Seal"). (ECF No. 8.) On February 1, 2018, the County Defendants filed a Motion to Dismiss for Lack of Jurisdiction based on immunity and Motion to Dismiss for failure to state a claim. (ECF No. 26.) On February 15, 2017, Fitzgerald and O'Connor filed a Motion to Dismiss. (ECF No. 32.) On April 30, 2018, the Court heard Oral Argument on both motions and provided the parties with an opportunity to file supplemental summation briefs after the argument. On May 7, 2018, Defendants submitted supplemental briefs. (ECF Nos. 51 and 52.) On July 25, 2018, the Court denied County Defendants Motion to Dismiss for Lack of Jurisdiction but granted their Motion for Failure to State a Claim. The Court also granted Fitzgerald and O'Connor's Motion to Dismiss and Curley's Motion to hold in Contempt the County Defendants. (ECF No. 58.)

On August 23, 2018, Curley filed a Second Amended Complaint. (ECF No. 61.) On September 13 and October 19, 2018, Fitzgerald and O'Connor and the County Defendants filed motions to dismiss that Second Amended Complain, respectively. (ECF Nos. 67 and 74.) On November 21, 2018, Curley filed a Motion to file a Third Amended Complaint adding only new allegations to its First Amendment Claim and alleging the following counts: (1) retaliation for protected free speech under the First Amendment; (2) retaliation for protected free speech under Article I, Section 1, Paragraph 6 of the New

Jersey State Constitution; (3) civil conspiracy; (4) defamation; and (5) declaratory judgment. (ECF No. 81.) All motions are opposed.

## II.  LEGAL STANDARDS

### A.  Federal Rule of Civil Procedure 12(b)(6)

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court is "required to accept as true all factual allegations in the complaint and draw all inferences in the facts alleged in the light most favorable to the [plaintiff]." *Phillips*, 515 F.3d at 228. "[A] complaint attacked by a . . . motion to dismiss does not need detailed factual allegations." *Bell Atl. v. Twombly*, 550 U.S. 544, 555 (2007). However, the plaintiff's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286. Instead, assuming the factual allegations in the complaint are true, those "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for misconduct alleged." *Id.* This "plausibility standard" requires the complaint allege "more than a sheer possibility that a defendant has acted unlawfully," but it "is not akin to a 'probability requirement.'" *Id.* (quoting *Twombly*, 550 U.S. at 556). "Detailed factual allegations" are not required, but "more than an unadorned, the defendant-harmed-me accusation" must be pled; it

must include "factual enhancements" and not just conclusory statements or a recitation of the elements of a cause of action. *Id.* (quoting *Twombly*, 550 U.S. at 555, 557).

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

While as a general rule, a court may not consider anything beyond the four corners of the complaint on a motion to dismiss pursuant to 12(b)(6), the Third Circuit has held "a court may consider certain narrowly defined types of material without converting the motion to dismiss [to one for summary judgment pursuant under Rule 56]." *In re Rockefeller Ctr. Props. Sec. Litig.*, 184 F.3d 280, 287 (3d Cir. 1999). Specifically, courts may consider any "'document *integral to or explicitly relied upon* in the complaint." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d at 1426.

### B.    Federal Rule of Civil Procedure 15

Federal Rule of Civil Procedure 15(a) governs requests for leave to amend, allowing a party to amend its pleadings after obtaining the Court's leave or the written consent of its adversary. Under this liberal rule, the Court must "freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). This lenient standard ensures that "a particular claim will be decided on the merits rather than on technicalities." *Dole v. Arco Chem. Co.,* 921 F.2d 484, 487 (3d Cir. 1990) (internal citation omitted); *see also Sabatino v. Union Twp.*, 2013 WL 1622306, at *6 (D.N.J. 2013) (internal citation omitted) (discussing that "if the underlying facts relied upon by a party might be a proper subject of relief, that party should have the opportunity to tests its claims on the merits").

The decision to grant or deny leave to amend under Rule 15(a) is "committed to the sound discretion of the court." *Arab African Int'l Bank v. Epstein,* 10 F.3d 168, 174 (3d Cir. 1993). While courts have broad discretion to decide motions to amend, they must "heed Rule 15(a)'s mandate that amendments are to be granted freely in the interests of justice." *Violas et al. v. General Motors Corp., et al.,* 173 F.R.D. 389, 396 (D.N.J. 1997) (internal citations omitted). Stated differently, in the absence of unfair prejudice, futility of amendment, undue delay, bad faith, or dilatory motive, the court must grant a request for leave to amend. *Grayson v. Mayview State Hosp.,* 292 F.3d 103, 108 (3d Cir. 2002); *see also Arthur v. Maersk, Inc.,* 434 F.3d 196, 204 (3d Cir. 2006) (explaining that, generally, leave to amend should be granted "unless equitable considerations render it otherwise unjust").

Here, the Defendants challenge Curley's Motion for Leave to Amend on the grounds that the proposed third amended complaint should be denied as futile. (ECF Nos. 83 and 97). A proposed amendment "is futile if the amended complaint would not survive a motion to dismiss." *Cnty. of Hudson v. Janiszewski,* 351 F. App'x 662, 666 (3d Cir. 2009) (quoting *Alvin v. Suzuki,* 227 F.3d 107, 121 (3d Cir. 2000)); *see also In re NAHC, Inc. Sec. Litig.,* 306 F.3d 1314, 1332 (3d Cir. 2002) ("We have made it clear that an amendment would be futile when 'the complaint, as amended, would fail to state a claim upon which relief could be granted.'") (internal citation omitted). Therefore, "[t]he futility analysis on a motion to amend is essentially the same as a Rule 12(b)(6) motion." *Marjam Supply Co. v. Firestone Bldg. Pros. Co., LLC*, 2014 WL 1343075, at *3 (D.N.J. Apr. 4, 2014).

## III. DECISION

### A. Motion to Amend

Curley's third amended complaint seeks to add allegations to his First Amendment claim (Count I) regarding events that occurred after he filed his Second Amended Complaint. (ECF No. 81-1.) Specifically, he seeks to add allegations that, the day before the election, Defendants issued an agenda for the November 8, 2018 meeting, which included a resolution approving an investigator to conduct a third investigation into Curley for alleged harassment. (*Id.*) The Court does not find Curley's Motion is unduly delayed, made in bad faith or will prejudice the Defendants. The Court therefore focuses its analysis on futility of amendment. Curley's claims as amended in his Second Amended Complaint and as proposed to be amended in the third amended complaint will be considered under a 12(b)(6) standard in conjunction with the Defendants motions to dismiss below.

### B. The Speech or Debate Clause

Defendants argue they are entitled to immunity under the Speech or Debate Clause of Article 1 Section 6 of the United States Constitution for the investigation into Curley's conduct, the distribution of the Report resulting from the investigation, and the Censure Resolution because they are elected officials or the staff of elected officials. (ECF No. 67-2 at 21 and ECF No. 74-2 at 9.) Curley argues the Speech or Debate Clause does not immunize Defendants' conduct because it is outside the legislative process. (ECF No. 77 at 14.) He points out that Defendants, in their previous Motion to Dismiss (ECF No. 26 at 27), argued that their actions were not legislative in seeking to dismiss Curley's due process claims. (ECF No. 77 at 14.)

The Speech or Debate Clause provides: "The Senators and Representatives . . . for any Speech or Debate in either House . . . shall not be questioned in any other Place." U.S. Const., art.

I, § 6, cl. 1. It affords absolute immunity to state legislators for their legislative activities. *Youngblood v. DeWeese*, 352 F.3d 836, 839 (3d Cir. 2003), *as amended* (Feb. 11, 2004). "[L]ocal legislators, like federal and state legislators, are absolutely immune from liability for their legislative activities." *In re Montgomery Cty.*, 215 F.3d 367, 376 (3d Cir. 2000).

"To be legislative, however, the act in question must be both substantively and procedurally legislative in nature." *Id.* "An act is substantively legislative if it involves policy-making of a general purpose or line-drawing." *Id.* (citation omitted). "It is procedurally legislative if it is undertaken by means of established legislative procedures." *Id.* (citation omitted). The Supreme Court:

> has defined the sphere of legitimate legislative activities to include activities that are "an integral part of the deliberative and communicative processes by which Members participate in committee and House proceedings with respect to the consideration and passage or rejection of proposed legislation or with respect to other matter which the Constitution places within the jurisdiction of either House."

*Youngblood*, 352 F.3d at 840 (quoting *Gravel v. United States*, 408 U.S. 606, 625 (1972)). The Court has found the following are considered legislative: voting for a resolution, *Powell v. McCormack*, 395 U.S. 486, 504–05 (1969); subpoenaing and seizing property and records for a committee hearing, *Eastland v. United States Servicemen's Fund*, 421 U.S. 491, 507 (1975) and *Dombrowski v. Eastland*, 387 U.S. 82, 84–85 (1967); preparing investigative reports, *Doe v. McMillan*, 412 U.S. 306, 313 (1973); addressing a congressional committee, *Gravel*, 408 U.S. at 616; and speaking before the legislative body in session, *Johnson*, 383 U.S. at 184–85.

However, the Speech or Debate Clause does not encompass "everything 'related of the due functioning of the legislative process.'" *Youngblood*, 352 F.3d at 840 (quoting *United States v. Brewster*, 408 U.S. 501, 513 (1972)). "Immunity does not extend to acts that are casually or

incidentally related to legislative affairs but not a part of the legislative process itself." *Id.* (citation omitted). The Third Circuit has denied immunity where an employee was fired for mis- and malfeasance because it was a "personnel decision that does not involve general policy making" and therefore, was not legislative in substance. *In re Montgomery Cty.*, 215 F.3d at 377.

This Court stands by its previous opinion that Defendants "cannot have it both ways." (ECF No. 57 at 15.) In their prior moving brief, Defendants argued Curley had not sufficiently pled a Due Process claim because the Censure Resolution "is merely an expression of the Freeholder Defendants' opinion[,] . . . "[and w]hile an ordinance is a 'distinctively [] legislative act,' a resolution 'is simply an expression of opinion or mind concerning some particular time or business coming within the legislative body's official cognizance.'" (ECF No. 26-1 at 27.) The Court cannot ignore this prior admission. Because they admitted the Censure Resolution was not a legislative act, the Court continues to find Defendants are not entitled to absolute immunity under the Speech or Debate Clause.

## C. Qualified Immunity and First Amendment Retaliation

In Count One of the proposed third amended complaint, Curley continues to allege Defendants violated his First Amendment rights by retaliating against him for his statements and conduct as a Freeholder expressing his political views. (ECF No. 81-3 ¶¶ 222-27.) Specifically, he contends Defendants retaliated by way of investigating him on three occasions for his conduct, limited his access to his office, restricted access to his aide for two days, issued a censure resolution, placed a resolution on the agenda a day before the election, that he was stripped of most of his responsibilities at the beginning of 2018 and had oversight over fewer divisions and programs within the County, and that when Curley asked Fitzgerald for legal advice or guidance he responded his inquiries but copied all other Freeholders on the answer. (ECF No. 77 at 21-

22 and ECF No. 88 at 5-6.) Defendants argue Curley's First Amendment retaliation claims against them fail to properly state a claim, otherwise they are entitled to qualified immunity as to those claims. (ECF No. 67-2 at 15-17, 22-25 and ECF No. 74-2 at 14-30.) Curley argues he has sufficiently alleged a violation of his First Amendment rights and therefore, Defendants are not entitled to qualified immunity. (ECF No. 77 at 27-32.)

Qualified immunity affords government officials considerable protection from liability, as it "protects all but the plainly incompetent or those who knowingly violate the law." *Saucier*, 533 U.S. at 205 (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). A plaintiff seeking to overcome qualified immunity need not cite "a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). "[Q]ualified immunity [is] defeated if an official '*knew or reasonably should have known that the action he took* . . . *would violate the constitutional rights of the [plaintiff], or if he took the action with the malicious intention* to cause a deprivation of constitutional rights or other injury." *Harlow v. Fitzgerald*, 457 U.S. 800, 815 (quoting *Wood v. Strickland*, 420 U.S. 308, 322 (1975)).

To determine whether a public official is entitled to qualified immunity, courts first determine whether the official violated a clearly established law, and then ask whether the right was established at the time of the violation. *Santini v. Fuentes*, 795 F.3d 410, 417 (3d Cir. 2015) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). The Third Circuit has interpreted the phrase "clearly established" to mean "some but not precise factual correspondence" between relevant precedents and the conduct at issue, and that "[a]lthough officials need not predict[t] the future course of constitutional law, they are required to relate established law to analogous factual settings." *Ryan v. Burlington Cty.*, 860 F.2d 1199, 1208–09 (3d Cir. 1988), *cert. denied*, 490 U.S. 1020 (1989) (quoting *People of Three Mile Island v. Nuclear Regulatory Comm'rs*, 747 F.2d 139,

144 (3d Cir. 1984)). The essential inquiry is whether a reasonable official in the defendant's position at the relevant time "could have believed, in light of clearly established law, that [his or her] conduct comported with established legal standards." *Merkle v. Upper Dublin Sch. Dist.*, 211 F.3d 782, 797 (3d Cir. 2000) (quoting *Stoneking v. Bradford Area Sch. Dist.*, 882 F.2d 720, 726 (3d Cir. 1989), *cert. denied*, 493 U.S. 1044 (1990)).

First, the Court must determine whether the official violated a constitutional right. Therefore, the Court begins its analysis by looking to whether a constitutional right was violated. To plead a claim for First Amendment retaliation, a plaintiff must allege:

> (1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the constitutionally protected conduct and the retaliatory action.

*Willson v. Yerke*, 604 F. App'x 149, 151 (3d Cir. 2015) (citation omitted). "To be actionable as a general matter, the alleged retaliatory conduct must have had more than a de minimis impact on the plaintiff's First Amendment rights." *Id.* "Where the alleged misconduct relates to the statements or action of elected officials, the threshold is particularly high." *Id.*

In *Bond v. Floyd*, the Supreme Court observed "[t]he manifest function of the First Amendment in a representative government requires that legislators be given the widest latitude to express their views on issues of policy." 385 U.S. 116, 135–36 (1966). The Third Circuit in *Werkheiser v. Pocono Township* also found that "nothing in *Bond* . . . suggests the Court intended for the First Amendment to guard against every form of political backlash that might arise out of the everyday squabbles of hardball politics" and that "the First Amendment may well prohibit retaliation against elected officials for speech pursuant to their official duties only when the retaliation interferes with their ability to adequately perform their elected duties." 780 F.3d 172,

181 (3d Cir. 2015); *see also Camacho v. Brandon*, 317 F.3d 153, 166 (2d Cir. 2003) (Walker, J., concurring) ("[C]ourts should intervene in only the most severe cases of legislative retaliation for the exercise of First Amendment rights, thereby allowing ample room for the hurly burly of legislative decision making."); *cf. Monteiro v. City of Elizabeth*, 436 F.3d 397 (3d Cir. 2006) (finding sufficient evidence to support a First Amendment retaliation claim where the City Council President had a Council member arrested and removed from a meeting for speaking out against the Council President). Courts have declined to find that verbal reprimands or defamatory remarks adversely affect a plaintiff's exercise of his First Amendment rights. *Brennan v. Norton*, 350 F.3d 399, 419 (3d Cir. 2003) ("[C]ourts have declined to find that an employer's actions have adversely affected an employee's exercise of his First Amendment rights where the employer's alleged retaliatory acts were criticism, false accusations, or verbal reprimands.").

The Court finds Curley has not sufficiently plead facts in his Second Amended and proposed third amended complaints, which would alter the Court's prior holding that Defendants' actions were insufficient to deter a person of ordinary firmness from exercising his constitutional rights. In his first Amended Complaint, Curley alleged he had limited access to his office, restricted access to his aide for two days, that he was censured, and that he was investigated as a form of retaliation for his political beliefs. The new allegations against Defendants in his Second Amended Complaint and proposed third amended complaints are that a supplement investigation and third investigation were conducted, that Defendants placed a resolution on the agenda a day before the election, that when Curley asked Fitzgerald for legal advice or guidance he responded to his inquiries but copied all other Freeholders on the answer, and that he was stripped of most of his responsibilities at the beginning of 2018 and had oversight over fewer divisions and programs within the County. These allegations individually and collectively still fail to allege facts sufficient

to meet the legal threshold showing "the retaliation interferes with [his] ability to adequately perform [his] elected duties." *Werkheiser*, 780 F.3d at 181.

This Court has already found limited access to Curley's office, restricted access to his aide for two days, that he was censured, and that he was investigated as a form of retaliation for his political beliefs, individually and collectively, were insufficient to deter a person of ordinary firmness from exercising his constitutional rights. (*See* ECF No. 57 at 24-25.) Curley's additional allegations still do not suffice because they are not "severe" enough to interfere with his ability to perform his elected duties. As articulated in *Werkheiser*, the First Amendment prohibits retaliation against elected officials for speech "*only when the retaliation interferes with their ability to adequately perform their elected duties*." 780 F.3d at 181 (3d Cir. 2015) (emphasis added). This Court "should intervene in only the *most severe* cases of legislative retaliation for the exercise of First Amendment rights, thereby allowing ample room for the hurly burly of legislative decision making." *Camacho*, 317 F.3d at 166 (emphasis added). "A public employer adversely affects an employee's First Amendment rights when it refuses to rehire an employee because of the exercise of those rights or when it makes decisions, which relate to promotion, transfer, recall and hiring, based on the exercise of an employee's First Amendment rights." *Brennan*, 350 F.3d at 419 (citation omitted).

First, Curley fails to allege how the investigations interfered with his ability to perform his elected duties. He does not allege, for example, that he was pulled out of his office during work hours to be interviewed, that he was prevented from attending meetings, or that he was prevented from voting pending the resolution of the investigations. Second, he does not allege how placing a resolution on the agenda a day prior to the election, indicating that he would be investigated, prevented him from performing his duties. This Court cannot and will not speculate that merely

placing a resolution on the agenda the day prior to the election caused Curley, an independent candidate, to lose the election.[4] Third, Curley admits that when he asked Fitzgerald for legal advice or guidance, his inquiries were answered. Therefore, this cannot serve as an interference to performing his elected duties.

Lastly, he argues he was stripped of oversight over certain divisions and programs within the County for the year 2018. However, Curley is not entitled to such oversight. Curley admits that "pursuant to Code § 9-4.2, the creation of departments, divisions or offices must be made by resolution of the Board." (ECF No. 81-3 ¶ 51.) In fact, the Board voted on and assigned each Freeholder departmental oversight responsibilities in accordance with the Code, and Curley does not argue otherwise. Moreover, Curley was still assigned oversight responsibility for the Division of County Adjuster, the Division of Mental Health and Addiction Services, the Division of Planning Contracting for Human Services, the Division of Social Services, the Division of Transportation, and the Divisions of Juvenile Detention Alternatives. (ECF No. 74-4 at 4-5.) Accordingly, this could hardly be an interference to perform his elected duties. Because the Court finds Curley has failed to plead retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, he has failed to plead a First Amendment claim. *Willson*, 604 F. App'x at 151.

The Court finds Curley's First Amendment claim, with the proposed third amendment allegations incorporated, fails to state a claim, therefore, Curley's Motion to Amend is **DENIED** and Defendants motions to dismiss Curley's First Amendment claim (Count I) are **GRANTED** for failure to state a claim and because Defendants, in their individual capacities, are entitled to

---

[4] In fact, Curley only garnered 4.48% of the votes and some members of the electorate cast their ballot by mail prior to the resolution being public.

qualified immunity.

### D. Remaining State Law Claims

As to Curley's remaining state law claims, retaliation for protected free speech under Article I, Section 1, Paragraph 6 of the New Jersey State Constitution (Count II), civil conspiracy (Count III), and defamation (Count IV). (ECF No. 81-3), this Court declines to exercise supplemental jurisdiction. Under 28 U.S.C. § 1367(c), a district court may decline to exercise supplemental jurisdiction over a claim if the court "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Federal district courts have original jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. In exercising its discretion, "the district court should take into account generally accepted principles of 'judicial economy, convenience, and fairness to the litigants.'" *Growth Horizons, Inc. v. Del. Cty., Pa.*, 983 F.2d 1277, 1284 (3d Cir. 1993) (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966)). Where the federal claims are dismissed at an early stage in the litigation, courts generally decline to exercise supplemental jurisdiction over state claims. *United Mine Workers*, 383 U.S. at 726; *Growth Horizons, Inc.*, 983 F.2d at 1284-85. Here, because Curley's retaliation for protected free speech under Article I, Section 1, Paragraph 6 of the New Jersey State Constitution, civil conspiracy, and defamation claims are based purely on state law, they are not claims over which the Court has original jurisdiction. Therefore, at this early stage in the litigation, the Court declines to exercise supplemental jurisdiction over Curley's remaining state law claims against Defendants. Curley may refile such claims in the Superior of New Jersey.

**E.      Declaratory Judgment**

Count Five of Curley's Second and proposed third amended complaints requests declaratory relief. (ECF No. 81-3 ¶¶ 263-83.) The Declaratory Judgment Act provides that a Court "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). The express language of the declaratory judgment statute and fundamental principles of standing under Article III of the Constitution limit this power to actions that present a "case or controversy." *Cutaiar v. Marshall*, 590 F.2d 523, 527 (3d Cir. 1979). The "actual controversy" requirement refers to the case or controversy requirement of Article III. *Teva Pharm. USA, Inc. v. Novartis Pharm. Corp.*, 482 F.3d 1330, 1336 (3d Cir. 2007). In *Teva Pharmaceuticals*, the Third Circuit stated that standing in the declaratory judgment context requires:

> that the dispute be "definite and concrete, touching the legal relations of the parties having adverse legal interests"; and that it be "real and substantial" and "admi[t] of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts."

*Id.* (quoting *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007)). The court noted, "[b]asically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between the parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id.* (citation omitted).

"The statute creates a *remedy only*; it does not create a basis of jurisdiction, and does not authorize the rendering of advisory opinions." *Cutaiar*, 590 F.2d at 527 (emphasis added). Moreover, "a party requesting a declaratory judgment must allege facts from which it appears there is a substantial likelihood that he will suffer injury in the future." *Lattaker v. Rendell*, 269 F. App'x

23

230, 233 (3d Cir. 2008) (internal quotations omitted). Because the Court finds Curley's Second and proposed third amended complaint fail to sufficiently plead a First Amendment claim and the Court declines supplemental jurisdiction over Curley's state law claims, Curley's declaratory judgment claim (Count 5) is **DISMISSED**.

## IV. CONCLUSION

For the reasons set forth above, Curley's Motion for Leave to File a Third Amended Complaint (ECF No. 81) is **DENIED** and Defendants' motions to dismiss (ECF Nos. 67 and 74) are **GRANTED**. Curley may refile his state law claims in the Superior Court of New Jersey.

Date: April 29, 2019

*/s/ Brian R. Martinotti*
**HON. BRIAN R. MARTINOTTI**
**UNITED STATES DISTRICT JUDGE**