# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

JOHN CURLEY,

       Plaintiff,

v.

MONMOUTH COUNTY BOARD OF
CHOSEN FREEHOLDERS, SERENA
DIMASO, in her individual and official capacity
as Monmouth County Chosen Freeholder,
THOMAS A. ARNONE, in his individual and
official capacity as Monmouth County Chosen
Freeholder, GARY J. RICH, in his individual
and official capacity as Monmouth County
Chosen Freeholder, LILLIAN G. BURRY, in her
individual and official capacity as Monmouth
County Chosen Freeholder, PATRICK
IMPREVEDUTO, in his individual and official
capacity as Monmouth County Chosen
Freeholder, GERRY P. SCHARFENBERGER,
in his individual and official capacity as
Monmouth County Chosen Freeholder,
MICHAEL FITZGERALD, in his individual and
official capacity as County Counsel, and TERI
O'CONNOR, in her individual and official
capacity as County Administrator,

       Defendants.

No.: 3:17-cv-12300-BRM-TJB
Civil Action

## NOTICE OF APPEAL PURSUANT TO FED. R. APP. P. 4(a)(3)

In light of the plaintiff's notice of appeal filed May 23, 2019, (See ECF No.:

93), notice is hereby given that Defendants Monmouth County Board of Chosen

Freeholders, Serena DiMaso, Thomas A. Arnone, Gary J. Rich and Lillian G. Bury

(hereinafter "County Defendants") hereby appeal to the United States Court of Appeals for the Third Circuit from the July 25, 2018 Order granting Plaintiff John Curley's motion to hold the County Defendants in contempt. (See ECF No.: 58, opinion at ECF No.: 57, both attached).[1]  This Notice shall include all other orders and memorandum opinions relevant the issues set forth in the foregoing.

 

 

                 Marshall, Dennehey, Warner, Coleman & Goggin

                 /s/Richard L. Goldstein, Esq.
                 Richard L. Goldstein, Esq.
                 15000 Midlantic Drive
                 Suite 200
                 P.O. Box 5429
                 Mount Laurel, NJ 08054
                 Email: rlgoldstein@mdwcg.com
                 Phone: 856-414-6000
                 *Counsel for Defendants Monmouth County Board of Chosen Freeholders, Serena DiMaso, Gary Rich, Thomas A. Arnone, Lillian G. Burry, Patrick Impreveduto, and Gerry P. Scharfenberger*

Date: June 4, 2019

---

[1] The County Defendants have previously filed a notice of appeal, which is currently docketed in the Third Circuit at 18-2880, but pending possible dismissal due to jurisdictional defect.  This notice of appeal is filed as a precaution to ensure that the County Defendants' appeal rights are preserved regardless of how the Court disposes of 18-2880.

## CERTIFICATE OF SERVICE

I, the undersigned, of full age, hereby certify that, on the date listed below, I caused the foregoing Notice of Appeal to be filed electronically on the court's CM/ECF system, which caused a copy of the foregoing document to be served on counsel of record for the parties at as follows:

ANGELO J. GENOVA
GENOVA BURNS LLC
494 Broad Street
Newark, New Jersey 07102
973-533-0777
Fax: 973.533.1112
agenova@genovaburns.com
*Attorneys for Plaintiff-Appellant,*
*John Curley*

BRUCE P. MCMORAN
MICHAEL FRANCIS O'CONNOR
McMoran, O'Connor, & Bramley, PC
Ramshorn Executive Center
2399 Highway 34
Building D, Suite D-1
Manasquan, NJ 08736
(732) 223-7711
Email: bmcmoran@mcmoranlaw.com
Email: moconnor@mcmoranlaw.com
*Counsel for Defendants Michael Fitzgerald and Teri*
*O'Connor*

I declare under penalty of perjury that the foregoing is true and correct.

Marshall, Dennehey, Warner, Coleman & Goggin

/s/Richard L. Goldstein, Esq.
Richard L. Goldstein, Esq.
15000 Midlantic Drive
Suite 200
P.O. Box 5429

          Mount Laurel, NJ 08054
          Email: rlgoldstein@mdwcg.com
          *Counsel for Defendants Monmouth County*
          *Board of Chosen Freeholders, Serena*
          *DiMaso, Gary Rich, Thomas A. Arnone,*
          *Lillian G. Burry, Patrick Impreveduto, and*
          *Gerry P. Scharfenberger*

Date: <u>June 4, 2019</u>

EXHIBIT "A"

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| JOHN CURLEY, | : | |
| | : | |
| Plaintiff, | : | Civil Action No. 3:17-cv-12300-BRM-TJB |
| | : | |
| v. | : | |
| | : | **ORDER** |
| MONMOUTH COUNTY BOARD OF | : | |
| CHOSEN FREEHOLDERS, et. al. | : | |
| | : | |
| Defendants. | : | |
| | : | |

**THIS MATTER** is opened to the Court by: (1) John Curley's ("Curley") Motion to Hold

Defendants Monmouth County Board of Chosen Freeholders ("the Board"), Serena DiMaso

("DiMaso"), Thomas Arnone ("Arnone"), Gary Rich ("Rich"), Lillian Burry ("Burry"), Michael

Fitzgerald, Esq. ("Fitzgerald"), Teri O'Connor ("O'Connor") (together, "Defendants") in Contempt

(ECF No. 8)[1]; (2) the County Defendants' Motion to Dismiss for Lack of Jurisdiction and for Failure

to State a Claim (ECF No. 26); and (3) Fitzgerald and O'Connor's Motion to Dismiss (ECF No. 32).

All motions are opposed. (ECF Nos. 24 and 43.) Pursuant to Federal Rule of Civil Procedure 78(a),

the Court heard oral argument on April 30, 2018. For the reasons set forth below and for good cause

having been shown,

**IT IS** on this 25th day of July 2018,

**ORDERED** that Curley's Motion to Hold Defendants in Contempt (ECF No. 8) is

**GRANTED** as to the County Defendants only, but limited to attorneys' fees, as set forth in the

---

[1]Defendants Monmouth County Board of Chosen Freeholders, DiMaso, Arnone, Rich, and Burry
will jointly be referred to as the "County Defendants." DiMaso, Arnone, Rich, and Burry will
jointly be referred to as "Freeholder Defendants."

accompanying Opinion, and Curley shall file within 30 days of this Order an affidavit pursuant to Local Rule 54.2 in order to recover the requested fees; and it is further

ORDERED that the County Defendants' Motion to Dismiss for Lack of Jurisdiction is DENIED, but their Motion for Failure to State a Claim is GRANTED (ECF No. 26); and it is further

ORDERED that Fitzgerald and O'Connor's Motion to Dismiss is GRANTED (ECF No. 32); and it is finally

ORDERED that Curley may file an Amended Complaint addressing all deficiencies by no later than August 24, 2018. Failure to file an amended complaint will result in the case being dismissed with prejudice.

/s/ Brian R. Martinotti
HON. BRIAN R. MARTINOTTI
UNITED STATES DISTRICT JUDGE

EXHIBIT "B"

**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| | : | |
| JOHN CURLEY, | : | |
| | : | Civil Action No. 3:17-cv-12300-BRM-TJB |
| Plaintiff, | : | |
| v. | : | |
| | : | **OPINION** |
| MONMOUTH COUNTY BOARD OF | : | |
| CHOSEN FREEHOLDERS, et. al. | : | |
| | : | |
| Defendants. | : | |
| | : | |

**MARTINOTTI, DISTRICT JUDGE**

Before this Court are: (1) John Curley's ("Cu rley") Motion to Hold Defendants Monmouth County Board of Chosen Freeholders ("the Board"), Serena DiMaso ("DiMaso"), Thomas Arnone ("Arnone"), Gary Rich ("Rich"), Lillian Burry ("Burry"), Michael Fitzgerald, Esq. ("Fitzgerald"), Teri O'Connor ("O'Connor") (together, "Defendants") in Contempt (ECF No. 8)[1]; (2) the County Defendants' Motion to Dismiss for Lack of Jurisdiction and for Failure to State a Claim (ECF No. 26); and (3) Fitzgerald and O'Connor's Motion to Dismiss (ECF No. 32). All motions are opposed. (ECF Nos. 24 and 43.) Pursuant to Federal Rule of Civil Procedure 78(a), the Court heard oral argument on April 30, 2018. For the reasons set forth below, the County Defendants' Motion to Dismiss for Lack of Jurisdiction is **DENIED**, but their Motion to Dismiss for Failure to State a

---

[1]Defendants Monmouth County Board of Chosen Freeholders, DiMaso, Arnone, Rich, and Burry will jointly be referred to as the "County Defendants." DiMaso, Arnone, Rich, and Burry will jointly be referred to as "Freeholder Defendants."

Claim is **GRANTED** (ECF No. 26); Fitzgerald and O'Connor's Motion to Dismiss is **GRANTED**
(ECF No. 32); and Curley's Motion to Hold Defendants in contempt is **GRANTED** (ECF No. 8).

## I.    BACKGROUND

### A.    Factual Background

For the purposes of the motions to dismiss only, the Court accepts the factual allegations
in the Complaint as true and draws all inferences in the light most favorable to plaintiff. *See
Phillips v. Cty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). The Court also considers any
"document *integral to or explicitly relied upon* in the complaint." *In re Burlington Coat Factory
Sec. Litig.,* 114 F.3d 1410, 1426 (3d Cir. 1997).

#### 1.    The Parties

Curley is an elected Freeholder on the Board. (Am. Compl. (ECF No. 7) ¶ 13.) He was
elected by the citizens of Monmouth County (the "County") to serve for three terms totaling, to
date, approximately eight years. (*Id.* ¶ 29.) His term is set to expire on December 31, 2018. (*Id.*)
Curley has also been the Deputy Director of the Board since 2016. (*Id.* ¶ 30.) According to local
media reports, Curley is "nominally a Republican, [and] has a fierce independent streak that has
at times angered fellow Republicans but has served county residents well." (*Id.* ¶ 2 (quoting Asbury
Park Press's October 28, 2015 endorsement in the 2015 Freeholder election in Monmouth
County).) Curley alleges he "has been a persistent and regular advocate of positions that have run
contrary to the Republican political establishment on the Board, and in the County's party
leadership, and has been unafraid to challenge the purported majority view of the Freeholders."
(*Id.* ¶ 3.) Throughout his tenure, Curley was provided an office for and has employed confidential
aides to assist him in fulfilling his functions as a Freeholder. (*Id.* ¶ 42.)

The Board "is the body politic of the County, which has been delegated both legislative and executive functions by the State pursuant to N.J. Stat. Ann. [§] 40:20-1 et seq., and as specified in the Monmouth County Administrative Code (the 'Code')". (*Id.* ¶ 14.) DiMaso, Burry, Rich, and Arnone are also Freeholders on the Board. (*Id.* ¶¶ 15-18.) Fitzgerald is the appointed counsel for the Board. (*Id.* ¶ 19.) He "was appointed in 2016 as the County Counsel to be the chief legal advisor to the Board for a three-year term." (*Id.* ¶ 31.) O'Connor has been the appointed County Administrator for the Board since 2010. (*Id.* ¶ 32.)

### 2.     The Investigation

In June 2017, O'Connor and Fitzgerald retained the Honorable Mary Catherine Cuff, P.J.A.D. (ret.) (the "Investigator") to investigate a complaint by an unknown woman alleging Curley made a sexist remark in public during the May 2017 Bradley Beach Memorial Day Parade. (*Id.* ¶¶ 44, 51, 53; *see* Investigator's Report (ECF No. 2) at 1, 5-6.) The Investigator interviewed multiple witnesses, including DiMaso and Curley, who was interviewed with his attorney present. (ECF No. 2 at 19-22.) Curley alleges the investigation was initiated without the approval of the Board and that the Investigator was also retained without the Board's approval. (ECF No. 7 ¶¶ 51-52.) The investigation lasted approximately five months. (*Id.* ¶ 53.) Ultimately, the investigation resulted in the issuance of a report (the "Report"), which was released to Fitzgerald on October 13, 2017. (*Id.* ¶ 54.) Section I of the Report, "Statement of Allegations," contains the substance of the interviews; Section II contains a statement of law governing sexual harassment in the workplace; Section III contains the Investigator's conclusions on the credibility of the statements made during the interviews, and Section IV contains the Investigator's recommendations. (ECF No. 2.) The Investigator found credible many of the allegations that Curley made sexist remarks

3

about women. (*Id.*) Therefore, she concluded Curley's alleged conduct could support an inference of sex discrimination or hostile work environment. (*Id.* at 46.)

### 3. The Board Censures Curley

On November 26, 2017, Fitzgerald sent the Freeholders a copy of the Report. They noticed and held a special meeting of the Board to be held in Executive Session for November 29, 2017, "where the Freeholders would discuss the Report and Fitzgerald and O'Connor would present recommendations to act on the Report." (ECF No. 7 ¶¶ 60-62.) Curley arrived with counsel for the Executive Session, but Fitzgerald informed him "he could not attend the meeting at its start to make a statement, since he was a 'target.'" (*Id.* ¶¶ 62-63.) When Curley's counsel informed Fitzgerald he wanted to put his objections to the proceeding on the record, Fitzgerald threatened to call the County Sheriff to remove Curley from the meeting. (*Id.* ¶ 64.) At the meeting, Curley "requested that DiMaso recuse herself given that she was . . . one of the complainants" or that Curley and DiMaso both be recused. (*Id.* ¶¶ 69-70.) Both requests were denied. (*Id.*) Eventually, Curley was permitted to speak but was cautioned "that he was not permitted to speak about or address the merits of the Report." (*Id.* ¶ 65.) Curley, in lieu of speaking, presented a letter and memorandum, drafted by his counsel, setting forth his position. (*Id.* ¶ 71.) Curley's counsel was denied access to the Executive Session. (*Id.* ¶ 68.) The Executive Session was not conducted on the record—instead, handwritten notes were taken that have yet to be provided to Curley. (*Id.* ¶¶ 66-67.)

After the Executive Session, O'Connor and Fitzgerald met with Curley and his attorney. (*Id.* ¶ 74.) They explained that Curley is barred from entering the Hall of Records, where the Board conducts its business, unless he was conducting County business, and that Curley could not have any contact with County employees, including his aide, until a special meeting and subsequent

public session was held on December 4, 2017, to consider the following: (1) updating, expanding, and reinforcing the Monmouth County policy on prohibiting workplace discrimination and harassment; and (2) a resolution to censure Curley (the "Censure Resolution"). (*Id.* ¶¶ 75, 77, 81-90.) Curley alleges O'Connor and Fitzgerald made these decisions without vote or approval of the Board. (*Id.* ¶ 76.) Fitzgerald indicated Curley and his counsel would be allowed to attend the December 4 meeting and would be allowed to question the investigator, but not confront the witnesses. (*Id.* ¶ 79.) The above restrictions on Curley remained in place for two days, during which time, on November 30, 2017, Curley worked at the Hall of Records in order to "fulfill[] his duties as an elected Freeholder." (*Id.* ¶ 86.)

### 4. Curley's Federal Complaint, Application for a Temporary Restraining Order, and Motion for a Preliminary Injunction

On December 1, 2017, Curley filed his initial Complaint with an Order to Show Cause seeking Temporary Restraints and a Preliminary Injunction, to prevent Defendants from proceeding with the Censure Resolution on December 4, 2017, and to provide Curley with access to his office and confidential aide. (ECF No. 1 and ECF No. 7 ¶ 91.) On that same day, the Court held a telephone conference, where the parties ultimately agreed to adjourn the special meeting from December 4 to December 8, 2017. In addition, Defendants agreed to provide Curley with access to the Hall of Records. (ECF No. 7 ¶ 92.)

On December 4, 2017, the parties appeared before the Court and agreed that Curley would withdraw his Motion for Temporary Restraints and allow the special meeting to go forward on December 8. (*Id.* ¶¶ 93-94.) The Court also ordered that the Report and Curley's counsel's objections to it would remain sealed. (ECF No. 6.)

### 5.   December 8, 2017 Executive Session

On December 7, 2017, Defendants' outside counsel notified Curley that at the December 8 Executive Session: (1) the Investigator would give a presentation; (2) Curley would have thirty minutes to present comments, submissions, or statements "individually or through counsel"; and (3) the other Freeholders would have thirty minutes to present their comments, submissions, and statements. (ECF No. 7-1, Ex. E at 10.) At the Executive Session, Curley elected not to speak, and his counsel spoke on his behalf. (ECF No. 7 ¶ 97.) DiMaso attended the Executive Session and the deliberations after all presentations. (*Id.* ¶ 101.) Also present were Arnone, Rich, and Burry. (*Id.* ¶ 102.)

### 6.   December 8, 2017 Public Session

After deliberating at the Executive Session, the Freeholders conducted the Public Session. (*Id.* ¶ 103.) At the Public Session, the Board took public comment, voted on, and approved the following resolutions: (1) to update, expand, and reinforce the Monmouth County policy on prohibiting workplace discrimination and harassment; and (2) to censure Curley. (*Id.* ¶¶ 81, 106, 117.) The resolution to censure Curley expresses disapproval of his remarks but imposes no punishment on him. (ECF No. 7-1, Ex. F at 13-21.)

At the Public Session, Defendants allegedly read the Censure Resolution of Curley, which directly quoted and paraphrased the Report, "notwithstanding the Court's order that the Report remain under seal." (ECF No. 7 ¶¶ 107-08.) During the reading of the Censure Resolution, "a member of the public interrupted Defendants' counsel to inform the Freeholders that quoting passages from the Report violate[d] the Court's sealing order." (*Id.* ¶ 109.) When Curley's counsel was permitted to speak, he also objected to the reading of the sealed Report to the public. (*Id.* ¶ 112.)

6

### 7.   Monmouth County Republican Committee Email

On December 13, 2017, the Chairman of the Monmouth County Republican Committee sent an email to the Monmouth County Republic Headquarters, quoting from the Report and criticizing Curley "for pursuing his rights in courts and for hiring a 'Democratic State committee lawyer.'" (*Id.* ¶¶ 118-19.) The email concluded that Curley "should not run for re-election on the Republican line in 2018." (*Id.* ¶ 120.)

### B.     Procedural Background

On December 1, 2017, Curley filed an initial Complaint against Defendants with an Order to Show Cause seeking Temporary Restraints and a Preliminary Injunction. (ECF No. 1.) On December 4, 2017, Curley withdrew his Application for Temporary Restraints, and the Court, with all counsels' consent, ordered the Report sealed. (ECF No. 4.) On December 22, 2017, Curley filed an Amended Complaint, alleging twelve counts against Defendants in their individual and official capacities: (1) two violations of his due process under the Fourteenth Amendment pursuant to 42 U.S.C. § 1983; (2) two violations of his due process under Article I, Paragraph I of the New Jersey Constitution; (3) declaratory judgment; (4) retaliation for protected free speech under the First Amendment, pursuant to § 1983; (5) retaliation for protected free speech under Article I, Section I, Paragraph 6 of the New Jersey State Constitution; (6) a violation of the Speech or Debate Clause of Article I, Section 6, Clause 1 of the U.S. Constitution; (7) a violation of the Speech or Debate Clause of Article IV, Section 4, Paragraph 9 of the New Jersey State Constitution; (8) Conspiracy to Violate Constitutional Rights, § 1985; (9) violation of local government ethics law; and (10) defamation. (*See* ECF No. 7.)

On December 22, 2017, Curley filed a Motion to hold Defendants in contempt for violating the Court's December 4, 2017 Order to keep the Report sealed ("Order to Seal"). (ECF No. 8.) On

February 1, 2018, the County Defendants filed a Motion to Dismiss for Lack of Jurisdiction based on immunity and Motion to Dismiss for failure to state a claim. (ECF No. 26.) On February 15, 2017, Fitzgerald and O'Connor filed a Motion to Dismiss. (ECF No. 32.) All motions are opposed. (ECF Nos. 21 and 44.) On April 30, 2018, the Court heard Oral Argument on both motions and provided the parties with an opportunity to file supplemental summation briefs after the argument. On May 7, 2018, Defendants submitted supplemental briefs. (ECF Nos. 51 and 52.) These were taken into consideration below.[2]

## II.    LEGAL STANDARDS

### A.   Federal Rule of Civil Procedure 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) mandates the dismissal of a case for "lack of subject-matter jurisdiction." An assertion of Eleventh Amendment immunity is a challenge to a district court's subject-matter jurisdiction. *See Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690, 693 n.2 (3d Cir. 1996) ("[T]he Eleventh Amendment is a jurisdictional bar which deprives federal courts of subject matter jurisdiction.") (citing *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 98-100 (1984)). Typically, when jurisdiction is challenged pursuant to Rule 12(b)(1), the plaintiff bears the burden of persuading the court that subject-matter jurisdiction exists. *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991). However, because "Eleventh Amendment immunity can be expressly waived by a party, or forfeited through non-assertion, it does not implicate federal subject matter jurisdiction in the ordinary sense," and therefore, a party asserting Eleventh Amendment immunity bears the burden of proving its applicability. *Christy v.*

---

[2] Notably, after Oral Argument, Curley announced he would seek re-election to a fourth term as an independent.

*Pa. Turnpike Comm.*, 54 F.3d 1140, 1144 (3d Cir. 1994); *see also Carter v. City of Phila.*, 181 F.3d 339, 347 (3d Cir. 1999).

When evaluating a Rule 12(b)(1) motion to dismiss, a court must first determine whether the motion attacks the complaint as deficient on its face, or whether the motion attacks the existence of subject-matter jurisdiction in fact, apart from any pleadings. *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). If the motion consists of a facial attack, the court "must accept the complaint's allegations as true," *Turicentro v. Am. Airlines*, 303 F.3d 293, 300 n.4 (3d Cir. 2002), and "must only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff," *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000) (citing *Mortensen*, 549 F.2d at 891). However, if the motion involves a factual attack, "the court may consider evidence outside the pleadings." *Gould*, 220 F.3d at 176 (citing *Gotha v. United States*, 115 F.3d 176, 178-79 (3d Cir. 1997)). Here, the Motion to Dismiss for lack of jurisdiction is a facial attack, because the Defendants assert they are immune from Curley's claims as pled. Therefore, on this question of immunity, the Court's review is limited to the allegations in the Complaint, which the Court must accept as true and view in the light most favorable to Curley.

### B. Federal Rule of Civil Procedure 12(b)(6)

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court is "required to accept as true all factual allegations in the complaint and draw all inferences in the facts alleged in the light most favorable to the [plaintiff]." *Phillips*, 515 F.3d at 228. "[A] complaint attacked by a . . . motion to dismiss does not need detailed factual allegations." *Bell Atl. v. Twombly*, 550 U.S. 544, 555 (2007). However, the plaintiff's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic

9

recitation of the elements of a cause of action will not do." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286. Instead, assuming the factual allegations in the complaint are true, those "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for misconduct alleged." *Id.* This "plausibility standard" requires the complaint allege "more than a sheer possibility that a defendant has acted unlawfully," but it "is not akin to a 'probability requirement.'" *Id.* (quoting *Twombly*, 550 U.S. at 556). "Detailed factual allegations" are not required, but "more than an unadorned, the defendant-harmed-me accusation" must be pled; it must include "factual enhancements" and not just conclusory statements or a recitation of the elements of a cause of action. *Id.* (quoting *Twombly*, 550 U.S. at 555, 557).

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

While as a general rule, a court may not consider anything beyond the four corners of the complaint on a motion to dismiss pursuant to 12(b)(6), the Third Circuit has held "a court may consider certain narrowly defined types of material without converting the motion to dismiss [to

10

one for summary judgment pursuant under Rule 56].” *In re Rockefeller Ctr. Props. Sec. Litig.*, 184 F.3d 280, 287 (3d Cir. 1999). Specifically, courts may consider any “‘document *integral to or explicitly relied upon* in the complaint.” *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d at 1426.

## C. Contempt

“Courts have inherent power to hold parties in civil contempt in order to enforce compliance with any order of the court or to compensate for losses or damages.” *U.S. v. Ciampitti*, 669 F. Supp. 684, 687 (D.N.J. 1987) (citing *McComb v. Jacksonville Paper Co.*, 336 U.S. 187 (1949)). The Court also has the authority to impose sanctions “if a party or its attorney . . . fails to obey a scheduling or other pretrial order.” Fed. R. Civ. P. 16(f)(1)(C). Rule 16(f)(2) further allows:

> Instead of or in addition to any other sanction, the court must order the party, its attorney, or both to pay the reasonable expenses— including attorney's fees—incurred because of any noncompliance with this rule, unless the noncompliance was substantially justified or other circumstances make an award of expenses unjust.

Fed. R. Civ. P. 16(f)(2). “To prove civil contempt the court must find that (1) a valid court order existed, (2) the defendant had knowledge of the order, and (3) the defendant disobeyed the order.” *John T. ex rel. Paul T. v. Delaware Cty. Intermediate Unit*, 318 F.3d 545, 552 (3d Cir. 2003) (citation omitted).

## III. DECISION

### A. Subject Matter Jurisdiction

The County Defendants argue this Court lacks subject matter jurisdiction because Curley's claims present non-justiciable political questions. (ECF No. 26-1 at 12-17.) Specifically, the County Defendants argue “the political question doctrine excludes from judicial review those

controversies which revolve around policy choices and value determinations reserved for the legislative and executive branches of government." (*Id.* at 14.) The County Defendants argue:

> First, Freeholder Curley's lawsuit inextricably relates to the County Freeholder's discretionary judgment in how best to respond to an internal work-place complaint against a policymaking official.
>
> Second, Freeholder Curley's claims lack judicially discoverable and manageable standards for resolving the issue, as the entirety of this case relates to creating, updating, and changing internal policies and procedures in the County workplace in relation to high-ranking policymakers; and how the County Freeholders are responsible for not only implementing, but also complying with same.
>
> . . . .
>
> Finally, it is impossible for the Court to resolve this case or grant Freeholder Curley his requested relief without expressing a lack of respect for the County Freeholders. Finding the censure improper would require an invasion into the Freeholder Defendants ['] internal legislative proceedings.

(*Id.* at 14, 16.)

Curley argues "[b]ecause this case involves a challenge to a local legislative body and not a coordinate branch of the Federal Government, the political question doctrine standards are plainly not met." (ECF No. 43 at 11.) The Court agrees.

"The political question doctrine like standing, mootness and ripeness places constitutional and prudential limits on the power of the federal courts to adjudicate certain kinds of claims." *In re Nazi Era Cases Against German Defendants Litig.*, 129 F. Supp. 2d 370, 374 (D.N.J. 2001). "The political question doctrine is 'primarily a function of the separation of powers[,]'" where "[t]he judiciary properly refrains from deciding controversies that the Constitution textually commits to another political branch, as wells [sic] as cases that lack judicially manageable standards." *McMahon v. Gen. Dynamics Corp.*, 933 F. Supp. 2d 682, 694 (D.N.J. 2013). Claims

12

that implicate the government's foreign policy may pose political questions. *In re Nazi Era Cases Against German Defendants Litig.*, 129 F. Supp. 2d at 374 (citing U.S. Const. art. II, § 2).

"Notwithstanding ample litigation, the Supreme Court has only rarely found that a political question bars its adjudication of an issue." *McMahon*, 933 F. Supp. 2d at 694. Indeed, "the application of the political question doctrine is not absolute." *In re Nazi Era Cases Against German Defendants Litig.*, 129 F. Supp. 2d at 374. In fact, "[a] question presented to this Court for decision is properly deemed political when its resolution is committed by the Constitution to a branch of the Federal Government other than this Court." *Elrod v. Burns*, 427 U.S. 347, 351 (1976). Therefore, "it is the relationship between the judiciary and the coordinate branches of the Federal Government, and not the federal judiciary's relationship to the States, which gives rise to the 'political question.'" *Id.* (quoting *Baker v. Carr*, 369 U.S. 186, 217 (1962)); *Larsen v. Senate of Com. of Pa.*, 152 F.3d 240, 246 (3d Cir. 1998). Because this case involves challenges to a local state legislative body and not a branch of the Federal Government, the political question doctrine does not apply. Accordingly, the County Defendants' Motion to Dismiss on this ground is **DENIED**.

**B.**     **The Speech or Debate Clause**

Defendants argue they are entitled to immunity under the Speech or Debate Clause of Article 1 Section 6 of the United States Constitution for the investigation into Curley's conduct and the Censure Resolution because they are elected officials or the staff of elected officials. (ECF No. 26-1 at 18 and ECF No. 33 at 29.) Curley argues the Speech or Debate Clause does not immunize Defendants' conduct because it is outside the legislative process. (ECF No. 43 at 25-27.)

13

The Speech or Debate Clause provides: "The Senators and Representatives . . . for any Speech or Debate in either House . . . shall not be questioned in any other Place." U.S. Const., art. I, § 6, cl. 1. It affords absolute immunity to state legislators for their legislative activities. *Youngblood v. DeWeese*, 352 F.3d 836, 839 (3d Cir. 2003), *as amended* (Feb. 11, 2004). "[L]ocal legislators, like federal and state legislators, are absolutely immune from liability for their legislative activities." *In re Montgomery Cty.*, 215 F.3d 367, 376 (3d Cir. 2000).

"To be legislative, however, the act in question must be both substantively and procedurally legislative in nature." *Id.* "An act is substantively legislative if it involves policy-making of a general purpose or line-drawing." *Id.* (citation omitted). "It is procedurally legislative if it is undertaken by means of established legislative procedures." *Id.* (citation omitted). The Supreme Court:

> has defined the sphere of legitimate legislative activities to include activities that are "an integral part of the deliberative and communicative processes by which Members participate in committee and House proceedings with respect to the consideration and passage or rejection of proposed legislation or with respect to other matter which the Constitution places within the jurisdiction of either House."

*Youngblood*, 352 F.3d at 840 (quoting *Gravel v. United States*, 408 U.S. 606, 625 (1972)). The Court has found the following are considered legislative: voting for a resolution, *Powell v. McCormack*, 395 U.S. 486, 504–05 (1969); subpoenaing and seizing property and records for a committee hearing, *Eastland v. United States Servicemen's Fund*, 421 U.S. 491, 507 (1975) and *Dombrowski v. Eastland*, 387 U.S. 82, 84–85 (1967); preparing investigative reports, *Doe v. McMillan*, 412 U.S. 306, 313 (1973); addressing a congressional committee, *Gravel*, 408 U.S. at 616; and speaking before the legislative body in session, *Johnson*, 383 U.S. at 184–85.

14

However, the Speech or Debate Clause does not encompass "everything 'related of the due functioning of the legislative process.'" *Youngblood*, 352 F.3d at 840 (quoting *United States v. Brewster*, 408 U.S. 501, 513 (1972)). "Immunity does not extend to acts that are casually or incidentally related to legislative affairs but not a part of the legislative process itself." *Id.* (citation omitted). The Third Circuit has denied immunity where an employee was fired for mis- and malfeasance because it was a "personnel decision that does not involve general policy making" and therefore, was not legislative in substance. *In re Montgomery Cty.*, 215 F.3d at 377.

Here, the County Defendants admit this was not a legislative act. (ECF No. 26-1 at 27.) In their Moving Brief they argue Curley has not sufficiently pled a Due Process claim because the Censure Resolution "is merely an expression of the Freeholder Defendants' opinion[,] . . . "[w]hile an ordinance is a 'distinctively [] legislative act,' a resolution 'is simply an expression of opinion or mind concerning some particular time or business coming within the legislative body's official cognizance.'" (*Id.*) Defendants cannot have it both ways. Because they admit the Censure Resolution was not a legislative act, the Court finds Defendants are not entitled to absolute immunity under the Speech or Debate Clause.

### C.    Constitutional Claims

####    1.    Due Process Claims (Counts 1-4)

In Counts 1 through 4 of the Amended Complaint, Curley alleges his due process rights were violated under the Fourteenth Amendment, the New Jersey Constitution and/or the New Jersey Civil Rights Act ("NJRCA"). (ECF No. 7 at 22-27.) Specifically, Curley alleges he was deprived of a protected property interest because Defendants deprived him of unrestricted access to his office, denied him access to his aide for a period of two days, censured him without due process, and denied him of a protected interest in his reputation without due process. (*Id.*)

15

The Court finds Curley has failed to sufficiently allege Defendants deprived him of any property interest or right protected by the Due Process Clause. The Fourteenth Amendment of the Constitution prohibits "a state from depriving persons of life, liberty, or property without due process of law." U.S. Const. amend. XIV, § 1. "When a plaintiff sues under 42 U.S.C. § 1983 for a state actor's failure to provide procedural due process" she must demonstrate she had a life, liberty, or property interest and that the procedures available to her did not provide her with "due process of law." *Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000) (emphasis added). In evaluating a procedural due process claim, the Court must first determine "whether the asserted individual interests are encompassed within the [F]ourteenth [A]mendment's protection of life, liberty, or property." *Id.* (citation omitted); *accord Shoats v. Horn*, 213 F.3d 140, 143 (3d Cir. 2000) (citation omitted). Property interests are "created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Bd. of Regents of State Coll. v. Roth*, 408 U.S. 564, 577 (1972). "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Id.*

Once a court determines that the interest asserted is protected by the Due Process Clause, the question then becomes what process is due to protect it. *Id.* (citing *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972)). "This principle requires some kind of a hearing prior to the discharge of an employee who has a constitutionally protected property interest in his employment." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985) (citations omitted). The Constitution requires the opportunity to be "granted at a meaningful time and in a meaningful manner." *Boddie v. Connecticut*, 401 U.S. 371, 378 (1971) (citation omitted).

16

"[P]ersonnel decisions short of termination do not constitute a deprivation of a property interest under the due process clause of the [F]ourteenth [A]mendment." *Ferraro v. City of Long Branch*, 23 F.3d 803, 807 (3d Cir. 1994). In *Ferraro*, the Third Circuit found there was no constitutional violation where a complaint does not allege: (1) an employee was "discharged actually or constructively, [(2)] his salary and benefits were not affected adversely . . . , [3] [he was] not strip[ped] of his job title, and [4] he was not transferred to a different agency." *Id.* Moreover, courts have found elected officials "hold[] no property right in [their] elected positions or in [their] ability to carry out the functions of that position." *Dillaplain v. Xenia Cmty. Sch. Bd. of Educ.*, No. 13-104, 2013 WL 5724512, at *6 (S.D. Ohio Oct. 21, 2013). The Supreme Court has established that "an unlawful denial by state action of a right to state political office is not a denial of a right of property or liberty secured by the due process clause." *Snowden v. Hughes*, 321 U.S. 1, 7 (1944)); *Biener v. Calio*, 361 F.3d 206, 216 (3d Cir. 2004). "[P]ublic offices are mere agencies or trusts, and not property as such and . . . the nature of the relation of a public officer to the public is inconsistent with either a property or a contract right." *Carson v. Vernon Twp.*, No. 09-6126, 2010 WL 2985849, at *12 (D.N.J. July 21, 2010) (citations omitted).

In Counts 1 and 2 of his Amended Complaint, Curley does not allege Defendants discharged him actually or constructively, deprived him of his salary, excluded him from Board meetings, or prevented him from voting on Board matters. Instead, he merely complains he was deprived of unrestricted access to his office and access to his aide for two days, which he alleges he is entitled to based on "custom and tradition." (ECF No. 7 ¶¶ 125, 134.) These alleged interests do not constitute deprivations of property interest under the Fourteenth Amendment. Indeed, Curley concedes he was able to perform his official duties despite his restrictions. In fact, on

17

November 30, 2017, Curley worked at the Hall of Records "fulfilling his duties as an elected Freeholder." (ECF No. 7 ¶ 86.)

Property interests are "created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Bd. of Regents of State Coll.*, 408 U.S. at 577. "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Id.* Curley pleads no existing rules or independent sources of law that secure these types of property interests. Accordingly, Curley has failed to state a claim as to Counts 1 and 2. Accordingly, Counts 1 and 2 are **DISMISSED**.

Counts 3 and 4 of the Amended Complaint allege Defendants deprived Curley of a constitutionally protected interest in his reputation without due process by providing the Report to the Board and censuring him. The Third Circuit has held that "an individual does not have a protected interest in reputation alone." *Thomas v. Indep. Twp.*, 463 F.3d 285, 297 (3d Cir. 2006). "Rather, to make out a due process claim for deprivation of a liberty interest in reputation, a plaintiff must show a stigma to his reputation plus deprivation of some additional right or interest." *Hill v. Borough of Kutztown*, 455 F.3d 225, 236 (3d Cir. 2006). This is referred to as the "stigma-plus" test. *Id.* In the public employment context, the "stigma-plus" test has been applied to mean that when an employer "creates and disseminates a false and defamatory impression about the employee in connection with his termination," it deprives the employee of a protected liberty interest. *Codd v. Velger*, 429 U.S. 624, 628 (1977). The creation and dissemination of the false and defamatory impression is the "stigma," and the termination is the "plus." *Hill*, 455 F.3d at 236. To satisfy the "stigma" prong of the test, it must be alleged that the purportedly stigmatizing

18

statements: (1) were made publicly and (2) were false. *Dee v. Borough of Dunmore*, 549 F.3d 225, 235 (3d Cir. 2008) (citation omitted).

Curley has alleged Defendants defamed him by accusing him of making sexually explicit remarks. He alleges Defendants made these accusations publicly—in a Public Session. He further alleges the statements were false. Therefore, his Amended Complaint adequately alleges the "stigma" prong of the "stigma-plus" test. However, he has not satisfied the "plus" prong. That is, putting aside the question of stigma, Curley has not shown deprivation of some additional right or interest. Curley suggests he satisfies the "plus" requirement because "his chances of electoral success" or running for re-election are harmed. (ECF No. 43 at 22.) Curley offers no case law to support his contention that these allegations are sufficient, and Defendants counter that Curley has failed to present evidence of any injury other than the perceived harm to his reputation. The Court agrees.

In *Hill*, the Third Circuit concluded "that a public employee who is defamed in the course of being terminated or constructively discharged satisfies the 'stigma-plus' test even if, as a matter of state law, he lacks a property interest in the job he lost." 455 F.3d at 238. However, *Hill* is distinguishable because it involved the sufficiency of the allegations on a motion to dismiss where the plaintiff adequately stated a claim based on constructive or actual termination—neither of which is alleged here. Moreover, the Court in *Hill* analyzed cases with factual scenarios more lenient to plaintiffs than here that nonetheless did not satisfy the "plus" requirement. *Id.* (holding that, in employment context, "plus" factor not met in cases where plaintiffs were suspended with pay, reprimanded and disciplined but not suspended, had duties changed, or lost volunteer position); *see also Sturm v. Clark*, 835 F.2d 1009, 1012–13 (3d Cir. 1987) (rejecting reputation claim where attorney was not denied opportunity to see or pursue clients held in custody and

19

despite allegation that defendants characterized her as "disruptive and unprofessional" to the detriment of her practice). Here, Curley's only alleged harm is his speculation that his chances for reelection may be harmed.

Application of New Jersey state-specific due process case law warrants the same conclusion. In New Jersey, "[w]here a person's good name or reputation are at stake because of what the government is doing to that person . . . sufficient constitutional interests are at stake[ ]" such that the inquiry looks for "a protectible interest in reputation without requiring any other tangible loss." *Doe v. Poritz*, 662 A.2d 367, 418-419 (N.J. 1995). The inquiry, however, remains fact-intensive, *id.*, and reputational harm must be more than *de minimis*. *In re L.R.*, 3729 A.2d 463, 472 (N.J. Super. Ct. App. Div. 1999) (stating that lenient state standard "does not mean that a liberty interest is implicated anytime a governmental agency transmits information that may impugn a person's reputation"). The cases on which Curley relies are distinguishable by the interests and harm at stake.

In *Grodjesk v. Jersey City Medical Center*, the Court found the "censure by the [hospital's] executive committee [] unquestionably damaged plaintiffs' reputation and their professional standing as oral surgeons." 343 A.2d 489, 500 (N.J. Super. Ct. Ch. Div. 1975). The plaintiffs were censured by the executive committee of the medical-dental staff for "writing to agencies and persons outside the hospital family before judgment was made by them or their peers and also for use by them of patient records obtained improperly." *Id.* at 411. The censure caused them to be "injured in their business, reputation, profits and professional standing." *Id.* In *Poritz*, the Court repeated that a heightened sex offender designation "inflicts a greater stigma than that resulting from the conviction for a sex offense, when there is no such classification" because one's "liberty interest is more significant" when "prior undisclosed criminal history and his new classification

20

become [publicly] known." 662 A.2d at 420. Curley, by contrast, presents no evidence of endangered livelihood or societal ostracization. Indeed, he only speculates that his chances for reelection may be harmed and fails to supply competent evidence of this. *Danchuk v. Mayor & Council of the Borough of Mount Arlington*, No. 15- 2028, 2017 WL 3821469, at *5 (D.N.J. Aug. 31, 2017) (concluding that because the plaintiff presented "no evidence of endangered livelihood or societal ostracization" and "only speculate[d] that her re-election [was] casually connected to the Censure and fail[ed] to supply competent evidence of her diminished community standing" she filed to plead she was deprived of due process). In fact, regardless of his alleged speculations, he has decided to seek re-election to a fourth term as an independent. Reputational harm must be more than *de minimis*. *Id.* Accordingly, Curley has failed to sufficiently plead he was deprived of a constitutionally protected interest in his reputation without due process. Counts 3 and 4 are **DISMISSED**.

## 2. Qualified Immunity and First Amendment Retaliation Claims (Counts 6 and 7)

In Counts 5 and 6 of the Amended Complaint, Curley alleges Defendants violated his First Amendment rights by retaliating against him for his "statements and conduct as a Freeholder expressing his political views." (ECF No. 7 ¶ 169.) Defendants argue Curley's First Amendment retaliation claims against them fail to properly state a claim, otherwise they are entitled to qualified immunity as to those claims. (ECF No. 26-1 at 28 and ECF No. 33 at 34.) Curley argues he has sufficiently alleged a violation of his First Amendment rights and therefore, Defendants are not entitled to qualified immunity. (ECF No. 43 at 29.)

To determine whether a public official is entitled to qualified immunity, courts first determine whether the official violated a constitutional right, and then ask whether the right was

clearly established at the time of the violation. *Santini v. Fuentes*, 795 F.3d 410, 417 (3d Cir. 2015) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). The Third Circuit has interpreted the phrase "clearly established" to mean "some but not precise factual correspondence" between relevant precedents and the conduct at issue, and that "[a]lthough officials need not predict[t] the future course of constitutional law, they are required to relate established law to analogous factual settings." *Ryan v. Burlington Cty.*, 860 F.2d 1199, 1208–09 (3d Cir. 1988), *cert. denied*, 490 U.S. 1020 (1989) (quoting *People of Three Mile Island v. Nuclear Regulatory Comm'rs*, 747 F.2d 139, 144 (3d Cir. 1984)). The essential inquiry is whether a reasonable official in the defendant's position at the relevant time "could have believed, in light of clearly established law, that [his or her] conduct comported with established legal standards." *Merkle v. Upper Dublin Sch. Dist.*, 211 F.3d 782, 797 (3d Cir. 2000) (quoting *Stoneking v. Bradford Area Sch. Dist.*, 882 F.2d 720, 726 (3d Cir. 1989), *cert. denied*, 493 U.S. 1044 (1990)).

Qualified immunity affords government officials considerable protection from liability, as it "protects all but the plainly incompetent or those who knowingly violate the law." *Saucier*, 533 U.S. at 205 (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). A plaintiff seeking to overcome qualified immunity need not cite "a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). "[Q]ualified immunity [is] defeated if an official '*knew or reasonably should have known that the action he took . . . would violate the constitutional rights of the [plaintiff], or if he took the action with the malicious intention* to cause a deprivation of constitutional rights or other injury." *Harlow v. Fitzgerald*, 457 U.S. 800, 815 (quoting *Wood v. Strickland*, 420 U.S. 308, 322 (1975)).

To determine whether a public official is entitled to qualified immunity, courts first determine whether the official violated a constitutional right. Therefore, the Court begins its

22

analysis by looking to whether a constitutional right was violated. To plead a claim for First Amendment retaliation, a plaintiff must allege:

> (1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the constitutionally protected conduct and the retaliatory action.

*Willson v. Yerke*, 604 F. App'x 149, 151 (3d Cir. 2015) (citation omitted). "To be actionable as a general matter, the alleged retaliatory conduct must have had more than a de minimis impact on the plaintiff's First Amendment rights." *Id.* "Where the alleged misconduct relates to the statements or action of elected officials, the threshold is particularly high." *Id.*

In *Bond v. Floyd*, the Supreme Court observed "[t]he manifest function of the First Amendment in a representative government requires that legislators be given the widest latitude to express their views on issues of policy." 385 U.S. 116, 135–36 (1966). The Third Circuit in *Werkheiser v. Pocono Township* also found that "nothing in *Bond* . . . suggests the Court intended for the First Amendment to guard against every form of political backlash that might arise out of the everyday squabbles of hardball politics" and that "the First Amendment may well prohibit retaliation against elected officials for speech pursuant to their official duties only when the retaliation interferes with their ability to adequately perform their elected duties." 780 F.3d 172, 181 (3d Cir. 2015); *see also Camacho v. Brandon*, 317 F.3d 153, 166 (2d Cir. 2003) (Walker, J., concurring) ("[C]ourts should intervene in only the most severe cases of legislative retaliation for the exercise of First Amendment rights, thereby allowing ample room for the hurly burly of legislative decision making."); *cf. Monteiro v. City of Elizabeth*, 436 F.3d 397 (3d Cir. 2006) (finding sufficient evidence to support a First Amendment retaliation claim where the City Council President had a Council member arrested and removed from a meeting for speaking out against

the Council President). Courts have declined to find that verbal reprimands or defamatory remarks adversely affect a plaintiff's exercise of his First Amendment rights. *Brennan v. Norton*, 350 F.3d 399, 419 (3d Cir. 2003) ("[C]ourts have declined to find that an employer's actions have adversely affected an employee's exercise of his First Amendment rights where the employer's alleged retaliatory acts were criticism, false accusations, or verbal reprimands.").

The Court finds Curley has failed to sufficiently plead Defendants violated his First Amendment rights. Curley does not set forth the specific political statements or any conduct that is allegedly constitutionally protected, nor does he allege retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights. Curley argues his pleadings are sufficient to deter a person of ordinary firmness from exercising his constitutional rights because he pled limited access to his office, restricted access to his aide for two days, and that he was censured. The Court does not agree. As stated in *Werkheiser* "the First Amendment may well prohibit retaliation against elected officials for speech pursuant to their official duties *only when the retaliation interferes with their ability to adequately perform their elected duties*." 780 F.3d at 181 (3d Cir. 2015) (emphasis added). Curley admits in his Amended Complaint he worked at the Hall of Records during his alleged restricted access "fulfilling his duties as an elected Freeholder." (*Id.* ¶ 86.) Moreover, censure resolutions expressing disapproval with no punishment are *de minimis* and are not constitutional violations. *See Danchuk v. Mayor & Council of the Borough of Mount Arlington*, No. 15- 2028, 2017 WL 3821469, at *6 (D.N.J. Aug. 31, 2017) (noting a censure "is mere [a] de minimis criticism, accusation[], or reprimand insufficient to deter a person of ordinary firmness from exercising constitutional rights and, hence, does not run afoul [of] federal and state rights to free speech."); *Page v. Braker*, No. 06-2067, 2007 WL 432980, at *3 (D.N.J. Jan. 31, 2007) (finding the censure resolution "was *de minimis* and did not rise to the level

24

necessary to constitute a First Amendment violation" because it was a "mere showing of disapproval, expressed by a councilman's colleagues, and lacking any real force or punishment"). Accordingly, Counts 6 and 7 of Curley's Amended Complaint are **DISMISSED** for failure to state a claim and because Defendants are entitled to qualified immunity.

### 3. Speech or Debate Clause (Counts 8 and 9)

Count 8 and 9 of Curley's Amended Complaint alleges Defendants violated his rights under the respective Speech or Debate Clauses of the United Stated and New Jersey Constitution. (ECF No. 7 at 30-32.) Curley argues the Speech or Debate Clause precluded the Censure Resolution. (*Id.*) Defendants contend the Speech or Debate Clause does not confer on a plaintiff a private right of action for retaliation based on protected speech. (ECF No. 26-1 at 21 and ECF No. 33 at 35.) Moreover, they note they have not sued Curley. (ECF No. 26-1 at 21 and ECF No. 33 at 34.) Curley argues "he does not seek to create a private cause of action based on the Speech or Debate Clause, but rather seeks declaratory and injunctive relief regarding the attempt to use his clearly immunized legislative speech as a basis for punitive measures, in plain violation of that provision." (ECF No. 43 at 32.)

Defendants cite no authority for their proposition that the Speech or Debate Clause does not confer on a plaintiff a private right of action. Nonetheless, the Court finds it lacks jurisdiction over Counts 8 and 9 because there is no Article III case or controversy. "Article III of the Constitution limits the jurisdiction of federal courts to 'Cases' and 'Controversies.'" *Lance v. Coffman*, 549 U.S. 437, 439 (2007). "Standing to sue is a doctrine rooted in the traditional understanding of a case or controversy." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). "The standing inquiry focuses on whether the party invoking jurisdiction had the requisite stake in

the outcome when the suit was filed." *Constitution Party of Pa. v. Aichele*, 757 F.3d 347, 360 (3d Cir. 2014) (citing *Davis v. FEC*, 554 U.S. 724, 734 (2008)).

Article III "standing consists of three elements." *Spokeo*, 136 S. Ct. at 1547 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). To establish standing, "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id.* "The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements." *Id.* (citing *FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 231 (1990)).

As in *Spokeo*, "[t]his case primarily concerns injury in fact, the '[f]irst and foremost' of standing's three elements." *Id.* (quoting *Steel Co. v. Citizens for Better Env't*, 523 U.S. 83, 103 (1998)). "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* at 1548 (quoting *Lujan*, 504 U.S. at 560). "For an injury to be 'particularized,' it 'must affect the plaintiff in a personal and individual way.'" *Id.* (citations omitted). "Particularization is necessary to establish injury in fact, but it is not sufficient. An injury in fact must also be 'concrete.'" *Id.* "A 'concrete' injury must be 'de facto'; that is, it must actually exist." *Id.* (explaining that "[w]hen we have used the adjective 'concrete,' we have meant to convey the usual meaning of the term – 'real,' and not 'abstract'"). "Concreteness, therefore, is quite different from particularization." *Id.*

In *McLeod*, thirty-three plaintiffs who signed releases requested declaratory judgment that the releases were not knowing and voluntary, even though the employer had not threatened or attempted to enforce the ADEA waiver. *McLeod*, 856 F.3d at 1163, 1166-67. The court held:

> An Article III case or controversy may exist where a private party threatens an enforcement action that would cause an imminent injury. Here, though, the former employees do not plead that General Mills threatens any enforcement of the ADEA claim waiver, let alone enforcement that would cause them imminent injury. Instead, they request a declaration of their rights under a hypothetical set of facts. They want to know their legal rights if, in the future, General Mills asserts that the waivers of their substantive ADEA rights were "knowing and voluntary" under § 626(f)(3).

*Id.* at 1166. The court further concluded "[n]o Article III case or controversy arises when plaintiffs seek 'a declaratory judgment as to the validity of a defense' that a defendant 'may, or may not, raise' in a future proceeding." *Id.* at 1167 (quoting *Calderon v. Ashmus*, 523 U.S. 740, 747 (1998)). Defendants have not sued Curley for the alleged speech that is protected by the Speech or Debate Clause. Accordingly, Defendants' motions to dismiss Counts 8 and 9 are **GRANTED.**

### 4.    Conspiracy to Violate Constitutional Rights (Count 10)

Count 10 of Curley's Amended Complaint alleges "Defendants conspired to violate [his] rights secured by the First and Fourteen Amendments to the Unites States Constitution." (ECF No. 7 ¶ 186.) Fitzgerald and O'Connor argue "[b]ecause plaintiff fails to allege that [D]efendants 'conspired' against him because of protected status, such as race, and alleges a conspiracy among members of the same local government, Count Ten should be dismissed." (ECF No. 33 at 35.) The County Defendants argue Curley fails to state a cognizable claim for civil conspiracy because Curley:

> has not identified the conspirators by name or even alleged facts [from] which one could infer the existence of a conspiratorial agreement. Nor has [Curley] alleged specific facts: (1) sufficient to support a conspiracy motivated by a class-based discriminatory animus *i.e.* discriminatory intent; (2) showing that any of these Defendants agreed to violate Freeholder Curley's rights through witness intimidation in any federal and/or state proceeding or investigation; (3) of overt acts committed by the purported co-conspirators in furtherance of the conspiracy; and/or (4) showing

27

> actual knowledge by any of the Defendants of the illegal conspiracy
> to commit a civil rights violation prior to it occurring.

(ECF No. 26-1 at 34.) The County Defendants further argue Curley cannot maintain a conspiracy claim against them because they are considered a single entity that cannot conspire with itself. (*Id.* at 35.) Curley alleges he accidently captioned Count 10 as a conspiracy under 42 U.S.C. § 1985, but actually pled a general civil conspiracy claim under New Jersey law and requests the Court to interpret the claim as such or provide him a chance to replead. (ECF No. 43 at 30.)

The Court finds Curley intended to plead a conspiracy claim under 42 U.S.C. § 1985 because it is not only mentioned in the caption of Count 10 but Count 10 also alleges "Defendants conspired to violate [his] rights secured by the *First and Fourteen Amendment to the United States Constitution*." (ECF No. 7 ¶ 186 (emphasis added).) Because Curley admits he has not properly pled a conspiracy claim under 42 U.S.C. § 1985, it is **DISMISSED**. To the extent Curley intended to plead a general civil conspiracy claim under New Jersey law, he may file a second amended complaint to reflect that.

### D.   Local Government Ethics Law N.J. Stat. Ann. § 40A:9-22.1, *et. seq.* (Count 11)

Count 11 of Curley's Amended Complaint alleges DiMaso, Arnone, Rich, and Burry—the remaining Freeholders excluding himself—violated the Local Government Ethics Law, N.J. Stat. Ann. § 40A:9-22.1 to –22.25 (the "Ethics Law") by participating in the Executive Session and making public comment on and voting for the Censure Resolution at the Public Session. (ECF No. 7 ¶¶ 190-204.) The County Defendants argue the Ethics Law does not apply to this matter because Curley alleges the Freeholders have a "personal interest" in the Censure Resolution for no other reason than that they were "mentioned" in the Report. (ECF No. 26-1 at 41.) Moreover, they argue Curley "provides no foundation, basis or support in fact or law to claim the Freeholders' interest

28

in the subject Censure Resolution was not one shared with the common members of the public."
(*Id.* at 42.) Curley argues he has properly alleged DiMaso had a direct personal interest and the
remaining Freeholders, who were also mentioned in the Report, have an indirect personal interest.
(ECF No. 43 at 38.)

The Ethics Law sets minimum ethical standards by which local government officers must
act. Specifically, N.J. Stat. Ann. § 40A:9-22.5 states: "No local government officer or employee
or member of his immediate family shall have an interest in a business organization or engage in
any business, transaction, or professional activity, which is in substantial conflict with the proper
discharge of his duties in the public interest." "The determination [of] whether a particular interest
is sufficient to disqualify a board member is necessarily factual in nature and depends upon the
circumstances in each case." *Gunthner v. Planning Bd. of Borough of Bay Head*, 762 A.2d 710,
714 (N.J. Super. Ct. Law. Div. 2000).

"An actual conflict of interest is not the decisive factor, nor is 'whether the public servant
succumbs to the temptation,' but rather whether there is a potential for conflict." *Wyzykowski v.
Rizas*, 626 A.2d 406, 413 (N.J. 1993) (citations omitted). "A conflicting interest arises when the
public official has an interest not shared in common with the other members of the public." *Id.* In
other words, "[t]here cannot be a conflict of interest where there do not exist, realistically,
contradictory desires tugging the official in opposite directions." *LaRue v. Township of East
Brunswick*, 172 A.2d 691, 698 (N.J. Super. Ct. App. Div. 1961).

The Court agrees with the County Defendants that Curley has not sufficiently pled they
violated the Ethics Law. Indeed, Curley "provides no foundation, basis or support in fact or law to
claim the Freeholders' interest in the subject Censure Resolution was one not shared with the
common members of the public." (ECF No. 26-1 at 42.) Curley has failed to plead there are

"desires tugging the official[s] in opposite directions." *LaRue*, 172 A.2d at 698. Accordingly, County Defendants Motion to Dismiss Count 11 is **GRANTED**.

### E.      Defamation (Count 12)

Count 12 of Curley's Amended Complaint alleges "[t]he Report contains numerous false and unsubstantiated allegations against [Curley]." (ECF No. 7 ¶ 207.) Defendants argue Curley's defamation claim is premature because he did not wait six months to file the claim from the date notice of claim was received. (ECF No. 26-1 at 39 and ECF No. 33 at 35.) In the alternative, they argue Curley fails to state a claim for defamation. (ECF No. 26-1 at 36-39 and ECF No. 33 at 36-40.) Curley admits he did not comply with the New Jersey Tort Claims Act ("TCA") six-month waiting period prior to filing his defamation claim. (ECF No. 43 at 36-38.) Nevertheless, Curley argues "New Jersey courts have recognized a practical exception to that requirement when the claimant substantially complied with the notice requirement, there would be no prejudice to the state entity, and the 'interests of efficiency and judicial economy' counsel against dismissal." (ECF No. 43 at 36 (quoting *Guerrero v. City of Newark*, 522 A.2d 1036, 1041 (N.J. Super. Ct. App. Div. 1987).)

The TCA states that "[n]o action shall be brought against a public entity or public employee under [the TCA] unless the claim upon which it is based shall have been presented in accordance with the procedures set forth in this Chapter." N.J. Stat. Ann. § 59:8–3. Specifically, a claimant must sign and file a notice of tort claim ("Notice of Claim") with the public entity within 90 days from accrual of the cause of action. *Id.* § 59:8–8.2 After the Notice of Claim is filed, a plaintiff *must* wait six months before filing suit against the public entity or employee in an appropriate court. *Id.* (emphasis added). Curley admits he has not complied with the six-month waiting period (Curley filed his Notice of Claim on December 22, 2017, therefore the six-month period expires

30

on June 22, 2018) and because keeping the claim would not promote efficiency or save judicial resources, since the Court has dismissed the rest of Curley's claims and provided him with opportunity to replead by August 24, 2018 (after the six-month period), Defendants' motions to dismiss Curley's defamation claim are **GRANTED**.

### F.    Declaratory Judgment (Count 5)

Count 5 of Curley's Amended Complaint requests declaratory relief. (ECF No. 7 ¶¶ 153-67.) Specifically, it "seeks a declaration that Defendants' 'investigation' was ultra vires because it was taken without an authorization of the Board." (ECF No. 43 at 11.)

The Declaratory Judgment Act provides that a Court "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). The express language of the declaratory judgment statute and fundamental principles of standing under Article III of the Constitution limit this power to actions that present a "case or controversy." *Cutaiar v. Marshall*, 590 F.2d 523, 527 (3d Cir. 1979). The "actual controversy" requirement refers to the case or controversy requirement of Article III. *Teva Pharm. USA, Inc. v. Novartis Pharm. Corp.*, 482 F.3d 1330, 1336 (3d Cir. 2007). In *Teva Pharmaceuticals*, the Third Circuit stated that standing in the declaratory judgment context requires:

> that the dispute be "definite and concrete, touching the legal relations of the parties having adverse legal interests"; and that it be "real and substantial" and "admi[t] of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts."

*Id.* (quoting *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007)). The court noted, "[b]asically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between the parties having adverse legal interests, of

31

sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id.* (citation omitted).

"The statute creates a remedy only; it does not create a basis of jurisdiction, and does not authorize the rendering of advisory opinions." *Cutaiar*, 590 F.2d at 527. Moreover, "a party requesting a declaratory judgment must allege facts from which it appears there is a substantial likelihood that he will suffer injury in the future." *Lattaker v. Rendell*, 269 F. App'x 230, 233 (3d Cir. 2008) (internal quotations omitted). Because the Court finds Curley's Amended Complaint fails to sufficiently plead any cause of action, much less allege that there is "a substantial likelihood that [he] will suffer injury in the future," *id.* at 233, Curley's declaratory judgment claim (Count 5) is **DISMISSED**.

## G.   Contempt Motion

Curley argues this Court should hold Defendants in contempt or issue sanctions against them because they directly quoted and paraphrased from the sealed Report in a public session meeting on December 4, 2017. (ECF No. 9.) Defendants argue: (1) no valid court order existed; (2) they have absolute immunity under the Speech or Debate Clause for the Censure Resolution; (3) that Curley's interpretation of the Order restricts their First Amendment rights to speak on matter of policy and public concern; (4) Curley did not comply with Local Civil Rule 5.3 and thus cannot maintain an action for contempt; and (5) that Curley comes to this Court with unclean hands. (ECF No. 24.) At Oral Argument and in their Supplemental Summations Brief, Fitzgerald and O'Connor argue they should not be held in contempt or subject to sanctions because they did not disclose the Report or make any public statement that quoted the Report at the public session. (ECF No. 51 at 2.) "Their mere presence at the December 8, 2017 public session at which the

Board of Chosen Freeholders passed the censure resolution and read it aloud could not establish contempt even if a binding and enforceable sealing order was in place." (*Id.*)

The Court has already found Defendants are not entitled to absolute immunity under the Speech or Debate Clause for the Censure Resolution. Therefore, that argument is without merit. As to Defendants' second argument—that the Order restricts their First Amendment rights—such argument cannot be challenged in a contempt proceeding. *Roe v. Operation Rescue*, 919 F.2d 857, 871 (3d Cir. 1990) (finding a "right to free speech does not immunize [one] from liability for engaging in proscribed conduct. Insofar as [the defendant] asserts that the TRO was an unreasonable time, place, and manner restriction on his speech, the validity of the order may not be collaterally challenged in a contempt proceeding for violating the order"); *Solis v. Koresko*, No. 09-988, 2016 WL 4536438, at *6 (E.D. Pa. Aug. 31, 2016), *aff'd sub nom.*, *Sec'y United States Dep't of Labor v. Koresko*, No. 16-3806, 2018 WL 1446397 (3d Cir. Mar. 23, 2018) ("A fundamental principle of the legal system is that all orders and judgments of courts must be complied with promptly. If a person to whom a judge directs an order believes that order is incorrect the remedy is to appeal, but, absent a stay, he must comply promptly with the order pending appeal. A private determination that an order is incorrect, or even unconstitutional, may still result in contempt even if [that person's] private determination is later proven correct in the courts.") (citations omitted). As such, this argument is also without merit.

Next, Defendants argue Curley comes to this Court seeking contempt with unclean hands because he has also released portions of the Report. (ECF No. 24 at 24-25.) However, Defendants point to no instance in which Curley revealed a portion of the Report after the Court ordered it sealed to anyone other than this Court or the parties involved.

33

Lastly, Defendants argue, absent compliance with Local Civil Rule 5.3 and *Pansy*, Curley cannot maintain an action for contempt because the Order to Seal is not valid. (ECF No. 24 at 16-17 (citing *Pansy v. Boro of Stroudsberg*, 23 F.3d 772 (3d Cir. 1994)).) It is well settled that there is "a common law public right of access to judicial proceedings and records." *In re Cendant Corp.*, 260 F.3d 183, 192 (3d Cir. 2001). Therefore, a party seeking to seal a document must demonstrate "good cause" exits to overcome the presumption favoring a public right of access. *Goldenberg v. Indel, Inc.*, No. 09-5202, 2012 WL 15909, at *1 (D.N.J. Jan. 3, 2012) (citing *Securimetrics, Inc. v. Iridian Technologies, Inc.*, No. 03–4394, 2006 WL 827889, at *2 (D.N.J. Mar. 30, 2006)). "Good cause is established on a showing that disclosure will work a clearly defined and serious injury to the party seeking closure. The injury must be shown with specificity." *Pansy*, 23 F.3d at 786 (citing *Publicker Indus. Inc. v. Cohen*, 733 F.2d 1059, 1071 (3d Cir. 1984)). In *Pansy*, the Third Circuit held "that whether an order of confidentiality is granted at the discovery stage or another stage of litigation, including settlement, good cause must be demonstrated to justify the order." *Pansy*, 23 F.3d at 786. Courts, not the parties, "should scrutinize every such agreement involving the sealing of court papers and [determine] what, if any, of them are to be sealed, and it is only after very careful, particularized review by the court that a Confidentiality Order may be executed." *Id.*

Motions to seal are governed by Local Civil Rule 5.3. Under Local Civil Rule 5.3(c)(2), a party moving to seal must describe with particularity: "(a) the nature of the materials or proceedings at issue, (b) the legitimate private or public interests which warrant the relief sought, (c) the clearly defined and serious injury that would result if the relief sought is not granted, and (d) why a less restrictive alternative to the relief sought is not available."

As a threshold matter, the parties agreed the Report would remain sealed, because if released to the public would cause Curley serious injury. Sealing the Report was consented to by

34

all parties in this litigation, including Defendants, on December 4, 2017, to protect Curley from the disclosure of information that could harm his reputation or cause serious injury because it contained sensitive information regarding a sexual harassment investigation. It contained not only sensitive information about Curley but alleged victims. Indeed, after reading Curley's brief for Temporary Restraining Order and Motion for Preliminary Injunction and hearing the parties' concerns during the in-person and telephone conference, the Court found sealing the Report was necessary prior to ordering it to remain sealed on December 4. (ECF Nos. 4, 6, and 42.)

In addition, the Order to Seal is valid. As demonstrated above, the Court has jurisdiction to hear this matter. Even though the Order was made orally on the record and confirmed in a minute entry after the parties consented to it, it is valid. *Malautea v. Suzuki Motor Co.*, 987 F.2d 1536, 1543 n.7 (11th Cir. 1993) ("Oral orders are just as binding on litigants as written orders; the consequences for violating an oral order are the same as those for violating a written order."). Therefore, the Order is proper and binding.

At oral argument, the County Defendants further argued that the Order to Seal was limited to "[p]ortions of the [R]eport that strictly were based on the investigation alone . . . [n]ot allegations that led to the investigation." (Draft Oral Arg. Tr. (ECF No. 49) 2:19-21.) However, the Order does not make that distinction or provide for any exceptions. Instead, the Order unambiguously states the Report is "to remain sealed." (ECF No. 4.) Moreover, on the record the Court stated, "[t]he [R]eport and rebuttal, Docket No. 2 on the docket, will remain sealed." (ECF No. 42 4:15-15.) Again, no exceptions were entered.

As a result, sanctions are appropriate in this matter against the County Defendants. The Court will not impose sanctions against Fitzgerald and O'Connor because their mere presence at the December 8 public session is not sufficient. However, the County Defendants do not deny they

have revealed portions of the contents of the Report and cannot at this point undo what has been done. Therefore, the Court will impose monetary sanctions. The Third Circuit has approved the issuance of monetary sanctions for "the cost of bringing the violation to the attention of the court" as part of the damages suffered by the prevailing party. *Robin Woods Inc. v. Woods*, 28 F.3d 396, 400 (3d Cir. 1994). Therefore, the Court finds attorneys' fees are appropriate in this matter for the cost it took to bring this violation to the Court's attention. Curley shall file within 30 days of the entry of the accompanying order an affidavit pursuant to Local Rule 54.2 to recover the requested fees. Defendants will have fourteen days of receipt of the affidavit to respond. Accordingly, Curley's Motion for Contempt and Sanctions is **GRANTED** as to the County Defendants and limited to attorneys' fees.

## IV. CONCLUSION

For the reasons set forth above: (1) Curley's Motion to Hold Defendants in contempt (ECF No. 8) is **GRANTED** as to the County Defendants, but limited to attorneys' fees and Curley shall file within 30 days of the entry of the accompanying order an affidavit pursuant to Local Rule 54.2 in order to recover the requested fees; (2) the County Defendants' Motion to Dismiss for Lack of Jurisdiction is **DENIED**, but their Motion for Failure to State a Claim is **GRANTED** (ECF No. 26); and (3) Fitzgerald and O'Connor's Motion to Dismiss is **GRANTED** (ECF No. 32). Curley may file an amended complaint addressing all deficiencies by no later than August 24, 2018. Failure to file an amended complaint will result in the case being dismissed with prejudice.

Date: July 25, 2018                              */s/ Brian R. Martinotti*
                                                 **HON. BRIAN R. MARTINOTTI**
                                                 **UNITED STATES DISTRICT JUDGE**